Joseph Mais (005470)
Shane Swindle (011738)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
T: (602) 351-8000
F: (602) 648-7000
jmais@perkinscoie.com
sswindle@perkinscoie.com

Anne C. Ronan (006041)
Timothy M. Hogan (004567)
**ARIZONA CENTER FOR LAW IN THE
  PUBLIC INTEREST**
514 West Roosevelt Street
Phoenix, Arizona  85003
T:  (602) 258-8850
F: (602) 258-8757
aronan@aclpi.org
thogan@aclpi.org

William Kapell (admitted *pro hac vice*)
Julia L. Davis (admitted *pro hac vice*)
Rachel B. Nili (admitted *pro hac vice*)
Adriana T. Luciano (admitted *pro hac vice*)
**CHILDREN'S RIGHTS, INC.**
330 Seventh Avenue, Fourth Floor
New York, New York  10001
T:  (212) 683-2210
F:  (212) 683-4015
wkapell@childrensrights.org
jdavis@childrensrights.org
rnili@childrensrights.org
aluciano@childrensrights.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| B.K. by her next friend Margaret Tinsley; C.P. and B.T. by their next friend Jennifer Kupiszewski; A.T.; A.C-B; M.C-B; J.C-B; D.C-B; J.M. and J.C. by their next friend Susan Brandt, for themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Gregory McKay, in his official capacity as Director of the Arizona Department of Child Safety; Cara M. Christ, in her official capacity as Director of the Arizona Department of Health Services; and Thomas J. Betlach, in his official capacity as Director of the Arizona Health Care Cost Containment System, <br><br> Defendants. | No. 2:15-cv-00185-PHX-ROS <br><br> **PLAINTIFFS' MOTION FOR APPOINTMENT OF NEXT FRIENDS UNDER FEDERAL RULE OF CIVIL PROCEDURE 17(c)** <br><br> (Assigned to the Honorable Roslyn O. Silver) |

Pursuant to the Court's February 11, 2016 Order (Dkt. No. 77), Plaintiffs submit this Memorandum in Support of their Motion for Appointment of the next friends.  For the reasons stated below, Plaintiffs request that this Court appoint

(1)    Susan M. Brandt as next friend for Named Plaintiffs A.C-B, M.C.-B, J.C-B, D.C-B, and J.M.;

(2)    Jennifer L. Kupiszewski as next friend for Named Plaintiffs B.T. and C.P.; and

(3)    Margaret R. Tinsley as next friend for Named Plaintiff B.K.

## PRELIMINARY STATEMENT

Eight minor children (the "Named Plaintiffs") bring this action on behalf of themselves, a general class of all children in the foster care custody of the state of Arizona, and certain subclasses.  They allege that they have been, and continue to be, subject to statutory and constitutional violations that put them at an unreasonable risk of harm at the hands of the state agency that has custody over them, the Arizona Department of Child Safety ("DCS"), as well as the state agencies that, with DCS, are responsible for providing health care services to them while they are in foster care, the Arizona Department of Health Services ("DHS") and the Arizona Health Care Cost Containment System ("AHCCCS").  As wards of the state who have been removed from their biological families and whose lives are now controlled by the very agencies that they are suing, the Named Plaintiffs lack parents or legal guardians who could represent their interests in this lawsuit.  They therefore bring this suit through next friends, who now seek appointment by this Court.

As detailed below, and in the accompanying Declarations of the next friends, Ms. Brandt, Ms. Kupiszewski, and Ms. Tinsley are well-qualified to represent the Named Plaintiffs in this action and are truly dedicated to their best interests.  They collectively bring more than 75 years of experience working in the field of child welfare in Arizona and are highly knowledgeable about the Arizona foster care system and issues relating to children in foster care in Arizona.  They are familiar with this lawsuit, and each is pursuing

1  this action in good faith, with the desire to help ensure the well-being of the children they

2  are representing and because they believe that participating in this lawsuit is in the best

3  interests of those children.  Furthermore, they each have the time, energy and resources to

4  pursue this case on behalf of the children they represent.  This Court should therefore

5  appoint the next friends pursuant to Fed. R. Civ. P. 17(c) so that they can continue

6  representing the Named Plaintiffs in seeking injunctive relief to remedy the ongoing

7  constitutional and statutory violations to which they are being exposed.

8  **PROCEDURAL BACKGROUND**

9  In the parties' Joint Case Management Plan submitted to the Court on December 1,

10  2015, Defendants asserted that "Plaintiffs cannot establish the factual requisites for

11  asserting 'next friend' status." (Dkt. No. 57 at 7).  At the December 11, 2015 scheduling

12  conference, this Court advised the parties that the next friend issue "needs to be resolved."

