1   Mark Brnovich (Firm State Bar No. 14000)
      ARIZONA ATTORNEY GENERAL
2   Gary N. Lento (Bar No. 028749)
    Melanie G. McBride (Bar No. 023348)
3   Joshua R. Zimmerman (Bar No. 025876)
     1275 W. Washington
4    Phoenix, Arizona 85007-2997
     Telephone: (602) 542-8305
5    Fax:  (602) 542-8308
     Gary.Lento@azag.gov
6    Melanie.McBride@azag.gov
     Joshua.Zimmerman@azag.gov
7   *Attorneys for Defendant, Gregory McKay*
    *in his Official Capacity as Director of*
8   *the Arizona Department of Child Safety*

    STRUCK WIENEKE & LOVE, PLC
    Daniel P. Struck (Bar No. 012377)
    Kathleen L. Wieneke (Bar No. 011139)
    Timothy J. Bojanowski (Bar No. 022126
    Nicholas D. Acedo (Bar No. 021644)
    Tara B. Zoellner (Bar No. 027364)
     3100 W. Ray Road, Suite 300
     Chandler, Arizona 85226-2473
     Telephone: (480) 420-1600
     dstruck@swlfirm.com
     kwieneke@swlfirm.com
     tbojanowski@swlfirm.com
     nacedo@swlfirm.com
     tzoellner@swlfirm.com
    *Attorneys for Defendant, Cara M. Christ*
    *in her Official Capacity as Director of*
    *the Arizona Department of Health*
    *Services*

10  JOHNSTON LAW OFFICES, PLC
11  Logan T. Johnston (Bar No. 009484)
     1402 E. Mescal Street
12   Phoenix, Arizona 85020
     Telephone: (602) 452-0615
13   ltjohnston@live.com
    *Attorneys for Defendant, Thomas J. Betlach*
14  *In his Official Capacity as Director of the*
    *Arizona Health Care Cost Containment System*

15

16                   **UNITED STATES DISTRICT COURT**

17                       **DISTRICT OF ARIZONA**

18

19  B.K. by her next friend Margaret          Case No: 2:15-cv-00185-PHX-ROS
    Tinsley; et al.,
20                                             **DEFENDANTS' JOINT OPPOSITION**
                    Plaintiffs,                **TO PLAINTIFFS' MOTION FOR**
21                                             **APPOINTMENT**
                                               **OF NEXT FRIENDS UNDER**
22  vs.                                        **FEDERAL RULE OF CIVIL**
                                               **PROCEDURE 17(c)**
23  Gregory McKay, in his official capacity
    as Director of the Arizona Department of
24  Child Safety; et al.,                      (Assigned to the Hon. Roslyn O. Silver)

25                  Defendants.

26

27

28

1   Defendants collectively oppose the appointment of Susan Brandt, Jennifer

2   Kupiszewski, and Margaret Tinsley, as "Next Friends" for the Named Plaintiffs as the

3   evidence presented fails to satisfy the required elements for next friend standing.

## I

## INTRODUCTION

6   In their Second Amended Complaint ("SAC"), the Named Plaintiffs, eight minor

7   children in the Arizona foster care system, assert a class action lawsuit generally alleging

8   that the Defendants violated their due process rights by, among other things, subjecting

9   them to statutory and constitutional violations.  To pursue this lawsuit on behalf of the

10  Named Plaintiffs, the SAC identifies Susan M. Brandt as the Next Friend for Named

11  Plaintiffs A.C-B, M.C-B, J.C-B, D.C-B, and J.M; Jennifer L. Kupiszewski as the Next

12  Friend for Named Plaintiffs B.T. and C.P; and Margaret R. Tinsley as the Next Friend

13  for Named Plaintiff B.K.

14  During the negotiations of the Protective Order (which is currently pending before

15  this Court), a dispute arose as to the disclosure of confidential information to the putative

16  Next Friends.  Defendants merely requested evidence that the Next Friends were

17  appropriate agents of the Named Plaintiffs to assure that Defendants did not violate

18  A.R.S. § 8-807 by disclosing confidential information.  Plaintiffs refused.  Consequently,

19  the Parties filed a *Joint Statement of Dispute* (*See*, Doc. 76).  In response to the *Joint*

20  *Statement of Dispute*, this Court "require[d] Plaintiffs to establish they should be

21  appointed Next Friends." (Doc. 77, p. 1:24-25).  Plaintiffs then filed their *Motion for*

