Joseph Mais (005470)
Shane Swindle (011738)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
T: (602) 351-8000
F: (602) 648-7000
jmais@perkinscoie.com
sswindle@perkinscoie.com

Anne C. Ronan (006041)
Timothy M. Hogan (004567)
**ARIZONA CENTER FOR LAW IN THE
 PUBLIC INTEREST**
514 West Roosevelt Street
Phoenix, Arizona  85003
T:  (602) 258-8850
F: (602) 258-8757
aronan@aclpi.org
thogan@aclpi.org

William Kapell (admitted *pro hac vice*)
Julia L. Davis (admitted *pro hac vice*)
Rachel B. Nili (admitted *pro hac vice*)
Adriana T. Luciano (admitted *pro hac vice*)
**CHILDREN'S RIGHTS, INC.**
330 Seventh Avenue, Fourth Floor
New York, New York  10001
T:  (212) 683-2210
F:  (212) P683-4015
wkapell@childrensrights.org
jdavis@childrensrights.org
rnili@childrensrights.org
aluciano@childrensrights.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| B.K. by her next friend Margaret Tinsley; C.P. and B.T. by their next friend Jennifer Kupiszewski; A.T.; A.C-B; M.C-B; J.C-B; D.C-B; J.M. and J.C. by their next friend Susan Brandt, for themselves and those similarly situated,<br><br>               Plaintiffs,<br><br>  v.<br><br>Gregory McKay, in his official capacity as Director of the Arizona Department of Child Safety; Cara M. Christ, in her official capacity as Director of the Arizona Department of Health Services; and Thomas J. Betlach, in his official capacity as Director of the Arizona Health Care Cost Containment System,<br><br>               Defendants. | No. 2:15-cv-00185-PHX-ROS<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR APPOINTMENT OF NEXT FRIENDS UNDER FEDERAL RULE OF CIVIL PROCEDURE 17(c)**<br><br>(Assigned to the Honorable Roslyn O. Silver) |

Defendants' Joint Opposition to this motion (Dkt. No. 95) misinterprets controlling case law and strips the test for next friend suitability of the flexibility that this Circuit has explicitly vested it with.  In so doing, Defendants seek to rob the Named Plaintiffs here of the individuals who are best able to protect their interests in this complex federal court litigation.  As discussed in detail below, the many cases cited by the parties in their briefing and the arguments back and forth boil down to the following three key points:  (1) it is well within the letter and the spirit of Ninth Circuit case law on next friend suitability, and the discretion of this Court, to appoint Ms. Brandt, Ms. Kupiszewski, and Ms. Tinsley to serve as Next Friends in this case; (2) the Named Plaintiffs here, who have been removed from their homes due to abuse or neglect and are suing their guardian – the state – for violating their constitutional rights, lack close connections with adults who would be objective, qualified and able to adequately protect their interests in this lawsuit; (3) Ms. Brandt, Ms. Kupiszewski, and Ms. Tinsley are truly dedicated to the best interests of the Named Plaintiffs, and their appointment is the best way to protect the Named Plaintiffs' interests and allow them to vindicate their vital constitutional and statutory rights.

## I.     The Appointment of the Three Next Friends Is Supported by Controlling Law

Pursuant to the Federal Rules of Civil Procedure, "[a] minor . . . who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem."  Fed. R. Civ. P. 17(c)(2).  The capacity of an individual to sue is determined "by the law of the individual's domicile."  Fed. R. Civ. P. 17(b)(1).  Under Arizona law, children under the age of 18 are minors.  A.R.S. § 1-215.  Minors may sue or defend a legal action by a next friend or guardian ad litem.  16 A.R.S. R. Civ. P. 17(g).  Here, the Named Plaintiffs ranged in age from 3 to 14 years old when the suit was brought.  As a matter of law, none of them has capacity to bring this suit in federal court without an adult representative, *see* Fed. R. Civ. P. 17(c)(2), and Defendants do not argue otherwise in their brief.

"The decision whether to appoint a next friend or guardian *ad litem* rests with the sound discretion of the district court."  *Adamson v. Hayes*, No. cv-05-2286-PHX-JWS

1

(LOA), 2010 WL 5069885, at *4 (D. Ariz. Dec. 7, 2010).  There is no question that this Court has the discretion under *Whitmore v. Arkansas*, 495 U.S. 149 (1990), as well as Ninth Circuit law, to appoint the three Next Friends proffered here.

First, Defendants' attempt to construct a rigid legal test for next friend suitability is based on a misstatement of the Supreme Court's holding in *Whitmore*.  Defendants claim that "[t]o establish standing, and of central importance here, 'a "next friend" must have some significant relationship with the real party in interest.'  *Whitmore*, 495 U.S. at 164." Defs.' Joint Opposition ("Def. Opp.") at 2.  In fact, *Whitmore* does not say that.  It sets forth a two-pronged test for next friend standing that does <u>not</u> include any significant relationship requirement and then states, with a citation to a single federal district court decision, that "*it has been further suggested* that a 'next friend' must have some significant relationship with the real party in interest."  495 U.S. at 163-64 (emphasis added). Defendants' citations to *Whitmore* on page 3 of their brief are similarly disingenuous.[1]

Second, although Defendants cite to the Ninth Circuit's decision in *Coalition of Clergy* multiple times, they fail to address the key language in that decision that is at issue here:  the Ninth Circuit's recognition that "there may be some extreme circumstances necessitating relaxation of the *Whitmore-Massie* standard" that the Court "reserve[d] consideration of" for "another day."  *Coal. of Clergy, Lawyers, and Professors v. Bush*, 310 F.3d 1153, 1162 (9th Cir. 2002).  As discussed in Plaintiffs' moving brief, in *Nichols v. Nichols*, No. 10-651-HA, 2011 WL 2470135, at *6 (D. Or. June 20, 2011), a court in