13  December 11, 2015 Reporter's Transcript of Proceedings - Scheduling Conference at 5-6;

14  *see also* Notice of Filing of Official Transcript (Dkt. No. 67).  Toward this end, the Court

15  asked Plaintiffs' counsel to share with Defendants a First Circuit ruling addressing the

16  issue in the interest of "resolv[ing]" the issue "without filing a motion."  *Id*.  In accordance

17  with the Court's instruction, Plaintiffs' counsel sent the First Circuit ruling (*Sam M. ex rel.*

18  *Elliott v. Carcieri*, 608 F.3d 77 (1st Cir. 2010)), to Defendants on December 15, 2015.

19  Plaintiffs heard nothing further from Defendants regarding the next friends until

20  January 20, 2016, when, in the context of the parties' negotiations of a joint confidentiality

21  order, Defendants sent Plaintiffs a draft order that included a term stating that the next

22  friends would not be able to review individually identifying information about their own

23  clients unless the next friend was "otherwise authorized by A.R.S. 8-807 to have that

24  information, if at all."  *See* Exh. 1 to accompanying Declaration of William Kapell in

25  Support of Plaintiffs' Motion for Appointment of Next Friends, dated February 19, 2016

26  (hereafter, the "Kapell Dec.").  Plaintiffs responded on January 22, pointing out, as they

27  had previously, that A.R.S. § 8-807 does not apply in federal question cases (Kapell Dec.

28

Exh. 2), but that in any event, § 8-807(E) authorizes a minor's individual identifying information to be reviewed by that minor's "agents" and the next friends, as the Named Plaintiffs' representatives for purpose of this lawsuit, were the children's agents as a matter of law.  Kapell Dec. Exh. 3.

Defendants replied two weeks later, on February 4, now taking the position that before confidential information about the Named Plaintiffs could be shown to the next friends, they should provide affidavits establishing, to Defendants' satisfaction, that the next friends' relationships with the Named Plaintiffs complied with Fed. R. Civ. P. 17(c). Kapell Dec. Exh. 4.  Notably, Defendants did not agree to provide the next friends with access to the Named Plaintiffs' records even if the requested affidavits were supplied. Rather, Defendants took the position that before these documents could be produced, this Court was required to review them in camera under ARS § 8-807.  Kapell Dec. Exh. 5. Plaintiffs, unaware of any legal authority requiring next friends to provide affidavits to opposing parties before being allowed access to discovery materials, declined Defendants' demand.

Given the parties' dispute over the application of § 8-807 and the next friends' right to review documents regarding their clients, the parties submitted a Joint Statement of Dispute, pursuant to this Court's rules, on February 8, 2016.  (Dkt. No. 76).  The Court subsequently issued an Order stating that the next friend "issue should be resolved immediately."  (Dkt. No. 77 at 1).  The Order further stated that "[i]f Defendants oppose the appointment of Plaintiffs as Next Friends, Plaintiffs should file a formal motion establishing their qualifications such that the matter can be fully briefed.  If Defendants consent to Plaintiffs' appointments, the parties should file a stipulation to that effect." (Dkt. No. 77 at 1-2).  Pursuant to this Order, Plaintiffs sent Defendants a proposed stipulation with respect to the appointment of the next friends, but Defendants declined to agree to the stipulation.  Plaintiffs now file the instant motion seeking the Court's approval of the next friends.

3

**ARGUMENT**

Fed. R. Civ. P. 17(c)(2) provides that a "minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem" and that "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." A next friend does not himself or herself become a party to the action in which she participates; rather, the named plaintiff "remains the real party in interest" and the next friend "simply pursues the cause on behalf" of that person. *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990).

A next friend has the burden to "establish the propriety" of her representation. *Whitmore*, 495 U.S. at 164. Here, the next friends meet this burden because, as outlined below, the Named Plaintiffs are minors who do not have duly appointed representatives who can protect their interests in this lawsuit and each of the next friends is qualified to serve, and dedicated to the best interests of, the child or children whom she represents.

**I.     The Named Plaintiffs Cannot Appear on their Own Behalf and Do Not Have Duly Appointed Representatives Who Could Represent Them in this Lawsuit**

The first of two prerequisites for serving as a next friend is that the "'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action." *Whitmore*, 495 U.S. at 163. Here, this prong is easily satisfied by the undisputed fact that each of the Named Plaintiffs is a minor.