22  *Appointment of Next Friends Under Federal Rule of Civil Procedure 17(c)* ("Motion"). [1]

23  ///

24  ///

25

26  [1]  Plaintiffs spend two pages arguing that Defendant delayed in raising this issue. Addressing each of Plaintiffs' unfounded arguments would take too much of this Court's time on an irrelevant issue.  Suffice it to say, however, that Defendants deny Plaintiffs' accusations.  That is especially true considering that the Named Plaintiffs have the burden of establishing Next Friend status.  But, no evidence was provided until this Motion was filed, some 13 months after the original Complaint was filed.  Therefore, the Named Plaintiffs are responsible for any alleged delay.

27

28

1

## II

## NEXT FRIEND REQUIREMENTS

Fed.R.Civ.P. 17(c)(2) provides, in pertinent part, that, "a minor … who does not have a duly appointed representative may sue by a next friend …"  The "availability of next friend standing as an avenue into federal court is strictly limited." *Hamdi v. Rumsfeld,* 294 F3d 598, 603 (4th Cir. 2002) *(Hamdi I).*  "'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another."  *Whitmore v. Arkansas*, 495 U.S. 149, 163, 110 S.Ct. 1717, 109 L.Ed. 135 (1990).

It is the putative next friend's burden to present "meaningful evidence" showing (1) "an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action," and (2) dedication "to the best interests of the person on whose behalf he seeks to litigate."  *Whitmore,* 495 U.S. at 163. Further, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and have some significant relationship with the real party in interest.  *Id*., pp. 163-164.  The burden is on the "next friend" to clearly establish the propriety of his status and thereby justify the jurisdiction of the court.  *Id*., p. 164.

To establish standing, and of central importance here, "a 'next friend' must have some significant relationship with the real party in interest."  *Whitmore,* 495 U.S. at 164; *see also, Coalition of Clergy, Lawyers, and Professors, et al, v. Bush, et al.,* 310 F.3d 1153, 1161-1162, 5 A.L.R. Fed. 2d 723 (2002).  The existence of a significant relationship helps ensure that the next friend has a personal stake in the controversy and be fully dedicated to serving the minor's interests.  *Coalition of Clergy,* 310 F.3d at 1161-1162; *Hamdi I,* 294 F.3d at 604-606; *Massie ex rel. Kroll v. Woodford,* 244 F.3d 1192, 1194 (9th Cir.2001) (the two-pronged *Whitmore* inquiry requires the next friend to

have some significant relationship with, and be truly dedicated to the best interests of, the petitioner).

The requirement of a significant relationship is connected to a value of great constitutional moment, because it prevents a "litigant asserting only a generalized interest in constitutional governance [from] circumvent[ing] the jurisdictional limits of Art. III simply by assuming the mantle of 'next friend.'" *Whitmore,* 495 U.S. at 164. It offends the policy behind the requirement of standing, which is to confine the right to initiate and control federal court litigation to persons who have a concrete stake, rather than merely an ideological interest—passionate and motivating as such interests can be—in the litigation. *Ibid.*

Without such a limitation, not only would the federal courts be flooded by "cause" suits, but people who did have concrete stakes in a litigation would often be thrust aside by the ideologues. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982). Otherwise, "however worthy and high minded the motives of 'next friends' may be, they inevitably run the risk of making the [real party in interest] a pawn to be manipulated on a chessboard larger than his own case." *Coal. of Clergy*, 310 F.3d at 1161, citing *Lenhard v. Wolff,* 443 U.S. 1306, 1312, 100 S.Ct. 3, 61 L.Ed.2d 885 (1979) (Rehnquist, Circuit Justice).

"The proper rule is that the next friend must be an appropriate alter ego for a plaintiff who is not able to litigate in his own right; that ordinarily the eligibles will be confined to the plaintiff's parents, older siblings (if there are no parents), or a conservator or other guardian, akin to a trustee; *that persons having only an ideological stake in the child's case are never eligible*; but that if a close relative is unavailable and the child has no conflict-free general representative the court may appoint a personal friend of the plaintiff or his family, a professional who has worked with the child, or, in desperate circumstances, a stranger whom the court finds to be especially suitable to represent the

3

child's interests in the litigation."  (Italics added).  *See T.W. by Enk v. Brophy*, 124 F.3d 893, 897-898 (7th Cir. 1997), citing *In re Cockrum,* 867 F.Supp. 494 (E.D.Tex.1994); *Davis v. Austin*, 492 F.Supp. 273, 275 (N.D.Ga.1980) (cited with approval in the *Whitmore* case, 495 U.S. at 164, 110 S.Ct. at 1727).