---

[1] *Whitmore* does not hold, as Defendants assert, that the "*requirement of a significant relationship*" is of "constitutional moment, because it prevents a 'litigant asserting only a generalized interest in constitutional governance [from] circumvent[ing] the jurisdictional limits of Art. III . . . .'"  Def. Opp. at 3 (emphasis added) (quoting *Whitmore*, 495 U.S. at 164).  Rather, *Whitmore* declares that the "limitations on the 'next friend' doctrine generally—including the requirement that a next friend "provide an adequate explanation . . . why the real party in interest cannot appear on his own behalf" and the requirement that the next friend "must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate"—are what ensure that litigants "asserting only a generalized interest in constitutional governance" cannot "circumvent the jurisdictional limits of Art. III." *Whitmore*, 495 U.S. at 163-64.

this Circuit appointed a next friend for a minor where there was no preexisting significant relationship between the child and the next friend, holding that such appointment fit "squarely within the exception for what the Ninth Circuit has contemplated as an 'extreme case.'" *Id.* Notably, the *Nichols* Court rejected two alternative proposed next friends who were relatives of the child: the child's grandmother and the child's great-grandfather. *Id.* The court further found that appointment of the proposed next friend who did not have a preexisting relationship with the child was "necessary and proper" because there were "no grounds for questioning [his] qualifications or capacity to serve effectively" and his "experience, objectivity, and expertise in this role make him an exceptional candidate for such services." *Id.* at *6, 4.

Even courts outside of the Ninth Circuit have relied on the Ninth Circuit's decision in *Coalition of Clergy* in recognizing that there are circumstances that necessitate appointment of a next friend who does not have a preexisting relationship with the child. For example, the First Circuit cited to language from *Coalition of Clergy* providing that the significant relationship requirement must "necessarily adapt to the circumstances" in its decision appointing a professor with child welfare expertise as next friend for four foster children bringing a lawsuit similar to this one, even though the professor had no preexisting relationship with the children. *See Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 91 (1st Cir. 2010). The Court held that "[i]mportant social interests are advanced by allowing minors access to a judicial forum to vindicate their constitutional rights through a Next Friend that the court finds has a good faith interest in pursuing a federal claim on the minor's behalf; particularly where, as here, the minors seek relief for alleged violations of the guardian's duty to protect them." *Id.* at 91-92. As this Court has acknowledged, Ninth Circuit law similarly holds that a child must have access to a judicial forum to vindicate his rights and that a court must appoint a next friend to represent the child. *See* 3/11/16 Hearing Transcript at 17; *Davis v. Walker*, 745 F.3d 1303, 1310-11 (9th Cir. 2014)

(holding that "the court may not use [Rule 17(c)] as a vehicle for dismissing claims or for allowing the interests of an incompetent litigant to go completely unprotected.").

Many other courts, including courts in the two cases cited in Defendants' brief that involved children, have similarly recognized the need for next friends with no preexisting relationship with the child in certain circumstances. *See* Pls. Mot. (Dkt. No. 83) at 7-9 (citing cases); Def. Opp. at 4-5, *citing T.W. by Enk v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997); *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 520 (D. Neb. 2007).

## II.   The Named Plaintiffs Here Do Not Have Close Relationships with Other Adults Who Could be Qualified Next Friends

It is hard to imagine that the Ninth Circuit in *Coalition of Clergy* could have contemplated a more compelling set of "extreme circumstances" than those that the Named Plaintiffs present to this Court today.  These circumstances—which Plaintiffs laid out in their Motion, *see* Pls. Mot. at 8-9, and which Defendants did not dispute in their brief—are as follows:

### a.   *A.C-B, M.C-B, J.C-B, and D.C-B*

Upon removal, the C-B siblings were initially placed with a relative for approximately two months and then were split up between a foster home and a non-therapeutic group home.  Second Amended Complaint (Dkt. No. 37) ("SAC") at ¶ 86. Congregate care placements, such as group homes, do not provide an environment where children are able to make long-term, meaningful connections with adults.  The children were then moved to their father's home for two weeks until he requested their removal.  *Id.* at ¶ 88.  They were then split up into three different foster homes.  *Id.* at ¶ 89.  Two months later, D.C-B was moved to the same foster home as M.C-B and A.C-B, while J.C-B remained in a separate foster home.  *Id.* at ¶ 93.  When this lawsuit was filed, each of the C-B children had been in their respective placements for seven to ten months.  Considering the number of moves they experienced, the fact that they were not placed together, and their high needs, the stability of their placements was uncertain.  Ms. Brandt, as Social Work Supervisor responsible for assisting the children's state court attorneys with their

4

cases, has an authorized professional relationship with the children, and has offered to serve as the C-B siblings' Next Friend.  *See* Davis Reply Dec. at ¶ 4.  She has the support of the C-B siblings and their state court attorneys.  *See* Brandt Reply Dec. at ¶ 1.

               b.     *J.M.*

     After J.M.'s removal from his home, he was placed in a shelter for five days and then with his grandmother.  SAC at ¶ 99.  However, she was unable to care for him, and he was moved to a group home in a different county for two months.  *Id.*  Between July 2012 and October 2014 DCS proceeded to move J.M. through an unlicensed kinship home in his home community, a kinship placement two hours from his home county, a licensed family foster home in his home county, a non-therapeutic group home two hours away, four different group homes all two hours from his home community, and a shelter.  *Id.* at ¶ 100-07.  J.M.'s extreme placement instability and frequent moves far from his home community further disrupted any relationships that he had.  During this period, J.M. also changed schools several times and missed a large amount of school due to DCS's failure to ensure his transportation.  *Id.* at ¶ 100-06.  J.M. was moved into a licensed non-therapeutic foster home in late October 2014.  Therefore, he had only been in this home for less than four months when this lawsuit was filed.  Ms. Brandt, as Social Work Supervisor responsible for assisting J.M.'s state court attorney with his case, also has an authorized professional relationship with him.  *See* Davis Reply Dec. at ¶ 4.  Moreover, her willingness to serve as his Next Friend has the support of J.M. and his state court attorney.  *See* Brandt Reply Dec. at ¶ 1.