In addition, the Named Plaintiffs do not have any of the "duly appointed representative[s]" listed in Fed. R. Civ. P. 17(c)(1) (a general guardian, a committee, a conservator or a like fiduciary), who would preclude the representation of the Named Plaintiffs by the next friends in this case.[1]  Although all dependent children in Arizona

---

[1] The Named Plaintiffs are in the custody of the state, and therefore DCS is their legal guardian.  However, because this lawsuit alleges that DCS and the other two state defendants are harming the Named Plaintiffs and putative class and subclasses in violation

have a right to counsel and may be appointed a guardian ad litem by the juvenile court, the scope of the rules setting forth the representation of dependent children in juvenile court is limited to "dependency, termination of parental rights and Title 8 guardianship cases."  *See* A.R.S. Juv. Ct. Rules of Proc., Rule 36 "Scope of Rules."  Therefore, a dependent child's juvenile court attorney or guardian ad litem does not have "general authority to represent the children outside [juvenile] court proceedings" and "cannot be considered the children's general guardians, like fiduciaries or duly appointed Rule 17(c) representatives."  *See Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 87 (1st Cir. 2010) (holding that district court "erred in finding that the state-appointed guardians ad litem or CASA advocates precluded Plaintiffs from filing suit by a Next Friend"); *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 514-15 (D. Neb. 2007) (holding that, under Nebraska law, the minor named plaintiffs' juvenile guardians ad litems were not "general guardians," were not authorized to represent the named plaintiffs in federal court, and would potentially have a conflict of interest in representing the named plaintiffs in the federal court litigation against the state child welfare agency).

## II.   The Next Friends Are Appropriate Representatives for the Named Plaintiffs

### A. In Assessing the Adequacy of a Next Friend, Courts Must Evaluate Whether the Next Friend Is Truly Dedicated to the Named Plaintiff's Best Interests and, in the Foster Care Context, a Significant Relationship Is Not Required

Once a next friend has established the first prerequisite—that the real party in interest cannot appear on his own behalf—the Court must then consider the second prerequisite of the Supreme Court's test for determining suitability of a next friend: that is, whether the next friend is "truly dedicated to the best interests of the person on whose behalf he seeks to litigate."  *Whitmore*, 495 U.S. at 163.  The Supreme Court noted in

---

of their federal statutory and constitutional rights, DCS is precluded from representing the Named Plaintiffs in this matter.  *See, e.g.*, *Dev. Disabilities Advocacy Ctr., Inc. v. Melton*, 689 F.2d 281, 285 (1st Cir. 1982).

*Whitmore* that some courts have "suggested that a 'next friend' must have some significant relationship with the real party in interest." *Id.* at 163-64.  However, "[n]otably," the Court "did not choose to adopt this suggestion, adhering instead to the two-pronged test." *Coal. of Clergy, Lawyers, and Professors v. Bush*, 310 F.3d 1153, 1165 (9th Cir. 2002) (Berzon, J., concurring).  Indeed, the "some significant relationship" language from *Whitmore* can be read not as "an additional, independent requirement but instead may be one means by which the would-be next friend can show true dedication to the best interests of the person on whose behalf he seeks to litigate." *Sanchez-Valasco v. Sec'y of the Dep't of Corr.*, 287 F.3d 1015, 1026 (11th Cir. 2002).

In *Massie ex rel. Kroll v. Woodford*, the Ninth Circuit cited to *Whitmore*, in the context of a challenge to a next friend who sought to pursue a habeas petition on behalf of a prisoner on death row, for the proposition that a putative next friend must show that he or she has "some significant relationship with, and is truly dedicated to the best interests of, the petitioner." 244 F.3d 1192, 1194 (9th Cir. 2001) (citing *Whitmore*, 495 U.S. at 163-65).  Subsequently, however, the Ninth Circuit recognized in *Coalition of Clergy* that "there may be some extreme circumstances necessitating relaxation of the *Whitmore-Massie* standard." *Coalition of Clergy*, 310 F.3d at 1162.[2]  But because the record in that case was "devoid of such circumstances," the Court "reserve[d] consideration of these hypothetical cases for another day." *Id.*

As courts throughout the country have held, just such circumstances exist in the foster care context, especially where, as here, children in foster care allege that their constitutional and statutory rights are being violated by their legal guardian, the state itself. *See Sam and Tony M. v. Carcieri*, 608 F.3d 77, 89, 91 (1st Cir. 2010) (holding that a

---

[2] Moreover, as noted by Judge Berzon in his concurring opinion in *Coalition of Clergy,* "[a]bsolutely nothing in *Massie* turned on the resolution of the significant relationship issue pointedly left open in *Whitmore*," and the discussion of requiring a significant relationship in order to serve as a next friend "was simply dicta." 310 F.3d at 1165-66 (Berzon, J., concurring).