The *T.W. by Enk* court reasoned that:

> Without such a rule, and specifically its exclusion of purely ideological 'friends,' we may find Mr. Enk popping up in children's suits all over the circuit, perhaps all over the country. To entitle a stranger to bring suit on behalf of children or other legal incompetents on the basis of blunderbuss allegations in a complaint is too facile a circumvention of the ordinary limitations on standing.  There is, as we have said, no absolute prohibition against the district judge's permitting a stranger, like Enk, to serve as the children's next friend, or to appoint Enk their guardian ad litem; but the presumption is against, and a strong case for an exception must be made—bare allegations in a complaint won't do.

*T.W. by Enk v. Brophy,* 124 F.3d at 898.

The District of Nebraska, when facing an almost identical issue with similar facts, found that:

> The evidence supports a finding that each of these next friends have "an ideological stake" in the named plaintiffs' case; *their primary objective appears to be changing Nebraska's child welfare system*.
>
> ***
>
> The record reflects that the *next friends expended little, if any, effort to seek out sources and discover the current circumstances or the potential risk of harm faced by their assigned named plaintiff*. They filed a complaint on behalf of the child without this knowledge; and as of the time their depositions were taken (at least three months after this suit was filed), they still lacked the information necessary to assess the state's current efforts on behalf of the child, and had little, if any, reliable information concerning the circumstances and suitability of the child's current placement. Whatever concerns they did have were not voiced to the

4

juvenile court, guardians ad litem, county attorneys, HHS caseworkers, or the Foster Care Review Board. *The evidence currently before me indicates that while each next friend may have sincere empathy for her named plaintiff's plight, her goal in this litigation is system change on behalf of others and not advocating the individual interests of her named plaintiff.* (Footnote omitted.) (Italics added.)

*Forman, et al., v. Heineman, et al.,* 240 F.R.D. 456, 518-520 (D. Neb., 2007).

The *Forman* court rejected the next friends standing and dismissed the lawsuit based on abstention. *Id.* at 520.  But the court noted that had the case survived the abstention, the court would have appointed new next friends. *Id.* at 551.

### III

### THE NEXT FRIENDS LACK STANDING TO SUE ON BEHALF OF THE NAMED PLAINTIFFS

**A.   CRI RECRUITS NEXT FRIENDS TO ADVANCE ITS CAUSE, NOT THE BEST INTERESTS OF THE CHILDREN NAMED AS PLAINTIFFS**

This case is brought by lawyers acting through an organization called Children's Rights, Inc. ("CRI"), out of New York City, who are in the business of suing states.[2]  In this lawsuit, CRI has turned its sights on the State of Arizona.

Based on testimony provided by the putative "next friends" in another CRI class action, CRI contacts individuals in the targeted state who advertise as children's rights advocates, such as the Arizona Center for Law in the Public Interest. CRI researches the target state's foster care system.  After conducting its research, CRI then contacts individuals in the targeted state who advertise as children's rights advocates.  CRI asks the children's rights advocates if they know of any foster children who fit into CRI's narrative that it intends to make in the class action suit.  The local organization(s) either provides names of potential children to CRI, or directs CRI to another individual or

---

[2] Children's Rights, Inc. boasts on its website that 77% of its annual income is generated through legal fees paid by states across the country that have been sued by CRI and forced into settlements that provide for payment of CRI's attorneys' fees.  Http://www.childrensrights.org/wp-content/uploads/2015/06/UPDATED-CR-Annual-Report-13-14-6-2-15.pdf (last visited March 7, 2016).

organization that may have names of such children.  After CRI, with the help of the local organization(s), identifies children who fit the mold of its complaint, CRI begins its search for individuals willing to serve as the "next friend" to these children.  At the conclusion of this process, CRI files its class action lawsuit, naming the foster children and "next friends."

In other words, CRI first decides to sue the attacked state before evaluating whether there are children who have been harmed.  Although that practice may not be illegal, it warrants closer scrutiny into whether the putative Next Friends are representing the best interests of the Named Plaintiffs or, more likely, the best interests of CRI.