               c.     *B.T.*

     B.T. has spent a large percentage of his years in foster care in institutional settings such as group homes, shelters, hospitals and residential treatment facilities.  SAC at ¶ 45-46, 51, 56-60, 62-64, 66.  He lived with his paternal aunt for over a year.  *Id.* at 48-50.  However, that placement disrupted in September 2006 when his aunt told DCS that she could no longer care for B.T.  *Id.* at ¶ 50.  B.T. was adopted in 2008, but the placement disrupted and he was returned to foster care.  *Id.* at ¶ 55.  He reported that his adoptive father had been beating him with a belt.  *Id.*  B.T. has also cycled through a number of

foster placements.  *Id.* at ¶ 50-51, 60, 65.  B.T.'s multiple placement moves have meant that he has changed schools many times.  *Id.* at ¶ 67.  He therefore could not develop close relationships with adults in his school setting.  As of January 2015, a month before the filing of this lawsuit, B.T. was in a juvenile detention facility.  *Id.* at ¶ 68.  Ms. Kupiszewski offered to serve as B.T.'s next friend after the two attorneys who represent B.T. in connection with his state court proceedings declined to serve as next friends.  *See* Davis Reply Dec. at ¶ 5.  She did so with the support of B.T. himself.  *Id.* at ¶ 6.

        d.    *C.P.*

     C.P. has experienced extreme placement instability during his time in foster care. Since he was removed from his home in June 2013, he has cycled through at least 11 different placements and has attended at least eight different schools.  SAC at ¶ 33.  C.P. was placed with his grandmother for a two month period after his removal, but she asked DCS to remove him.  *Id.* at ¶ 34.  Moreover, the grandmother did not respond to efforts to ascertain whether she would be willing to consider serving as next friend.  *See* Davis Reply Dec. at ¶ 7.  Prior to the filing of this lawsuit, C.P. was in a temporary therapeutic foster home.  SAC at ¶ 43-44.  Plaintiffs' counsel also contacted C.P.'s then state court GAL to see if she would serve as next friend for him, but the GAL declined.  Davis Reply Dec. at ¶ 7.  Given the lack of other appropriate adults in C.P.'s life who could serve as next friend, Ms. Kupiszewski agreed to do so.  *Id.*  Significantly, she did so with the support of C.P.'s former and present GALs, who have had regular contact with C.P.  *Id.*  C.P.'s current GAL also supports this suit and Ms. Kupiszewski serving as his next friend.  *Id.*

        e.    *B.K.*

     Despite her young age, B.K. has spent a significant amount of time in group care during her time in foster care.  SAC at ¶ 24, 28-29.  The placements that B.K. has been in have quickly disrupted (one lasted eight weeks, once lasted two weeks, and one lasted less than two months).  *Id.* at ¶ 27, 30-31.  B.K. has experienced multiple school changes due to her placement moves.  *Id.* at ¶ 26, 28, 30, 32.  DCS has given B.K. the permanency goal of permanent foster care, meaning that she is unlikely to achieve permanency with any long-term adult caregiver.  *Id.* at ¶ 20.  She was placed in a therapeutic foster home less than two months before the filing of this lawsuit.  *Id.* at ¶ 32.  Plaintiffs' counsel reached out to

B.K.'s former high needs case manager to see if she would agree to serve as a next friend for B.K., but those efforts proved to be unsuccessful.  Davis Reply Dec. at ¶ 8.  B.K.'s former school counselor and temporary foster mother also declined to serve as B.K.'s next friend.  *Id.*  In light of the lack of other suitable adults in B.K.'s life, Ms. Tinsley agreed to serve as B.K.'s next friend.  *Id.*  She did this with the support of B.K.'s state court GAL, who has regular contact with B.K. and represents B.K.'s best interests.  *Id.*

As the above discussion demonstrates, there are no candidates for the next friend role more suitable than Ms. Brandt, Ms. Kupiszewski and Ms. Tinsley.  Foster children, including the Named Plaintiffs here, are in state custody precisely because Defendants have deemed the adults in their lives unable or unwilling to properly care for them, and therefore it is "reasonable to conclude that the adults with whom Plaintiffs have maintained some contact are not willing, able, or available to pursue a legal action against the state . . . ."  *Sam M.*, 608 F.3d at 89; *see also Marisol A. v. Giuliani*, No. 95 Civ. 10533(RJW), 1998 WL 265123, at *9 (S.D.N.Y. May 22, 1998) ("defendants' argument that there may be close family or friends who know the named plaintiffs and would be better suited to represent them in this action is flawed in that it ignores the fact the [child welfare agency] has taken the named plaintiffs into custody, presumably because they were not being provided for adequately by their families."); *Carson P.*, 240 F.R.D. at 520 (for foster children, "[p]arents, adult family members, close adult friends, and general guardians often do not exist, are unmotivated to help, are irresponsible, or have a personal interest in the outcome."); *Nichols*, 2011 WL 2470135, at * 6 (rejecting relatives who were proposed next friends because of questions as to their objectivity and capacity); *Bowen v. Rubin*, 213 F. Supp. 2d 220, 227 (E.D.N.Y. 2001) ("The mere fact that an individual has blood relatives, or close friends, is not a sufficient reason to appoint those persons as representatives.").  Further, "[w]here child welfare reform is the issue, caseworkers have a conflict of interest, and foster parents and HHS compensated service providers (e.g. therapists) likely have a conflict of interest."  *Carson P.*, 240 F.R.D. at 520.

It is therefore unsurprising that, after a diligent search, Plaintiffs' counsel was unable to find individuals with preexisting significant relationships with B.T., C.P. and B.K. who were willing and able to act as Next Friend to them.  *See* Davis Reply Dec. at ¶

5, 7-8.  For the C-B siblings and J.M., Plaintiffs' counsel *was* able to find a next friend with a connection with the children—namely, Ms. Brandt.  *Id.* at ¶ 4.