significant relationship need not be required as a prerequisite to next friend standing because foster children "lack significant ties with their parents and have been placed under the state's legal custody and guardianship," and therefore it is "reasonable to conclude that the adults with whom [they] have maintained some contact are not willing, able, or available to pursue a legal action against the state."); *Carson P.*, 240 F.R.D. at 520 (footnote omitted) (recognizing that next friends may be appointed "irrespective of whether they know the individual child they agree to represent" and "child advocates can be suitable next friends for a child litigant provided they convince the court that they are not solely motivated by ideological goals . . . that the individual child's best interests have been thoroughly considered, and that those interests will remain paramount throughout the litigation."); *Marisol A. v. Giuliani*, No. 95 Civ. 10533 (RJW), 1998 WL 265123, at *8-9 (S.D.N.Y. May 22, 1998) (rejecting arguments by defendants that because next friends had either not met or had had very limited contact with the foster children plaintiffs they represented they were not adequate next friends); *Jeanine B. ex rel. Blondis v. Thompson*, 877 F. Supp. 1268, 1287-88 (E.D. Wis. 1995) (approving adequacy of plaintiff foster children's next friends on class certification where next friends were "prominent members of the Milwaukee community who have a demonstrated interests [sic] in children's issues); *see also Ad Hoc Committee of Concerned Teachers on Behalf of Minor & Under-Age Students Attending Greenburgh Eleven Union Free School Dist. v. Greenburgh No. 11 Union Free School Dist.*, 873 F.2d 25, 30 (2d Cir. 1989) (holding that committee of teachers was proper next friend for the purpose of vindicating children's constitutional rights where it was "difficult to believe that [the] adults who have custody of the Children will bring suit against the District" and "since the Children are no longer in the care and custody of their natural parents, those adults have little involvement with the daily aspects of the Children's schooling and are not likely to prosecute this type of action"). These cases recognize that "[i]mportant social interests are advanced by allowing minors access to a judicial forum to vindicate their constitutional rights through a Next Friend that the

1    court finds has a good faith interest in pursuing a federal claim on the minor's behalf;

2    particularly where, as here, the minors seek relief for alleged violations of the guardian's

3    duty to protect them."  *Sam and Tony M.*, 608 F.3d at 91-92.

4         Post-*Massie* decisions within this Circuit have similarly recognized the importance

5    of allowing minors access to a judicial forum and have interpreted Supreme Court and

6    Ninth Circuit precedent to leave the door open for a next friend to represent a minor even

7    without demonstrating a significant relationship.  In *Nichols v. Nichols*, the District of

8    Oregon denied a motion seeking the removal of a next friend who sought to protect the

9    rights of a minor with respect to life insurance proceeds.  Civil No. 10–651–HA, 2011 WL

10   2470135, at *1, 3 (D. Or. June 20, 2011).  The court rejected a challenge to the next friend

11   by the minor's grandmother, who had been appointed as personal representative of her

12   granddaughter's estate, on the basis that the next friend had no prior relationship with the

13   minor.  *Id.* at *4.  The court disagreed with the grandmother's interpretation of Ninth

14   Circuit law as mandating a strict "significant relationship" requirement and further held

15   that the circumstances of the case would qualify as an exception to any such "significant

16   relationship" requirement because it was just the sort of "extreme case" anticipated by the

17   Ninth Circuit in *Coalition of Clergy*.  *Id.* at *4-6; *see also Anthem Life Ins. Co. v. Olguin*,

18   No. 1:06-cv-01165 AWI NEW (TAG), 2007 WL 1390672, at *2 (E.D. Cal. May 9, 2007)

19   (citing *T.W. v. Brophy*, 124 F.3d 893, 896) (7th Cir. 1997) ("If a close relative is

20   unavailable and the child has no conflict-free general representative, the court may appoint

21   a friend of the plaintiff or his family, a professional who has worked with the child, or in

22   desperate circumstances, a stranger whom the court finds to be especially suitable for

23   representing the child's interests.").