As is shown below, the putative Next Friends did not initiate this action on behalf of children with whom they have a relationship, or in the best interests of those children.  Instead they are professional advocates who hope to advance their ideological agendas through the avenue of the Federal Courts as opposed to the proper legislative channels.  They seek to substitute their judgments for those of the duly elected and/or appointed representatives of the citizens of the State of Arizona.

In fact, other than Susan Brandt, the putative Next Friends have had absolutely no connection to the Named Plaintiffs before being contacted by CRI to act as their Next Friend.  They learned of the children through the information given to them by CRI.  The putative Next Friends are simply a vehicle used by CRI to advance its lawsuit, and have "only an ideological stake in the child's case," and therefore cannot be eligible.  *See T.W. by Enk,* 124 F.3d at 897-898; *Coal. of Clergy*, 310 F.3d at 1161.

The decision for a child to proceed in this litigation should not be taken lightly.  Disclosure will be made of their most sensitive, personal, and intimate information.  Although the children are assigned pseudonyms and a Protective Order will be issued, this does not mean that their identities will be completely protected, especially when they are called to testify.  Disclosure to the public is even more likely if Plaintiffs are

1  successful in preventing Defense Counsel from redacting personally identifying

2  information from the Named Plaintiffs' files.

3  **B.    SUSAN BRANDT IS NOT AN APPROPRIATE "NEXT FRIEND" FOR A.C-B; M.C-B; J.C-B; D.C-B; AND/OR J.M.**

4

5          **1.    Ms. Brandt Has a Conflict of Interest.**

6          Ms. Brandt is currently employed as the Social Work Supervisor for the Pima

7  County Office of Children's Counsel, a governmental entity which represents each of the

8  Named Plaintiffs for which she seeks to serve as Next Friend.  (Doc. 85, ¶ 7).  In her

9  position, she provides "guidance and advice … to make sure that [approximately 200

10  children in dependency cases in Pima County] receive the services and supports they

11  need." *Ibid*.

12          Yet in this lawsuit, Ms. Brandt, if allowed to serve as a Next Friend, will have to

13  maintain that these children are not receiving the services and support for which she is

14  responsible.  Accordingly, Ms. Brandt will have to argue that she and her governmental

15  employer are violating the Named Plaintiffs' constitutional rights.  In this regard, it is

16  doubtful that Ms. Brandt's employer is aware that she is a putative Next Friend in this

17  action.

18          At the very least, these conflicting roles create the appearance of impropriety.  If

19  Ms. Brandt is focused on the success of this class action suit she may find herself,

20  perhaps unknowingly, relaxing her efforts at the state level of seeking appropriate

21  services, supports, and placements for these children.  After all, if the Named Plaintiffs

22  are receiving appropriate care, which is the position of the Defendants, then the class

23  action fails. Ms. Brandt has a direct conflict of interest.

24          **2.    Ms. Brandt Has Violated A.R.S. §§ 8-542 and 8-807.**

25          A.R.S. § 8-542 is entitled "Confidentiality of information; violation;

26  classification," and provides, in pertinent part, that, except in circumstances not available

27  here,

28

*It is unlawful … for any person to knowingly disclose, receive or make use of,* or authorize, knowingly permit, participate in or acquiesce in the use of, *any information involved in any proceeding under this article* [Termination of Parent-Child Relationship] directly or indirectly derived from the files, records, reports or other papers compiled pursuant to this article or acquired in the course of the performance of official duties." A.R.S. § 8-542(A) (Italics added).

Further, "[a] person who knowingly discloses information in violation of this section is guilty of a class 2 misdemeanor." A.R.S. § 8-542(B).

Ms. Brandt has obtained information protected by A.R.S. § 8-542. She avers that she has "attended meetings with their providers;" "reviewed their case files *in the ordinary course of [her] responsibilities*;" "spoken with the social workers in [her] office who serve them;" and has "worked closely with their Office of Children's Counsel attorneys." (Doc. 85, ¶ 13 [Italics added]). This is "information involved in [a] proceeding" covered by A.R.S. § 8-542, and/or has been "derived from the files, records, reports or other papers compiled pursuant to this article or acquired *in the course of the performance of official duties*." A.R.S. § 8-542(A) (Italics added).