Moreover, Defendants, who have access to the Named Plaintiffs' DCS case files—which Defendants still have not produced to Plaintiffs—have been unable to identify any viable options for individuals with a relationship with the Named Plaintiffs who would be able to objectively and effectively represent their interests in this lawsuit and who would be more suitable next friends to these children than Ms. Brandt, Ms. Kupiszewski, and Ms. Tinsley.  Specifically, during the parties' meet and confer on March 16, 2016, Defendants proposed the following people:[2]

- Former DCS case managers, individuals who work for certain organizations and advocacy groups, lawyers who represent children in Juvenile Court or individuals who previously worked for the Attorney General's office—**none of whom have any relationship with any of the Named Plaintiffs**.  Due to their lack of a relationship with any of the Named Plaintiffs, there is no basis for this Court to find these individuals to be more suitable Next Friends than Ms. Brandt (who has an authorized professional relationship with the Named Plaintiffs she represents and who has the support of the children and their state court attorneys), Ms. Kupiszewski (who has met B.T. and received his approval to serve as his Next Friend along with the support of his state court GAL, and who likewise has the support of C.P.'s former and current state court GAL), or Ms. Tinsley (who has the support of B.K.'s state court GAL).  Furthermore, many of the organizations Defendants propose (such as ChildHelp, Phoenix Children's Hospital and MIKID) are actually providers for the state and therefore have contracts with Defendants.[3]  A next friend employed by one of them would pose a clear conflict.

---

[2] Defendants did not provide Plaintiffs with the names of the people and stated that none of them have been contacted.  Defendants further stated that they did not have additional information about these individuals and do not know if they would be suitable next friends.

[3] ChildHelp ran an emergency placement center for DCS.  *See AZ's abused, neglected children get new safe haven*, CBS 5 (June 1, 2015), http://www.cbs5az.com/story/29204644/azs-abused-neglected-children-get-new-safe-haven; MIKID contracts with DHS's Regional Behavioral Health Authorities to provide

- For the C-B siblings, a former foster care placement for one of these children, a current foster care placement for two of the children, and a parent aide.  None of these individuals would be a suitable next friend for the C-B siblings.  They are all paid by the state, and the consistency of the relationship between the foster parents and the C-B siblings is called into question by the fact that these children have changed placements frequently while they've been in custody, and the fact that neither of these placements housed all four children.  *See supra* II.a.  If these children's next friend is a foster parent, and the placement disrupts, they would likely no longer have a relationship with that foster parent and that individual would no longer be an appropriate next friend.  By contrast, the C-B siblings' authorized professional relationship with Ms. Brandt does not change when their placement changes.

- For J.M., Defendants did not set forth any individual who has a relationship with him who could serve as his next friend.

- For B.T., a member of the Youth Advocate Programs.  As Youth Advocate is likely a state provider, such person would not be an appropriate next friend.  In any case, Ms. Kupiszewski, whom B.T. has met and spoken with about this litigation—and whom B.T. has stated he wants to serve as his Next Friend—is a more suitable next friend for B.T.

- For C.P., his foster/pre-adoptive parents.  Prior to the finalization of C.P.'s adoption, these foster parents continue to be paid by the state and are beholden to DCS, which plays a large part in the completion of the adoption process.  Therefore, they are not suitable next friends.  If the adoption is finalized before a class is certified, C.P. will no longer be a plaintiff in this lawsuit.  *See* SAC at ¶ 1 (alleging that plaintiffs are children "who are or will be placed in" Arizona state foster care custody).

- For B.K., the adoptive parent of her friend.  Any relationship between B.K. and her friend's adoptive parent would be an attenuated one at best in light of the fact that B.K. has frequently changed placements and schools during her time in custody and has

---

behavioral health services to children. *See* MIKID's History, http://www.mikid.org/about-us/history/; Phoenix Children's Hospital provides care for Medicaid eligible children.

not even had regular contact with her mother or siblings.  *See* SAC at ¶ 22-32; *supra* II.e. In addition, this relationship is dependent on B.K. being placed close to the home of her friend's adoptive parent and on the continuing friendship between B.K., who was ten years old when this lawsuit was filed, and this friend.  By contrast, Ms. Tinsley has the support of B.K.'s GAL, who has regular contact with B.K., and will continue to be a suitable next friend for B.K. regardless of her placement.

In sum, Defendants have not put forth any next friend candidates who merit further consideration from Plaintiffs or this Court. Further, it is not necessary—and in fact improper—for Defendants to be in the position of influencing, selecting or agreeing upon who should serve as Next Friends for Plaintiffs, who are suing Defendants for constitutional and statutory violations.  Under Rule 17, the role of a next friend is to protect an incompetent person or minor's "interests in prosecuting or defending a lawsuit." *Davis*, 745 F.3d at 1310.  Unlike a court monitor or mediator, who must not have an allegiance to one party or the other, a next friend, by definition, is supposed to be "truly dedicated to the best interests of the person on whose behalf he seeks to litigate," *Whitmore*, 495 U.S. at 163, and the court in sanctioning a next friend must "satisfy itself that the 'next friend' is motivated by a sincere desire to seek justice on the infant's behalf." *Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.*, 873 F.2d 25, 30-31 (2d Cir. 1989) (recognizing that putative Next Friend "is the only group of adults likely to seek vindication of the Children's constitutional rights").  To have Defendants, who serve as the Plaintiffs' legal guardian and are responsible for the policies and practices that put Plaintiffs at an unreasonable risk of harm, influence the selection of the Next Friend, presents an obvious conflict.

### III. Ms. Brandt, Ms. Kupiszewski, and Ms. Tinsley Are Truly Dedicated to the Best Interests of the Named Plaintiffs

Defendants' attempts to undercut the suitability of the Next Friends are unfounded and contradicted by clear law and undisputed facts.  Defendants fail to call into question the Next Friends' good faith or true dedication to the best interests of the Named Plaintiffs.

### a. Defendants' Ad Hominem Attacks Do Not Call Into Question the Next Friends' Suitability

Defendants improperly inject into their brief a prolonged tirade aimed at the purported pre-litigation conduct of counsel for Plaintiffs. *See* Def. Opp. at 5-6. This assault on Plaintiffs' counsel is entirely irrelevant to the question of the suitability of the Next Friends. Astoundingly, Defendants make their accusations against Plaintiffs' counsel by referring to testimony "in another CRI class action" that Defendants do not name and do not supply. *See Id.* at 5. Further, Defendants' attack on Plaintiffs' counsel outrageously implies that Plaintiffs' counsel manufactured a lawsuit in Arizona to fit into the "narrative" that it created. *Id.* at 5-6. In addition to reflecting a fundamental misunderstanding of the nature of this lawsuit,[4] this outlandish assertion is easily belied by clear historical facts: the massive dysfunction of the Arizona child welfare system has been well-known, and reported in the press on almost a daily basis, for years before the filing of this lawsuit.[5] As the Complaint clearly reflects, this lawsuit is firmly grounded in