24        This lawsuit similarly raises just the sort of "extreme case" anticipated by the Ninth

25   Circuit.  As alleged in the Second Amended Complaint ("SAC") (Dkt. No. 37), the Named

26   Plaintiffs and members of the putative class have been removed from their biological

27   homes due to abuse or neglect by their families and are now in the legal custody of the

28

8

State.  SAC, at ¶ 2.  While in state custody, the Named Plaintiffs have been subjected to, among other things, placement far from their families and communities, separation from siblings, and frequent school changes, due to a severe shortage of family foster homes.  *Id.* at ¶¶ 215-219.  As a result, these children are "disconnect[ed]" from "family, friends, and neighbors" *id.* at ¶ 215, and they lack the kinds of connections that most children take for granted.  *See, e.g.*, *Marisol A.*, 1998 WL 265123, at * 9 (contrasting situation of plaintiff foster children with "an ideal world, [where] there would be concerned family members or friends to represent these children in court.").  For example, Named Plaintiff C.P., who is eight years old, has had to live in at least 11 placements during his time in state foster care, including two shelters, and has cycled through at least eight different schools.  *Id.* at ¶ 33.  Named Plaintiff B.K., who is eleven years old and has been in foster care for more than half of her life, has been separated from her siblings and deprived from contact with her mother and siblings, in addition to experiencing multiple placements, including two in institutions.  *Id.* at ¶¶ 20-32.  All of the Named Plaintiffs have similarly been subjected to frequent placement moves and separation from family members, rendering them unable to maintain close connections.  *See id.* at ¶¶ 20-69, 83-107.

### B. Each of the Next Friends is Qualified and Truly Dedicated to the Best Interests of the Named Plaintiff(s) Whom She Represents.

In the foster care context, the determination of whether an individual can serve as a next friend to a minor rests not on whether they have a significant relationship, but on whether the next friend is "truly dedicated to the best interests" of the minor.  *Whitmore*, 495 U.S. at 163; *see also Sam and Tony M.*, 608 F.3d at 92 (analyzing whether the next friend is truly dedicated to the minor's best interests).  In making this determination, "courts may consider the individual's familiarity with the litigation, the reasons that move her to pursue the litigation, and her ability to pursue the case on the child's behalf."  *Sam and Tony M.*, 608 F.3d at 92; *see also Greenburgh*, 873 F.2d at 30-31 (in approving a next friend the court is required only to "consider the good faith of those claiming to speak for the infant and satisfy itself that the 'next friend' is motivated by a sincere desire to seek

justice on the infant's behalf").  The next friend must not be using the lawsuit as a pretext for pursuing political or ideological goals.  *Sam and Tony M.*, 608 F.3d at 92-93.  And while the fact that a next friend has met the child she seeks to represent "enhances" her suitability, it is not required.  *Id* at 92.  This is because "access to the federal courts need not be denied to a minor Plaintiff if the court finds that the proposed next friend has a good faith belief that she can adequately represent the child in federal court."  *Id.*[3]

Each of the three next friends seeking appointment in this case goes above and beyond meeting these elements.  Like the next friends approved by a district court in *Jeanine B.*, Ms. Brandt, Ms. Kupiszewski, and Ms. Tinsley are "prominent members" of the Arizona community who have "a demonstrated interest[]" in children's issues.  *Jeanine B.*, 877 F. Supp. at 1287-88.  Like the next friends approved by the First Circuit in *Sam and Tony M.*, they are "aware of the inner workings of the foster care system" and "there is no indication that [they] [are] pursuing this litigation for reasons other than protecting" the interests of the Named Plaintiffs whom they represent or that they would not "be able to pursue this suit on the children's behalf."  *Sam and Tony M.*, 608 F.3d at 92, 94.  Like the Named Plaintiffs approved by the Southern District of New York in *Marisol*, they are

---

[3] If this Court were to find that any of the next friends were inadequate, case law provides that, rather than dismissing the lawsuit, the Court should determine whether the Named Plaintiffs' interests are adequately represented and, if necessary, determine whether another next friend should be appointed.  *See, e.g.*, *Davis v. Walker*, 745 F.3d 1303, 1310-11 (9th Cir. 2014) (vacating lower court's decision and remanding to "consider whether [the court] should appoint a guardian ad litem," holding that "the court may not use [Rule 17(c)] as a vehicle for dismissing claims or for allowing the interests of an incompetent litigant to go completely unprotected."); *Adelman on Behalf of Adelman v. Graves*, 747 F.2d 986, 989 (5th Cir. 1984) (finding reversible error where lower court dismissed case without ensuring that infant's right to vindicate his statutory and constitutional claims was protected); *Gardner v. Parson*, 874 F.2d 131 (3d Cir. 1989) ("We have found no case . . . holding that a court may decline to appoint a guardian with the result of allowing the child's interests to go *un*protected.  Rather, the cases and commentators appear unanimous in interpreting [Rule 17(c)] to mean that, if a court declines to appoint a guardian, it must act in some other way to protect the child's *interests in the litigation*.").