Worse, Ms. Brandt has illegally disclosed and used this information for purposes other than as allowed by A.R.S. § 8-542. *See*, A.R.S. § 8-542(B). She openly avers that she has "discussed the litigation with Plaintiffs' counsel on many occasions." (Doc. 85, ¶¶ 8 & 10). Further, the allegations in the SAC concerning these Named Plaintiffs clearly come from Ms. Brandt through knowledge obtained in the ordinary course of her responsibilities of providing services and supports to the Named Plaintiffs. By so doing, Ms. Brandt has violated A.R.S. § 8-542, which could constitute a "class 2 misdemeanor." A.R.S. § 8-542(B). The issues involved in this class action lawsuit are outside the scope of Ms. Brandt's representation of these children in the state court juvenile matters.

Ms. Brandt has also violated A.R.S. § 8-807 which protects all information gathered by Arizona Department of Child Services ("DCS") "from the time a file is opened and until it is closed." A.R.S. § 8-807(X). Any person "who receives DCS

1   information shall maintain the confidentiality of the information and shall not further

2   disclose the information unless the disclosure is authorized by law or court order."

3   A.R.S. § 8-807(U).

4          Here, Ms. Brandt avers that she "attended Team Decision Meetings, CPS [Child

5   Protective Services] Case Staffings, Child and Family Team Meetings, and works with

6   placement providers on behalf of approximately *200 children in the legal custody of*

7   *DCS each year*."  (Doc. 85, ¶ 7 [Italics added]).  This is information "gathered by

8   [DCS]" while the file is opened, and assuredly known by Ms. Brandt based on her years

9   of working in the foster care system, as confidential information.  Yet despite that

10  knowledge, and without a court order, Ms. Brandt disclosed this confidential

11  information to CRI.  Such disclosure could constitute a "class 2 misdemeanor."  A.R.S.

12  § 8-807(W).

13         **3.     Ms. Brandt Has No Relationship with the Named Plaintiffs and Has**

14              **Never Raised Any Concerns About Their Services or Treatment.**

15         Ms. Brandt does not aver that she has *any* relationship with the Named Plaintiffs.

16  There is also no averment that she has ever discussed this litigation, and its

17  consequences, with the Named Plaintiffs.

18         This is an important and fatal flaw.  These Named Plaintiffs have experienced

19  very tragic and embarrassing circumstances.  These experiences will be central to the

20  trial of this class action, requiring the children, one of whom is only four years old, to

21  relive those experiences and disclose this confidential information.  If Ms. Brandt were

22  acting in these children's best interests, it is expected that she would have made sure

23  they were comfortable with being named as Plaintiffs in this suit and included such

24  averments in her Declaration.  She has not.

25         Ms. Brandt does aver, however, that she has "attended meetings with [the Named

26  Plaintiffs'] providers" and has attended Child and Family Team Meetings, and has had

27  other contracts with the service providers for the Named Plaintiffs. (*See*, Doc. 85, ¶¶ 7 &

28

10).  Conspicuously absent, however, is any averment that she raised any concerns about the services or treatment provided to the Named Plaintiffs with the juvenile court, DCS, or any other person.  If she was truly concerned about these children, or if there was any evidence of harm, Ms. Brandt would have raised those issues with the appropriate people.  She did not, clearly showing that no such harm exists.  At the very least, this is another illustration that Ms. Brandt is wrongly pursuing her own ideological goals, and not seeking the best interests of the Name Plaintiffs.  *See Coalition of Clergy,* 310 F.3d at 1161-1162; *Hamdi I,* 294 F.3d at 604-606; *Massie,* 244 F.3d at 1194; *T.W. by Enk*, 124 F.3d at 893, 897-898; *Forman,* 240 F.R.D. at 518-520.

Accordingly, Ms. Brandt is not a suitable "next friend" for these children.

**C.**    **JENNIFER KUPISZEWSKI IS NOT AN APPROPRIATE "NEXT FRIEND" FOR B.T. AND/OR C.P.**

Ms. Kupiszewski fails to provide any information as to how she became involved in this matter as "next friend" for B.T. or C.P.  She only states that she discussed the case with Plaintiffs' Counsel and reviewed the pleadings in this class action.  (Doc. 86, ¶ 10).

Although Ms. Kupiszewski has had contact with B.T., the circumstances surrounding that contact is troublesome.  Ms. Kupiszewski somehow learned that B.T. was in a detention facility and met him there.[3]  (Doc. 86, ¶ 110).  Absent is any explanation as to how Ms. Kupiszewski came to learn about B.T. or the fact that he was in detention.  The fact that an attorney would directly approach a represented child in a detention center to solicit him to be a Named Plaintiff in this case is very concerning.