---

[4] Defendants accuse Plaintiffs' counsel of deciding to "sue the attacked state before evaluating whether there are children who have been harmed." Def. Opp. at 5. However, this lawsuit alleges that all children in state foster care are subject to an unreasonable risk of harm due to "structural and operational failures" that "plague the state's child welfare system." SAC, ¶ 12, 17. Therefore, Plaintiffs need not prove that specific children in the putative class have experienced harm in the past, but rather that Defendants' unconstitutional policies and practices put all children in state foster care at an ongoing unreasonable risk of experiencing such harm. *See Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (recognizing that a presently existing risk of harm may ultimately result in different harm for different class members – "ranging from no harm at all to death"); *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) (recognizing right not to be "subjected to the unreasonable threat of injury or death" and holding that an individual "need not wait until actual casualties occur in order to obtain relief from such conditions").
[5] *See, e.g.*, "Children sleeping overnight in Arizona DCS office buildings," CBS 5 (Nov. 6, 2014) http://www.kpho.com/story/26880493/children-sleeping-overnight-in-arizona-dcs-offices#ixzz3XD0uUMCY ("A spokeswoman for the Arizona Department of Child Safety confirmed that children are sleeping overnight in state office buildings when group homes and foster families are not available. Under fluorescent lighting and between state-owned cinder block walls, kids with nowhere else safe to go slept overnight at 12 offices scattered around Maricopa and Pima counties. Officials with the new Arizona Department of Child Safety said although it has been happening for years, the department just started keeping records of how often kids were sleeping in offices only last month."); Pete Aleshire, "'Enough With The Excuses' Gov. Brewer proposes CPS shift to cope with ignored abuse cases in State of the State speech," Payson Roundup (Jan. 17, 2014)

these historical facts and based not on speculation or guesswork but on the State's own data and admissions as to the failures of its foster care system and the ensuing harm to children.  *See* SAC, ¶ 11-15, 127-141, 168-172, 186-189, 206-214, 216-217, 219, 224, 234-249.  Finally, Defendants' insinuation that Plaintiffs' counsel seeks to represent the rights of children in foster care in order to line their own pockets with legal fees, Def. Opp. at 5, n. 2, is insulting and not worthy of the state Attorney General's office.  Even state officials who have been defendants in other class actions brought by Plaintiffs' counsel have recognized the importance of the lawsuits that Children's Rights has brought in other states.  *See, e.g.*, Former New Jersey Governor Jon S. Corzine, former Defendant in *Charlie and Nadine H. v. Corzine*, keynote speech at Children's Rights Annual Benefit October 19, 2010, http://www.timessquaregossip.com/2010/10/childrens-rights-fifth-annual-benefit.html ("'No organization is bringing more vigilance and discipline and thoughtfulness to the effort to protect our kids than Children's Rights,' said Gov. Corzine. 'Sometimes we need a blunt instrument to make us aware that we must live up to our responsibilities. Children's Rights has done that.'").

Next, Defendants argue that the Next Friends "have 'only an ideological stake in the child's case.'"  Def. Opp. at 6.  As discussed in further detail below, *infra Sections* b.i-iii, this naked assertion is belied by the uncontested statements in the Next Friends' declarations.  Contrary to Defendants' argument, the fact that the Next Friends in this case are professionals in the child welfare community does not mean that they are seeking to "advance their ideological agendas through the avenue of the Federal Courts" or that they "seek to substitute their judgments for those of the duly elected and/or appointed representatives of the citizens of the State of Arizona."  Def. Opp. at 6.  In fact, each has spent her career working on behalf of children in foster care through direct service in the

---

http://www.paysonroundup.com/news/2014/jan/17/enough-excuses/ (statement by then-Governor Jan Brewer that "It is evident that our child welfare system is broken, impeded by years of structural and operational failures.  [] It breaks my heart and makes me angry. Enough with uninvestigated reports of abuse and neglect.").

child welfare field—not for political advocacy groups or ideologically-based reform organizations.  *See* Brandt Dec. at ¶ 3-7; Kupiszewski Dec. at ¶ 3-9, Tinsley Dec. at ¶ 3-7.

### b. Defendants' Challenges to Each of the Next Friends Are Belied By The Undisputed Facts

#### i. Ms. Brandt

##### A. Ms. Brandt Does Not Have a Conflict of Interest[6]

Defendants' assertion that Ms. Brandt has a conflict of interest, Def. Opp. at 7, evidences a blatant misunderstanding on Defendants' part of the workings of the foster care system in Arizona and the nature of this lawsuit.

First, Plaintiffs here do not challenge any individual decisions of the Juvenile Court relating to their placements and services.  To the contrary, as this Court recognized in denying Defendants' motion to dismiss on abstention grounds, the relief requested by Plaintiffs in this lawsuit "concerns the systems for facilitating the provision of care already deemed necessary by Defendants and the juvenile courts."  Order Denying Mot. to Abstain and Dismiss (Dkt. No. 51) at 22.  Neither Ms. Brandt nor the Office of Children's Counsel are responsible for or have any control over these systemic deficiencies.  *See* Reply Declaration of Susan Brandt, dated March 17, 2016 at ¶ 11.  Rather, "DCS and its related agencies are responsible for creating a system for effectively delivering care," not Ms. Brandt.  Dkt. No. 51 at 22.  The systemic failures that this lawsuit targets—such as the "severe shortage in and inaccessibility of" health care services, the "widespread failure to conduct timely investigations" of maltreatment in care, and the "severe and sustained shortage of family foster homes," SAC at ¶ 12, are solely within the control of Defendants to remedy.

Second, Ms. Brandt's job is to assist the child's Juvenile Court attorney to represent the child's best interests before the Juvenile Court.  Contrary to Defendants' assertion, it is not the responsibility of Ms. Brandt or her employer, the Office of Children's Counsel, to provide a child with the services that she or he needs while in custody—providing these

---

[6] Despite the Court's instruction to Defendants to "be more specific" as to the conflict of interest that Defendants allege, *see* 3/11/16 Transcript at 25, Defendants did not provide Plaintiffs with any additional information about this during their 3/16/16 meet and confer.

services is <u>DCS's</u> job.  In fact, Ms. Brandt is often in the position of advocating for services for a child (through the child's Juvenile Court attorney) that DCS fails to provide.  *See* Brandt Reply Dec. at ¶¶ 4-10.  Ms. Brandt's role in helping a child's Juvenile Court attorney to advocate for the child's best interests is entirely compatible with her role as Next Friend advocating for the child's best interests in federal court through this lawsuit.