1   "motivated only by a sincere desire to seek justice for the named plaintiffs." *Marisol*,

2   1998 WL 265123, at \*9**.**

3           i.      **Susan M. Brandt for Named Plaintiffs A.C-B., M.C.-B, J.**
                    **C-B, D. C-B, and J.M.**
4

5           Ms. Brandt is well qualified to serve as a next friend in this case.  Having spent more

6   than 30 years working in Arizona's child welfare system, a more dedicated and experienced

7   professional in child welfare and foster care would be hard to find.

8           From 1984 to 2010, Ms. Brandt worked for the Arizona child welfare agency (then

9   part of the Department of Economic Security (the "Department")), first as a case worker

10  conducting investigations of reports of child abuse and neglect, then as a Unit Supervisor,

11  an Executive Staff Assistant to the Program Manager, and finally as an Assistant Program

12  Manager for Child Protective Services in Pima County.   Declaration of Susan Brandt

13  ("Brandt Dec.") at ¶ 3-4.  While with the Department, she was responsible for personnel

14  activity for hundreds of employees serving thousands of vulnerable children in foster care

15  and families receiving in-home services.  She also oversaw the Parent Aide Program, which

16  provides supervised visitation and support for parents and children, and led public education

17  about the Department and child safety.  *Id.* at ¶ 3.  As Assistant Program Manager, she was

18  responsible for child protective and welfare services for the eastern section of Pima County,

19  overseeing the care and well-being of thousands of children involved in the child welfare

20  system.  *Id.* at ¶ 4.

21          Since leaving the Department, Ms. Brandt has continued to serve in child welfare.

22  From 2010 to 2011, she worked as a trainer for the Southern Arizona Child Advocacy Center

23  and for Aviva Children's Services.  In that capacity, she provided training on child abuse

24  and neglect with an emphasis on recognizing the signs and symptoms of child abuse and

25  neglect, and mandatory reporting of child maltreatment.  *Id.* at ¶ 5. From 2011 to 2013, Ms.

26  Brandt was a Dependency Specialist at the Pima County Juvenile Court, where she

27  scheduled and facilitated court conferences for approximately 1000 dependent children,

28

developed training for lawyers working on dependency cases, and collected data related to children and dependency cases for the Court. *Id.* at ¶ 6.

Since 2013, Ms. Brandt has worked as the Social Work Supervisor for the Pima County Office of Children's Counsel, where she supervises a staff of four social workers who provide support for the thirteen attorneys who represent approximately 2000 children in dependency cases in Pima County. *Id.* at ¶ 7. She personally visits with children in foster care, attends Team Decision Making meetings, CPS Case Staffings, Child and Family Team Meetings, and works with placement providers on behalf of approximately 200 children in the legal custody of DCS each year. *Id.* Beyond Ms. Brandt's lifelong experience in child welfare, she also has direct experience with Named Plaintiffs A.C-B, M.C-B, J.C-B, D.C-B, and J.M. *Id.* at ¶ 9-10. In particular, as their Social Work Supervisor at the Office of Children's Counsel, she has become familiar with their experiences in foster care, having attended meetings with their providers, having reviewed their case files in the ordinary course of her responsibilities, having spoken with the social workers in her office who serve them, and having worked closely with their Office of Children's Counsel attorneys. *Id.*

Ms. Brandt is truly dedicated to the best interests of A.C-B, M.C-B, J.C-B, D.C-B, and J.M. She is well-familiarized with this lawsuit, has reviewed the pleadings in this case, and has discussed this litigation with Plaintiffs' counsel on many occasions. *Id. at* ¶ 8. She is pursuing this action as Social Work Supervisor for A.C-B, M.C-B, J.C-B, D.C-B, and J.M. in good faith, not for the purpose of pursuing political or ideological goals. *Id. at* ¶ 9. She decided to serve as a next friend for these children because she believes that the state agencies responsible for their care and well-being have repeatedly failed them. She also believes that Named Plaintiffs A.C-B, M.C-B, J.C-B, D.C-B, and J.M. wish her to pursue their claims in this case and that doing so is in their best interests. *Id. at* ¶ 10.

           **ii.**       **Jennifer L. Kupiszewski for Named Plaintiffs B.T. and C.P.**

Similarly, Ms. Kupiszewski is well qualified to serve as a next friend for Named Plaintiffs B.T. and C.P. Like Ms. Brandt, she has extensive experience in child welfare and

particular familiarity with the Arizona foster care system.  Her dedication to child welfare work is borne out by her lifelong involvement with it.