B.T. has court-appointed attorneys in both the juvenile custody matter and the juvenile criminal matter.  Yet Ms. Kupiszewski failed to contact either of those attorneys before, or even after, approaching their client and soliciting him as a Named Plaintiff.  Instead, she received information from CRI and, without verifying the authenticity of the information, approached a represented child in a criminal detention facility.  She did this

---

[3] Ms. Kupiszewki's averments concerning B.T.'s circumstances surrounding his detention are inaccurate.

1    on behalf of CRI and as an effort to succeed on this lawsuit.  She did not do this on

2    behalf of, or in the best interests of, B.T.

3           It is also troubling that Ms. Kupiszewski approached B.T. just days before the

4    lawsuit was originally filed on February 3, 2015, or after he had already been named as a

5    Plaintiff in this lawsuit.  (*See*, Doc. 86, ¶ 11 ["[i]n early February 2015, I met with

6    [B.T.]").  Accordingly, there was not adequate enough time for Ms. Kupiszewski to learn

7    of B.T.'s circumstances well enough to determine whether it is in his best interests to

8    participate as a Named Plaintiff in this lawsuit.

9           Equally as concerning is the fact that Ms. Kupiszewski does not aver that she

10   informed B.T. of the personal ramifications of being involved as a Named Plaintiff.  She

11   did not inform him that his personal information, including a horrific history of sexual

12   abuse and mental health issues, will most likely be disclosed.  She did not inform him

13   that he may be called to testify at a hearing or trial and may have to give details about the

14   horrific abuse he suffered.  Regardless, as is fatally absent from each Declaration

15   submitted in support of Plaintiffs' Motion, Ms. Kupiszewski fails to aver that it is in

16   B.T.'s best interests to participate in this matter.

17          As for Named Plaintiff, C.P., there is no averment in Ms. Kupiszewski's

18   Declaration that she has had *any* contact with C.P., who is not related to B.T., let alone

19   that she is familiar with C.P.'s circumstances and that it is in C.P.'s best interests to be a

20   Named Plaintiff.  Ms. Kupiszewski has made no contact with anyone concerning C.P.,

21   except for the CRI attorneys.  Clearly she is only named as his Next Friend for the

22   convenience of this lawsuit.

23          Ms. Kupiszewski cannot aver, and she has not, that she is familiar with C.P.'s

24   circumstances and that she can, therefore, represent the true interests of C.P. in this case.

25   In fact, there is no averment that C.P. even knows he is involved in this lawsuit.  Also,

26   this is further evidence that the only information upon which Ms. Kupiszewski relies on

27

28

is what has been told to her by CRI attorneys in the pursuit of advancing their own interests.

Ms. Kupiszewski readily admits that she is serving as Next Friend for C.P. and B.T. for an improper purpose.  She attests that she is involved in this lawsuit "because I think that they and other children like them need help."  (Doc. 86, ¶ 13).  Ms. Kupiszewski's interest in this lawsuit is purely ideological.  Accordingly, for the same reasons that the putative next friends were found unsuitable in *T.W. by Enk,* Ms. Kupiszewski is an unsuitable Next Friend in this action.

Accordingly, Ms. Kupiszewski is not a suitable "next friend" for Named Plaintiffs B.T. and C.P.

**D.**   **MARGRET TINSLEY IS NOT AN APPROPRIATE "NEXT FRIEND" FOR B.K.**

Noticeably absent from Ms. Tinsley's Declaration is any averment, or other evidence, that Ms. Tinsley has ever met B.K, let alone has any sort of relationship with B.K.  Also fatally absent is any assertion that Ms. Tinsley is aware of B.K.'s circumstances so as to determine whether it is in B.K.'s best interests to participate in this lawsuit.  In fact she has never met with nor asked B.K. if she wants to be named in a lawsuit.  That is especially important considering that, as a Named Plaintiff, B.K.'s sensitive and personal history of abuse and significant mental health history will be disclosed to potentially hundreds of people.