Contrary to Defendants' implication, it is not the failure of Ms. Brandt's advocacy on behalf of her clients in Juvenile Court that has necessitated this Section 1983 action.  Rather, as this Court has held, Plaintiffs could not have "raise[d] their classwide claims or pursue[d] the systemic reforms they seek within the framework of the periodic review hearings in the juvenile courts."  Dkt. No. 51 at 24-25.

**B.  Ms. Brandt Has Not Violated A.R.S. §§ 8-542 or 8-807**

Ms. Brandt has not violated state confidentiality laws in serving as Next Friend in this federal lawsuit.  If accepted, Defendants' would allow them to insulate themselves from any lawsuits by children in the custody of the state.

As the Social Work Supervisor responsible for the C-B siblings and J.M.'s cases, Ms. Brandt is tasked with assisting their juvenile court attorneys in representing their best interests.  Ms. Brandt has determined, based on her discussions with the children's attorneys, that pursuing this federal lawsuit to vindicate their constitutional and statutory rights is in the best interests of these children.  Brandt Dec. at ¶ 10.  Because Ms. Brandt is not an attorney, she was required to retain counsel on behalf of the C-B children and J.M. in order to prosecute their claims.  *See, e.g.*, *Johns v. Cty. of San Diego*, 114 F.3d 874, 876-77 (9th Cir. 1997) (holding that non-attorney GAL could not bring a pro se lawsuit on child's behalf).  Ms. Brandt obtained legal advice from attorneys at Children's Rights and ultimately retained those attorneys to litigate the instant case.  In obtaining legal advice on behalf of the Named Plaintiffs and retaining attorneys to advocate for their legal rights in federal court, Ms. Brandt did not violate A.R.S. §§ 8-542 or 8-807.

First, Ms. Brandt did not provide Plaintiffs' counsel with any personally identifying information about the Named Plaintiffs until March 2015, after this Court entered a confidentiality order (Dkt. No. 19) protecting the confidentiality of that information.  Davis Reply Dec. at ¶ 9.

14

Second, communications between Ms. Brandt and Plaintiffs' counsel were made in confidence and are protected by the attorney-client privilege.  The attorney-client privilege "protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."  *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (*citing Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  As the legal representative for the C-B siblings and J.M., Ms. Brandt stands in their shoes and, by necessity, must be able to discuss their circumstances with counsel in order to secure legal assistance to safeguard their rights.  Courts have "consistently concluded that a party cannot improperly disclose confidential information to *one's own counsel* in the prosecution of *one's own lawsuit*."  *Neal v. Health Net, Inc.*, 100 Cal. App. 4th 831, 843-44, 123 Cal. Rptr. 2d 202, 212 (2002) (emphasis added); *see also Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 106 Cal. Rptr. 2d 906 (2001); *Bell v. 20th Century Ins. Co.*, 212 Cal. App. 3d 194, 260 Cal. Rptr. 459 (1989).  If a named plaintiff's representative can be punished for revealing confidential information to *the named plaintiffs' own attorney*, such a rule would make it impossible for foster children to ever sue their state caretakers and would obliterate the very purpose of the attorney-client privilege.

Third, the very statutes that Defendants claim have been violated in fact authorize Ms. Brandt's disclosure of information to the Named Plaintiffs' counsel.  A.R.S. § 8-807 (U) provides that "a person who receives DCS information" may disclose that information as "authorized by law."  *Id.* § 8-807 (U).  Subsection (E) expressly authorizes that an "agent of a person who is the subject of DCS information *shall have access* to DCS information concerning that person."  *Id.* § 8-807 (E) (emphasis added).  As counsel of record for the Named Plaintiffs, attorneys from Children's Rights are clearly "agents" of those plaintiffs.  Thus, contrary to Defendants' brash assertions, Ms. Brandt was authorized under A.R.S. § 8-807 to share information about the C-B plaintiffs and plaintiff J.M. with their counsel from Children's Rights.  Because Ms. Brandt's disclosures to Children's Rights are authorized by A.R.S. § 8-807(E) and (U), they are also authorized by A.R.S. § 8-542.  *See* A.R.S. § 8-542 (making disclosure of certain information unlawful "except for purposes for which . . . information from files and records or social records

15

1   have been released pursuant to § 8-541"); A.R.S. § 8-541 (authorizing disclosure pursuant

2   to § 8-807).

### C. Ms. Brandt is An Appropriate Next Friend for Plaintiffs A.C-B, M.C.-B, J.C.-B, D.C-B, and J.M.

4           Ms. Brandt's declaration submitted in connection with Plaintiffs' motion makes

5   clear that she is well-suited to advocate for the best interests of the C-B siblings, and J.M.

6   because of her work on their behalf and her knowledge of their experiences in foster care.

7   Ms. Brandt is familiar with their experiences in foster care from "having attended meetings

8   with their providers, reviewed their case files in the ordinary course of [her]

9   responsibilities, spoken with the social workers in [her] office who serve them, and worked

10  closely with their Office of Children's Counsel attorneys."  Brandt Dec. at ¶ 10.  In fact,

11  she has an authorized professional relationship with these children and has had ongoing

12  involvement with them in their state court cases since before this litigation was

13  commenced.  Davis Reply Dec. at ¶ 4.  Furthermore, she is representing them with their

14  support as well as the support of their state court attorneys, who have regular contact with

15  the children.  *Id.* at ¶ 4.  Therefore, Defendants' assertion that Ms. Brandt does not have

16  "*any* relationship with the Named Plaintiffs," Def. Opp. at 9, is erroneous.