From 1999 to 2002, Ms. Kupiszewski was an Assistant Attorney General for the State of Arizona, representing the state child welfare agency in Juvenile Court cases involving hundreds of children in foster care.  Declaration of Jennifer Kupiszewski ("Kupiszewski Dec.") at ¶ 3.  In 2002, Ms. Kupiszewski left the Attorney General's office and went to work as an attorney with the Arizona Center for Disability Law (the "Center").  *Id.* at ¶ 4.  There, she represented dozens of individual children across the state of Arizona, many with special needs, helping them to obtain the mental and behavioral health services that they required. *Id.*  As part of this work, she attended Child and Family Team meetings, eligibility hearings with the Arizona Division of Developmental Disability and Arizona Long Term Care, dependency and delinquency hearings, and health care appeals for her child clients.  *Id.*  Ms. Kupiszewski also helped children receive special education services and eligibility for Individual Education Plans.  *Id.*  She oversaw the Traumatic Brain Injury Program at the Center, designing educational materials on educational appeals for families of children and adults with brain injuries, conducting presentations on obtaining healthcare services, and representing dozens of individual children and families in proceedings challenging denials under their health insurance.  *Id.* at ¶ 5.

In 2004, Ms. Kupiszewski returned to the Office of the Attorney General for the State of Arizona, again representing the child welfare agency.  *Id.* at ¶ 6.  From 2004 to 2006, she represented the agency in dependency cases involving approximately 100 children.  *Id.*  She trained new Assistant Attorney Generals and child welfare caseworkers on how to represent children in Juvenile Court and with the Arizona Division of Developmental Disabilities.  *Id.*  She also coordinated with the Department of Economic Security to help draft policies related to child welfare.  In 2007, Ms. Kupiszewski entered private practice.  *Id.* at ¶ 7.  Since then, she has continued to represent hundreds of children and parents in dependency proceedings. *Id.*  Since starting her own firm in 2013, Ms. Kupiszewski has handled approximately 25

13

dependency cases annually in Juvenile Court, where she represents parents, grandparents, foster parents, and other relatives of children in foster care. *Id.* at ¶ 8.

Ms. Kupiszewski's dedication to child welfare issues is further reflected in her volunteer work. *Id.* at ¶ 9. She currently serves as the Secretary of the Board of the Maricopa County Bar Association, Family Law Section. She is also the current Chair of the Arizona State Bar Elder Law, Mental Health and Special Needs Planning Council. *Id.* In addition, she is the Secretary of the Board of Directors for a nonprofit organization called Raising Special Kids, which supports and trains the families of children with disabilities to help make sure they get the care they need. *Id.*

Ms. Kupiszewski is truly dedicated to the best interests of B.T. and C.P. She even met with Plaintiff B.T. in February 2015, when he was 14 years old and in detention, waiting to be placed in a foster home. *Id.* at ¶ 11. They talked about his family, his love of dogs, and funny videos that he watches on the Internet. *Id.* He also told her that he wanted to participate as a Named Plaintiff in this suit and that he wanted her to serve as his next friend. *Id.* Ms. Kupiszewski has not had a similar discussion with Named Plaintiff C.P. because he was only seven years old when this suit was filed.

Ms. Kupiszewski is familiar with C.P.'s and B.T.'s experiences in foster care and thinks that the child welfare system is hurting them. *Id.* at ¶ 13. She believes that this lawsuit is in their best interests and desires to protect their rights and well-being because she thinks they need help. Ms. Kupiszewski has stayed up-to-date on the progress of this case and has discussed the litigation with Plaintiffs' counsel many times. *Id.* at ¶ 10. She has the time, resources and energy to devote to this case and to prosecute C.P. and B.T.'s claims against the state. *Id.* at ¶ 12. Ms. Kupiszewski is pursuing this action in good faith and not for the purpose of pursuing political or ideological goals.

### iii.    Margaret R. Tinsley for Named Plaintiff B.K.

Finally, Ms. Tinsley is well qualified to serve as next friend for Plaintiff B.K. Like the other two next friends, she has extensive experience in the area of child welfare and the

Arizona foster care system in particular.  Indeed, she has dedicated 30 years to the practice of juvenile law.  Declaration of Margaret R. Tinsley ("Tinsley Dec.") at ¶ 2.