Ms. Tinsley merely avers that she has "discussed this case with Plaintiffs' Counsel," reviewed "the pleadings" in this lawsuit (Doc. 87, ¶ 8), and has met with "B.K.'s former foster parent and school counselor. [4]  (Doc. 87, ¶¶ 8 & 9).  It should also

---

[4] It should be noted that this former foster parent, who is a school counselor, may have violated Arizona law by disclosing B.K.'s confidential information to a stranger who has no legal right to the information. *See* A.R.S. § 8-542(B) [disclosure of such confidential information constitutes a criminal misdemeanor]; A.R.S. § 8-807(W) [disclosure of DCS information constitutes a criminal misdemeanor].

1  be noted that Ms. Tinsley did not speak with B.K., B.K.'s current foster parents, or

2  B.K.'s guardian ad litem.

3          Without any evidence that she has "some significant relationship with the real

4  party in interest," as required by *Whitmore,* 495 U.S. at 164, Ms. Tinsley states that she

5  "decided to serve as the Next Friend for B.K. in this case because *I believe there are*

6  *serious failures in the Arizona child welfare system that put B.K. and other foster*

7  *children in foster care at risk.*"  (Doc. 87, ¶10 [Italics added]).

8          But, again, there is no averment that it is in the best interests of B.K. to be a

9  Named Plaintiff in this lawsuit.  Instead, Ms. Tinsley is pursuing her ideological goals.

10  As was held by the Court in *T.W. by Enk,* this is not an adequate basis to confer next

11  friend status.  *See* 124 F.3d at 897-898.  Further, Ms. Tinsley lacks standing to pursue

12  this matter in her own name and is improperly using B.K. as her "mantle" to gain

13  standing.  *See Whitmore* 495 U.S. at 164.  She is doing so at the expense of B.K.

14          Accordingly, Ms. Tinsley is not a suitable "next friend" for Named Plaintiff B.K.

15                                            **IV**

16                                    **CONCLUSION**

17          For the reasons stated above, the Court should not grant Plaintiffs' Motion.

18

19  **RESPECTFULLY SUBMITTED** this 7th day of March, 2016.

20

21                          **MARK BRNOVICH - ATTORNEY GENERAL**

22                          s/ Gary N. Lento
                            **Gary N. Lento**
23                          **Melanie G. McBride**
                            **Joshua R. Zimmerman**
24                          *Attorneys for Defendant GREGORY McKAY, in his*
                            *Official Capacity as Director of the Arizona*
25                          *Department of Child Safety*

26

27

28

                                            13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STRUCK WIENEKE & LOVE, P.L.C.**

s/ Daniel P. Struck
**Daniel P. Struck**
**Kathleen L. Wieneke**
**Timothy J. Bojanowski**
**Nicholas D. Acedo**
**Tara B. Zoellner**
*Attorneys for Defendant CARA M. CHRIST, in her*
*Official Capacity as Director of the Arizona*
*Department of Health Services*

**JOHNSTON LAW OFFICES, P.L.C**

s/ Logan T. Johnston
**Logan T. Johnston**
*Attorneys for Defendant THOMAS J. BETLACH, in*
*his Official Capacity as Director of the Arizona*
*Health Care Cost Containment System*

1

**CERTIFICATE OF SERVICE**

2     I hereby certify that on March 7, 2016, I electronically transmitted the attached

3   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4   Notice of Electronic Filing to the following, if CM/ECF registrants:

5

6   William Kapell
    Julia L. Davis

7   Rachel B. Nili
      CHILDREN'S RIGHTS, INC.

8     330 7th Ave., 4th Floor
      New York, NY  10001

9

10  Joseph Mais (005470)
    Shane Swindle (011738)

11    PERKINS COIE LLP
      2901 N. Central Avenue, Suite 2000

12    Phoenix, Arizona  85012-2788

13
    Anne C. Ronan
14  Timothy M. Hogan
      ARIZONA CENTER FOR LAW IN THE PUBLIC INTEREST
15    514 W. Roosevelt St.

16    Phoenix, AZ  85003

17  *Attorneys for Plaintiffs*

18
    Catherine Dodd Plumb
19    LAW OFFICES OF CATHERINE DODD PLUMB, P.L.C.
      17225 N. 16th Place
20    Phoenix, AZ 85022

21
      *Attorney for Defendant THOMAS J. BETLACH*
22

23                                        MARK BRNOVICH
                                          Attorney General
24

25                                        s/ Gary N. Lento
                                          *Attorney for Defendant GREGORY A. McKAY,*
26                                        *in his official capacity as Director of the*
                                          *Arizona Department of Child Safety*

27

28