17          Furthermore, Ms. Brandt has attested that she is serving as Next Friend because she

18  believes that the Named Plaintiffs have been failed by the state agencies responsible for

19  their care and well-being and that pursuing this lawsuit is "in their best interests."  Brandt

20  Dec. at ¶ 10.  Defendants have not provided any viable basis for challenging this

21  attestation or Ms. Brandt's dedication to these children.  Defendants' assertion that Ms.

22  Brandt should have discussed this litigation with the Named Plaintiffs is entirely

23  misguided.  The attorneys who have represented the children in state court spoke with

24  them and obtained their approval for Ms. Brandt to serve as their Next Friend.  *See* Brandt

25  Dec. at ¶ 10; Brandt Reply Dec. at ¶ 1.  Thus, it would have been inappropriate for Ms.

26  Brandt to reach out to them about it again, especially given the young ages of the children,

27  who ranged from 3 years old to 9 years old at the time of the filing of the Complaint.  SAC

28  at ¶¶ 83, 98.  Finally, Defendants' argument that Ms. Brandt failed to raise "any concerns

    about the services or treatment provided to the Named Plaintiffs with the juvenile court,

DCS, or any other person." Def. Opp. at 10, is just plain wrong. In fact, Ms. Brandt has frequently raised concerns about the services or treatment provided to the Named Plaintiffs. *See* Brandt Reply Dec. at ¶¶ 4-10.

Ms. Brandt's familiarity with these children's experiences in foster care and Juvenile Court cases and her thirty-year background working in Arizona's child welfare system make her extremely well-suited to protect the best interests of the Named Plaintiffs in this litigation. *See* Pls. Mot. at 11-12.

### ii. Ms. Kupiszewski is An Appropriate Next Friend for Plaintiffs B.T. and C.P.

Defendants' challenge to Ms. Kupiszewski's appointment as a Next Friend focuses almost entirely on their assertion, based on unfounded speculation, that she failed to contact B.T.'s juvenile court attorneys "before, or even after, approaching their client and soliciting him as a Named Plaintiff" and that she "received information from CRI and, without verifying the authenticity of this information, approached a represented child in a criminal detention facility." Def. Opp. at 10. In fact, B.T's GAL, who was appointed by the state court to represent B.T.'s best interests, arranged for and attended the meeting between B.T. and Ms. Kupiszewski at which B.T. affirmed that he wants Ms. Kupiszewski to serve as his Next Friend. *See* Davis Reply Dec. at ¶¶5-6. Moreover, prior to the filing of this lawsuit, B.T. confirmed that he wanted to be a plaintiff. *See id.* at ¶ 6.

Furthermore, Defendants' assertion that Ms. Kupiszewski did not tell B.T. that "his personal information, including a horrific history of sexual abuse and mental health issues, will most likely be disclosed" (Def. Opp. at 11) is highly misleading. The parties and this Court have expended great time and energy to put into place robust confidentiality protections that prevent public disclosure of any information about the Named Plaintiffs and place strict guidelines on who is able to view this information even in the context of this litigation. *See* Dkt. Nos. 80 and 104. Telling a Named Plaintiff that his personal information would be disclosed if he proceeded in pursuing this action would therefore have been inaccurate and would have improperly discouraged him from vindicating his constitutional rights in this forum. In addition, Defendants' statement that Ms. Kupiszewski should have informed B.T. that "he may be called to testify at a hearing or

17

trial and may have to give details about the horrific abuse he suffered" (Def. Opp. at 11) is yet another tactic that would serve to scare away Named Plaintiffs from suing the state and is based on the entirely speculative and incorrect assumption that the Named Plaintiffs will be forced to testify against their will.  Finally, Defendants' disingenuous assertion that Ms. Kupiszewski "fails to aver that it is in B.T.'s best interests to participate in this matter" is flatly contradicted by her declaration, in which she attests:  "I am familiar with C.P.'s and B.T.'s experiences in foster care and believe that participating in this lawsuit is in their best interests."  Kupiszewski Dec. at ¶ 13.

Defendants challenge Ms. Kupiszewski's representation of C.P. on the grounds that she has not had any contact with him and that "there is no averment that C.P. even knows he is involved in this lawsuit."  Def. Opp. at 11.  However, it would not have been appropriate or in the best interest of C.P., who was only seven years old at the time of the filing of the Complaint, for Ms. Kupiszewski to have attempted to discuss this litigation with him.  Moreover, Ms. Kupiszewski has served as C.P.'s Next Friend with the support of C.P.'s former and present GALs, who have had regular contact with C.P. and were appointed to represent his best interests.  *See* Davis Reply Dec. at ¶ 7.  C.P.'s current GAL supports this suit.  *Id.*

Finally, Defendants' incredible accusation that Ms. Kupiszewski "readily admits that she is serving as Next Friend for C.P. and B.T. for an improper purpose," Def. Opp. at 12, is based on the following attestation by Ms. Kupiszewski in her declaration:  "I decided to serve as the Next Friend for C.P. and B.T. because I think that they and other children like them need help. . . .  I believe that the child welfare system is hurting C.P. and B.T. and I desire to help protect their rights and well-being."  Kupiszewski Dec. at ¶ 13. Defendants' contention that Ms. Kupiszewski is an ideologue and is pursuing this litigation for an improper purpose because she wants to help protect the rights and well-being of the Named Plaintiffs defies logic.  A next friend who is an ideologue would try to use representation of a child in a lawsuit to achieve the next friend's own agenda at the expense of the child's interest in the lawsuit.  Ms. Kupiszewski, who is serving as a Next Friend in this lawsuit in order to help protect C.P. and B.T. and prevent them from being hurt, is doing the opposite of what an ideologue would do—her purpose in serving in this

18

role is to advocate for the Named Plaintiffs' interests, not her own agenda. *See, e.g., Sam M.*, 608 F.3d at 93 (finding that next friend was not "feared ideologue that pursues an action for purely political or ideological reasons" where he testified that he believed "the children have been placed in dire circumstances" and that he was pursuing the suit out of "a genuine concern for the children's well-being").

Ms. Kupiszewski's dedication to helping protect the rights of B.T. and C.P., along with her extensive experience with child welfare, including several years at the state Attorney General's office, and her familiarity with the Arizona foster care system, *see* Pls. Mot. at 12-14, make her an appropriate next friend for these Named Plaintiffs, who do not have other close adult connections who could properly represent them in this lawsuit.