From 1978 to 2000, Ms. Tinsley was in private practice, where she represented hundreds of children in severance, adoption, and custody matters in Arizona trial and appellate courts.  *Id.* at ¶ 3.  She subsequently served as an Assistant Arizona Attorney General until 2008, first as a Trial Attorney, then as Permanency Unit Chief, then as Permanency Specialist, then as Training Attorney, and finally as Unit Chief of the Protective Services Section in Mesa, Arizona.  *Id.* at ¶ 4.  During this time, she represented the Arizona child welfare agency in cases involving hundreds of children.  *Id.*  She also supervised other attorneys in the State Attorney General's office who represented the State in cases involving thousands more children.  *Id.*

Following her work at the Attorney General's Office, Ms. Tinsley volunteered with the Juvenile Legal Assistance Program ("JLAP") from 2010 to 2015.  *Id.* at ¶ 5.  The JLAP was a project of the Arizona Juvenile Court and the Arizona State University College of Law.  *Id.*  With JLAP, she met with grandparents, parents, children, and other family-members of children who were seeking information and advice on how to obtain the services and supports they needed.  *Id.*  She provided families with *pro bono* legal advice and helped them complete paperwork to submit to court and to access various State entitlement programs.  *Id.*  Ms. Tinsley has also worked as a trainer with the Arizona State University School of Social Work since 2010, preparing child welfare caseworkers to testify in Juvenile Court about their work with, and on behalf of, children in foster care.  *Id.* at ¶ 6.

Ms. Tinsley decided to serve as next friend for B.K. after discussing B.K.'s experiences in foster care at a meeting with B.K.'s former foster parent and school counselor in December 2014 and after concluding that serious failures in the Arizona child welfare system are putting B.K.'s well-being and safety at risk.  *Id.* at ¶ 9-10.  Ms. Tinsley believes that this litigation is in B.K.'s best interests.  *Id.* at ¶ 10.  She is truly dedicated to B.K.'s best interests and is motivated by a desire to help ensure her well-being.  *Id.* at ¶ 11.  As a

healthy, retired grandmother of two, Ms. Tinsley has the time, resources and desire to pursue this case on B.K.'s behalf.  *Id.* at ¶ 11.  She has kept up to date about the case and has discussed it with Plaintiffs' counsel on many occasions.  *Id.* at ¶ 8.  Ms. Tinsley is pursuing this action in good faith and not for the purpose of pursuing political or ideological goals.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court appoint

(1)   Ms. Brandt as next friend for Named Plaintiffs A.C-B, M.C.-B, J.C-B, D.C-B, and J.M.;

(2)   Ms. Kupiszewski as next friend for Named Plaintiffs B.T. and C.P.; and

(3)   Ms. Tinsley as next friend to Named Plaintiff B.K.

Respectfully submitted this 19th day of February 2016.

**CHILDREN'S RIGHTS, INC.**

By: /s/ William Kapell
William Kapell
Julia L. Davis
Rachel B. Nili
Adriana Luciano
330 Seventh Avenue, Fourth Floor
New York, New York  10001
Telephone:  (212) 683-2210

**PERKINS COIE LLP**
Joseph Mais
Shane Swindle
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
Telephone: (602) 351-8000

**ARIZONA CENTER FOR LAW IN THE PUBLIC INTEREST**
Anne C. Ronan
Timothy M. Hogan
514 West Roosevelt Street
Phoenix, Arizona  85003
Telephone:  (602) 258-8850

*Attorneys for Plaintiffs*

16

1

**CERTIFICATE OF SERVICE**

2  I hereby certify that on February 19, 2016 I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to the following CM/ECF registrants:

5

6  Gary N. Lento                          Logan T. Johnston
   gary.lento@azag.gov                    ltjohnston@live.com
7  Melanie Grace McBride                  JOHNSTON LAW OFFICES, P.L.C.
   melanie.mcbride@azag.gov               1402 E. Mescal Street
8  Joshua R. Zimmerman                    Phoenix, Arizona 85020
   joshua.zimmerman@azag.gov              Telephone: (602) 452-0615
9
   ARIZONA ATTORNEY GENERAL
10 1275 West Washington                   Catherine D. Plumb
   Phoenix, Arizona 85007-2997            plumblawoffice@gmail.com
11 Telephone: (602) 542-7989              LAW OFFICES OF CATHERINE DODD
12 *Attorneys for Defendant Gregory McKay* PLUMB, P.L.C.
                                          17225 N. 16th Place
13                                        Phoenix, Arizona 85022
   Daniel P. Struck                       Telephone: (602) 510-5184
14 dstruck@swlfirm.com                    *Attorneys for Defendant Thomas J. Betlach*
   Kathleen L. Wieneke
15 kwieneke@swlfirm.com
   Nicholas D. Acedo
16 nacedo@swlfirm.com
17 Tara B. Zoellner
   tzoellner@swlfirm.com
18 Timothy J. Bojanowski
19 tbojanowski@swlfirm.com
   STRUCK WIENEKE & LOVE, P.L.C.
20 3100 W. Ray Road, Suite 300
   Chandler, Arizona 85226-2473
21 Telephone: (480) 420-1600
22 *Attorneys for Defendant Cara M. Christ*

23

24                                        By: /s/ William Kapell

25

26

27

28