### iii.   Ms. Tinsley is An Appropriate Next Friend for Plaintiff B.K.

Defendants challenge Ms. Tinsley's representation of B.K. on the grounds that "she has never met with nor asked B.K. if she wants to be named in a lawsuit." Def. Opp. at 12. Once again, as discussed above, it would not have been appropriate or in the best interest of B.K., who was ten years old at the time of the filing of the Complaint, for Ms. Tinsley to have attempted to discuss this litigation with her. Nor would it have been correct for Ms. Tinsley to tell B.K. that her "sensitive and personal history of abuse and significant mental health history will be disclosed to potentially hundreds of people." Def. Opp. at 12.

Furthermore, contrary to Defendants' assertion, Ms. Tinsley had sufficient information about B.K. to be able to determine that it was in her best interests to participate in this lawsuit. As Ms. Tinsley stated in her declaration, she is familiar with B.K.'s experiences in foster care from meeting with B.K.'s former foster parent and school counselor. Tinsley Dec. at ¶ 9. She also has the support of B.K.'s GAL. Davis Reply Dec. at ¶ 8. Finally, whether or not Ms. Tinsley spoke with B.K.'s current foster parents, Def. Opp. at 13, is not determinative of her suitability to serve as B.K.'s next friend particularly in light of the fact B.K. has experienced frequent changes in foster care placements and, at the time of the filing of this lawsuit, B.K. had only been in her most recent foster home for less than two months. *See* SAC at ¶ 20-32 (detailing B.K.'s multiple placement moves since 2012, including: a group home for more than two years, two foster homes over the

19

course of ten weeks, a shelter, a psychiatric hospital, a non-therapeutic foster home, another psychiatric hospital, and, less than two months before the filing of the Complaint, a therapeutic foster home).

Defendants have not provided any viable basis for calling into question Ms. Tinsley's good faith in pursuing this action on behalf of B.K. or her true dedication to B.K.'s best interests.  They contend that she "is pursuing her ideological goals" because her declaration does not aver "that it is in the best interests of B.K. to be a Named Plaintiff in this lawsuit," Def. Opp. at 13, but once again, Defendants are just plain wrong.  Ms. Tinsley's declaration clearly states, "I believe that this litigation is in the best interest of B.K."  Tinsley Dec. at ¶ 10.  Defendants therefore have no ground for their conclusory assertion that Ms. Tinsley is "improperly using B.K. as her 'mantle' to gain standing" at the "expense of B.K."  Def. Opp. at 13.  Ms. Tinsley decided to serve as a Next Friend in this lawsuit because she was "motivated by a desire to help ensure the well-being of B.K. and other children in foster care in Arizona."  Tinsley Dec. at ¶ 11.  She has no ulterior motive or private agenda.  Her desire to help B.K. and other children in foster care is entirely consistent with the motivation driving next friends who have been found to be suitable next friends.  *See, e.g.*, *Sam M.*, 608 F.3d at 93.

Ms. Tinsley's desire to help ensure the well-being of B.K., and to advocate for her best interests, along with her familiarity with the Arizona foster care system and her 30 years practicing juvenile law, including many years at the State Attorney General's office, *see* Pls. Mot. at 14-16, renders her a highly qualified next friend for B.K., who does not have other close adult connections who could properly represent her in this lawsuit.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' Motion, Plaintiffs request that this Court appoint (1) Ms. Brandt as next friend for Named Plaintiffs A.C-B, M.C-B, J.C-B, D.C-B, and J.M.; (2) Ms. Kupiszewski as next friend for Named Plaintiffs B.T. and C.P.; and (3) Ms. Tinsley as next friend to Named Plaintiff B.K.

1    Respectfully submitted this 17th day of March 2016.

2

3

4                                          **CHILDREN'S RIGHTS, INC.**

5                                          By: /s/ William Kapell__
                                           William Kapell
6                                          Julia L. Davis
                                           Rachel B. Nili
7                                          Adriana Luciano
                                           330 Seventh Avenue, Fourth Floor
8                                          New York, New York  10001
                                           Telephone:  (212) 683-2210
9

10                                         **PERKINS COIE LLP**
                                           Joseph Mais
11                                         Shane Swindle
                                           2901 N. Central Avenue, Suite 2000
12                                         Phoenix, Arizona  85012-2788
                                           Telephone: (602) 351-8000
13

14                                         **ARIZONA CENTER FOR LAW IN**
                                           **THE PUBLIC INTEREST**
15                                         Anne C. Ronan
                                           Timothy M. Hogan
16                                         514 West Roosevelt Street
                                           Phoenix, Arizona  85003
17                                         Telephone:  (602) 258-8850
18
                                           *Attorneys for Plaintiffs*
19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2016 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Gary N. Lento
gary.lento@azag.gov
Melanie Grace McBride
melanie.mcbride@azag.gov
Joshua R. Zimmerman
joshua.zimmerman@azag.gov
ARIZONA ATTORNEY GENERAL
1275 West Washington
Phoenix, Arizona 85007-2997
Telephone: (602) 542-7989
*Attorneys for Defendant Gregory McKay*

Daniel P. Struck
dstruck@swlfirm.com
Kathleen L. Wieneke
kwieneke@swlfirm.com
Nicholas D. Acedo
nacedo@swlfirm.com
Tara B. Zoellner
tzoellner@swlfirm.com
Timothy J. Bojanowski
tbojanowski@swlfirm.com
STRUCK WIENEKE & LOVE, P.L.C.
3100 W. Ray Road, Suite 300
Chandler, Arizona 85226-2473
Telephone: (480) 420-1600
*Attorneys for Defendant Cara M. Christ*

Logan T. Johnston
ltjohnston@live.com
JOHNSTON LAW OFFICES, P.L.C.
1402 E. Mescal Street
Phoenix, Arizona 85020
Telephone: (602) 452-0615

Catherine D. Plumb
plumblawoffice@gmail.com
LAW OFFICES OF CATHERINE DODD PLUMB, P.L.C.
17225 N. 16th Place
Phoenix, Arizona 85022
Telephone: (602) 510-5184
*Attorneys for Defendant Thomas J. Betlach*

By: /s/ William Kapell