# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Tinsley, et al., | No. CV-15-00185-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Charles Flanagan, et al., | |
| Defendants. | |

Plaintiffs are seven children in Arizona state foster care custody seeking to remedy systemic failures in Arizona's foster care system. Because they are minors, Plaintiffs cannot pursue this litigation themselves. Three individuals have volunteered to serve as Plaintiffs' next friends. Defendants believe the three individuals are not appropriate candidates to serve as next friends. For two of the three, Defendants are wrong. But for one, a possible appearance of impropriety requires she be replaced.

## BACKGROUND

Susan Brandt, Jennifer Kupiszewski, and Margaret Tinsley each have extensive experience with Arizona's foster care system. Their qualifications to serve as next friend are summarized as follows.

**A. Susan Brandt**

Susan Brandt wishes to serve as the next friend for A.C-B, M.C-B, J.C-B, D. C-B, and J.M. Ms. Brandt has over thirty years of experience with Arizona's child welfare

1   system. From 1984 to 2010, Ms. Brandt worked for the Arizona child welfare agency in
2   various positions. She started out "as a case worker conducting investigations of reports
3   of child abuse and neglect." (Doc. 85 at 2). After various promotions, she served as
4   Assistant Program Manager for Child Protective Services in Pima County. In that role,
5   she was responsible for "the care and well-being of thousands of children involved in the
6   child welfare system" in Pima County. Ms. Brandt retired from the child welfare agency
7   in 2010 but immediately began working at the Southern Arizona Child Advocacy Center
8   training individuals "on recognizing the signs and symptoms of child abuse and neglect."
9   From 2011 to 2013, she worked as a Dependency Specialist at the Pima County Juvenile
10  Court where she developed training for lawyers in dependency actions and also collected
11  data related to dependency cases. In 2013, Ms. Brandt started working for the Pima
12  County Office of Children's Counsel. At present, she is the Social Work Supervisor in
13  that office. In that role, Ms. Brandt supervises four social workers who, in turn, work
14  with thirteen attorneys who represent approximately 2000 children in juvenile court
15  proceedings.

16  The social workers and attorneys in Ms. Brandt's office work with A.C-B, M.C-B,
17  J.C-B, D.C-B, and J.M. in their juvenile court cases. Ms. Brandt is familiar with the
18  circumstances of these five plaintiffs and she believes "the state agencies . . . responsible
19  for their care and well-being [have] repeatedly failed them." (Doc. 85 at 3). In Ms.
20  Brandt's view, these five plaintiffs wish for her "to pursue their claims in this case and
21  that doing so is in their best interests." Her belief is based on speaking with the lawyers
22  in her office who represent the children in their dependency cases. The Court has been
23  informed that those lawyers spoke with the children and the children expressed their
24  desire that Ms. Brandt represent them. (Doc. 110 at 1).

25      **B. Jennifer Kupiszewski**

26  Jennifer Kupiszewski, an attorney, wishes to serve as the next friend for B.T.
27  From 1999 to 2002, Ms. Kupiszewski worked "as an Assistant Attorney General
28  representing the child welfare agency at the Department of Economic Security in Juvenile

1 Court." (Doc. 86 at 1-2). She worked on hundreds of cases in that role. From 2002 to 2004, Ms. Kupiszewski worked as an attorney with the Arizona Center for Disability Law. While there, she worked with "children across the state of Arizona, helping them to obtain the mental and behavioral health services they needed." (Doc. 86 at 2). She returned to the Attorney General's office in 2004 to again represent the child welfare agency in juvenile court. In addition to representing the agency in juvenile court, Ms. Kupiszewski provided training to other employees of the Attorney General's office "on how to represent children in Juvenile Court." She left the Attorney General's office in 2007 and entered private practice. For the next six years, she "represented hundreds of children and parents in dependency proceedings." In 2013, Ms. Kupiszewski started her own firm focusing on family, juvenile, elder, and probate law. She now handles approximately twenty-five dependency cases per year and volunteers with various organizations devoted to ensuring children with disabilities "get the care they need." (Doc. 86 at 3).

In early February 2015, Ms. Kupiszewski met with B.T. At that time, B.T. was fourteen and in juvenile detention. That meeting was arranged by B.T.'s guardian ad litem. After discussing the present case with B.T., "he told [her] he wanted to be a part of this case." B.T. also told her he wanted her to act as his next friend. Ms. Kupiszewski avers that "participating in this lawsuit is in [B.T.'s] best interest." (Doc. 86 at 3). Of some significance, Ms. Kupiszewski is pursuing next friend status because "the two attorneys who represent B.T. in connection with his state court proceedings declined to serve as his Next Friend." (Doc. 109 at 2).

**C. Margaret Tinsley**

Margaret Tinsley would like to serve as next friend for B.K. Ms. Tinsley is an attorney who, from 1978 to 2000, "represented hundreds of children in severance, adoption, and custody matters in Arizona trial and appellate courts." (Doc. 87 at 2). In 2000, Ms. Tinsely joined the Arizona Attorney General's office as a trial attorney working on child dependency cases. From 2000 to 2008, Ms. Tinsley served in various

1  positions in that office. She personally was involved "in cases involving hundreds of
2  children" and she eventually was the supervisor of other attorneys "who represented the
3  State in cases involving thousands more children." She left the office in 2008. From
4  2010 to 2015, Ms. Tinsley volunteered with the Juvenile Legal Assistance Program, a
5  project of the Arizona Juvenile Court. While volunteering there, Ms. Tinsley provided
6  legal advice to "grandparents, parents, children, and other family-members of children
7  who were seeking information and advice on how to obtain the services and supports they
8  needed." Ms. Tinsley presently works with the Arizona State University School of Social
9  Work, helping child welfare caseworkers prepare to testify in juvenile court.

10  In December 2014, Ms. Tinsley met with B.K.'s former foster parent and school
11  counselor and learned of B.K.'s experiences in the foster care system. Ms. Tinsley
12  believes Arizona's foster care system is placing B.K., and other children, at risk. She
13  avers "this litigation is in the best interest of B.K." (Doc. 87 at 3). Similar to the
14  situation with Ms. Kupiszewski and B.T., other possible candidates to act as B.K.'s next
15  friend declined to do so. B.K.'s former temporary foster mother and current guardian ad
16  litem were both asked if they would be willing to serve as next friend and both declined.
17  (Doc. 109 at 3).

## ANALYSIS

The putative next friends and Defendants disagree on the standard that must be met for appointment of next friends as well as whether these particular next friends are qualified to serve in that capacity.

**A. Standard for Appointment of Next Friend**

In 1990, the Supreme Court identified the "two firmly rooted prerequisites for 'next friend' standing." *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990). First, a putative next friend must establish the "real party in interest cannot appear on his own behalf to prosecute the action." *Id.* And second, the putative next friend "must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Id.* In connection with this second requirement, the Supreme Court noted "it has been further

suggested that a 'next friend' must have some significant relationship with the real party in interest." *Id.* The Supreme Court did not hold this "further suggest[ion]" of a preexisting significant relationship was required to be eligible to serve as a next friend. But shortly after *Whitmore*, the Ninth Circuit imposed such a requirement.

In *Massie ex rel. Kroll v. Woodford*, a journalist was attempting to serve as the next friend of an inmate scheduled to be executed. 244 F.3d 1192 (9th Cir. 2001). The inmate, through counsel, opposed the journalist's actions. *Id.* at 1195. In addressing whether the journalist was a proper next friend, the Ninth Circuit held "next friend standing" requires a showing "(1) that the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability; and (2) the next friend has some significant relationship with, and is truly dedicated to the best interests of, the petitioner." *Id.* at 1194. The *Massie* court cited *Whitmore* as supporting this formulation, including the requirement of a preexisting "significant relationship." *Id.* But, as mentioned above, the actual language in *Whitmore* is not nearly so clear on the importance of a "significant relationship." In any event, the Ninth Circuit concluded the inmate was competent and able to litigate on his own behalf if he wished to do so. Thus, the journalist did not meet the first requirement to be a next friend and the court was relieved from addressing with particularity the significant relationship issue.

Not long after *Massie*, the Ninth Circuit was asked to clarify if next friends must have preexisting significant relationships. In 2002, a group of individuals were trying to sue as next friends of habeas petitioners held at Guantanamo Bay. The individuals argued the significant relationship requirement set forth in *Massie* was an "erroneous gloss on *Whitmore*" that "need not be followed." *Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1161 (9th Cir. 2002). The panel majority rejected that argument, claiming the "significant relationship" requirement "meets the concerns the *Whitmore* Court addressed." *Id.* The majority explained the significant relationship requirement "enhances the probability that a petitioner is a suitable next friend, *i.e.*, that a petitioner knows and is dedicated to the prisoner's individual best interests." *Id.* at 1162. Thus, the

- 5 -

majority concluded a preexisting relationship *is* a requirement for someone to serve as a next friend.

Despite ostensibly agreeing with *Massie*, the *Coalition of Clergy* majority went on to provide a crucial qualification: "the contours of the requisite 'significant relationship' do not remain static, but must necessarily adapt to the circumstances facing each individual detainee." *Id.* Thus, "[s]ignificance' is a relative concept" and it may be possible in "an extreme case . . . that a person with 'some' relationship conveying some modicum of authority or consent . . . could serve as the next friend." *Id.* In other words, if the putative next friend's relationship is "'significant' in comparison to the detainee's other relationships," that may be sufficient.[1] *Id.*

The *Coalition of Clergy*'s emphasis on a fact-dependent inquiry is similar to how other circuits have approached the question of whether a proposed next friend must have a significant relationship with the real party in interest. For example, the Seventh Circuit concluded a next friend must have a "significant relationship" and, in the context of children, the permissible next friends will "ordinarily . . . be confined to the plaintiff's parents, older sibling (if there are no parents), or a conservator or other guardian." *T.W. by Enk v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997). The Seventh Circuit recognized, however, that "in desperate circumstances" where no one with a significant relationship was available, a court may appoint "a stranger whom the court finds to be especially suitable to represent the child's interests in the litigation." *Id.* Similarly, the Fourth Circuit held a significant relationship is required in most cases but may not be required if someone "possesses no significant relationships at all." *Hamdi v. Rumsfeld*, 294 F.3d 598, 604 (4th Cir. 2002). And the First Circuit, citing these cases, recognized that

---

[1] The concurrence in *Coalition of Clergy* would have rejected *Massie*'s reading of *Whitmore*. The concurrence argued "*Massie*'s summary of *Whitmore* was incorrect" and was dicta. *Id.* at 1165 (Berzon, J., concurring). In the concurrence's view, even if the "significant relationship" requirement existed for most cases, some cases may require it to be "relaxed, to the degree that no relationship should be required if none is practically possible." *Id.* Given the majority's acknowledgment that the significant relationship requirement was fact-dependent, it is not clear if there is any meaningful difference between the majority's view and Judge Berzon's claim that the requirement must be "relaxed" in certain circumstances.

- 6 -

imposing a "significant relationship" requirement "may avert litigation by individuals who lack a concrete stake in the litigation." *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 91 (1st Cir. 2010). But in the peculiar situation of foster children who "lack significant ties with their parents and have been placed under the state's legal custody and guardianship, a significant relationship need not be required as a prerequisite to Next Friend status." *Id.*

Based on these cases, the requirements a putative next friend must meet are easy to recite but potentially difficult to apply. A putative next friend must, first, establish the real party in interest cannot litigate on his own behalf. Second, a putative next friend must establish she is truly dedicated to the best interests of the real party in interest. And third, a putative next friend must establish she has a significant relationship with the real party in interest. That relationship, however, need only be "significant" when compared to the real party in interest's other relationships. If the real party in interest has no meaningful relationships, appointment of a stranger may be appropriate. Here, the real parties in interest are minors, meaning the first requirement is easily met. The other two requirements require more analysis.

### B.  Putative Next Friends are Not Ideologues but Ms. Brandt Cannot Serve

Defendants make two arguments attempting to establish the putative next friends cannot meet the requirement that they be "truly dedicated to the [Plaintiffs'] best interests." *Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001). First, Defendants argue the next friends' interests in this lawsuit are "purely ideological." (Doc. 95 at 13). Second, Defendants claim one of the putative next friends—Ms. Brandt—suffers from a conflict of interest.

Defendants are correct that "[a] person having only an ideological stake in the [litigation] is ineligible" to serve as a next friend. *Anthem Life Ins. Co. v. Olguin*, No. 1:06-CV-01165 AWINEW, 2007 WL 1390672, at *2 (E.D. Cal. May 9, 2007). But the Court has been unable to locate any meaningful interpretation of this requirement in circumstances similar to those presented here. In particular, it is unclear how the Court is

1    to differentiate between individuals with "only an ideological stake" in the case and those
2    individuals with a more "concrete stake." *T.W. by Enk v. Brophy*, 124 F.3d 893, 896 (7th
3    Cir. 1997).  In the context of foster children, the First Circuit differentiated between a
4    purely ideological interest and a concrete stake by looking to indications in the record for
5    why a next friend might be pursuing the suit.  If it appeared the next friend was pursuing
6    the action "for purely political or ideological reasons," he would not be qualified.  *Sam*
7    *M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 93 (1st Cir. 2010).  But if it appeared the next
8    friend was pursuing the suit out of a "genuine concern for the children's well-being," that
9    meant he was not a "feared ideologue" and he could serve as a next friend.  *Id.*  Here, the
10   record contains *no* indications the putative next friends are seeking merely to vindicate
11   personal ideological beliefs.  And Defendants have failed to offer any facts from which
12   the Court could so conclude.  Instead, the next friends appear to be pursuing this case out
13   of genuine concern for Plaintiffs' well-being.  In this unique context of foster care
14   children, this genuine concern is a sufficient stake in the litigation.

15   In addition to arguing the next friends are only pursuing ideological goals,
16   Defendants also claim Ms. Brandt is not truly dedicated to Plaintiffs' interests because
17   her employment creates a conflict of interest.  Ms. Brandt is currently employed as the
18   Social Work Supervisor for the Pima County Office of Children's Counsel.  In that role,
19   she works with the social workers and attorneys assigned to children in foster care.  Ms.
20   Brandt, the social workers, and the attorneys often attempt to secure services for the
21   children they work with.  According to the complaint, those attempts are not as successful
22   as they should be because of Defendants' failure to provide constitutionally mandated
23   requirements.  Defendants now cast this failure as at least partially attributable to Ms.
24   Brandt.  (Doc. 95 at 8).  In fact, Defendants claim Ms. Brandt is "violating the Named
25   Plaintiffs' constitutional rights."  (Doc. 95 at 8).  This is an inaccurate and unfair
26   characterization of both Ms. Brandt's work and the issues in this case.

27   Plaintiffs are attempting to challenge what they allege are systemic failures in the
28   foster care system.  The allegations are that Defendants, among other failures, are not

1 providing sufficient health care services and are responsible for there being too few
2 family foster homes. Ms. Brandt has no power to remedy these alleged failures. In fact,
3 there is no indication Ms. Brandt has the authority to provide any of the relief Plaintiffs
4 seek. Instead, Ms. Brandt is obligated to provide the level of care to foster children as
5 established and required of her by Defendants. Moreover, there is no indication Ms.
6 Brandt has taken any actions which could conceivably be described as "violating the
7 Named Plaintiffs' constitutional rights." Ms. Brandt does not have the conflict of interest
8 Defendants claim.

Despite Ms. Brandt lacking a straightforward conflict of interest, her employment does create cause for concern. Ms. Brandt's employment may create an appearance of impropriety in that she is directly involved in the care provided to foster care children. And while Ms. Brandt cannot control the alleged systemic deficiencies at issue in this litigation, she is involved in the services provided to particular children. The treatment of particular children will, of course, be used to establish Defendants' liability. Depending on the circumstances and why services were not provided to a certain child, Ms. Brandt *may* be in the position of questioning the actions or inactions of social workers and attorneys in her office or other governmental agencies. This possibility raises an appearance of impropriety in that Ms. Brandt may, unconsciously, seek to identify failures as the fault of Defendants instead of her coworkers or other social workers and attorneys. That risk may be small but, given the stakes here, appointment of a different next friend will obviate even this appearance of impropriety.[2] Plaintiffs' counsel and defense counsel will be required to meet and confer to identify an appropriate individual to replace Ms. Brandt.

---

[2] The removal of Ms. Brandt requires the Court issue an appropriate order to protect the interests of A.C-B, M.C-B, J.C-B, D.C-B, and J.M. Fed. R. Civ. P. 17(c). As noted by the Ninth Circuit in the analogous situation of an incompetent pro se litigant, Rule 17 "generally" requires appointment of someone to protect the incompetent individual's interests. *Davis v. Walker*, 745 F.3d 1303, 1310 (9th Cir. 2014). While such appointment is not mandatory, the Court cannot simply dismiss claims and thereby allow an incompetent litigant's "interests . . . go completely unprotected." *Id.* Appointment of a replacement next friend will allow the Court to hear from someone who can well serve the interests of these five plaintiffs.

- 9 -

### C. Significant Relationship

Ms. Kupiszewski and Ms. Tinsley are devoted to the best interests of B.T. and B.K. but Defendants maintain these women do not have the "significant relationships" with B.T. and B.K. required by Ninth Circuit authority. As recognized in *Coalition of Clergy*, this requirement is flexible and may allow for a next friend without a day-to-day relationship or, in extreme circumstances, with no preexisting relationship at all. The present record establishes B.T. and B.K. do not have significant relationships with *any* adults who are willing to act as next friends. Thus, imposing a strict "significant relationship" requirement on B.T. and B.K. would preclude them from ever seeking relief. That cannot be correct.

In circumstances involving foster care children, the significant relationship requirement—to the extent it exists—must account for the "realities" facing foster care children. *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 89 (1st Cir. 2010). Those realties are that "due to maltreatment, multiple placements, and social and psychological issues, foster care children are often unable to forge significant relationships with the adults that are entrusted to protect the children's interests." *Id.* Part of the relief foster care children seek from courts is for state officials to take actions such that the children can develop significant relationships. It would be nonsensical to require foster children develop significant relationships before coming to court to ask for help to develop significant relationships. While acknowledging the Ninth Circuit appears to demand a "significant relationship" of some sort, that requirement must be viewed realistically within the context of each case so as to not preclude lawsuits against Defendants.

The present record is limited but it establishes the relationships between Ms. Kupiszewski, Ms. Tinsley, B.T., and B.K. are all that can be expected under the circumstances. Prior to this suit being filed, Ms. Kupiszewski met with B.T. and discussed it with him. B.T. obviously does not have parents willing to act on his behalf and Defendants have not identified any other adults in B.T.'s life who have a more significant relationship with him *and* are willing to step forward and act to protect B.T.'s

interest. Therefore, Ms. Kupiszewski's relationship with B.T. is, in these circumstances, sufficiently significant.

Ms. Tinsley presents a closer situation because she has not met with B.K. However, Ms. Tinsley has met with adults in B.K.'s life and attempted to learn about her situation. Those adults are not willing to serve as B.K.'s next friend and again Defendants have not identified any other adult who might be a better candidate. Accordingly, Ms. Tinsley's relationship with B.K. is a sufficiently significant relationship under these circumstances. Accordingly, Ms. Kupiszewski and Ms. Tinsley satisfy the "significant relationship" requirement.

### D. Defendants' Miscellaneous Arguments Are Unconvincing

In attempting to avoid the appointment of Ms. Kupiszewski and Ms. Tinsley, Defendants present a number of other arguments that will be addressed briefly. First, Defendants argue Plaintiffs may not have been adequately warned that this lawsuit will require they disclose the "tragic and embarrassing circumstances" of their lives. (Doc. 95 at 10). This apparently is meant to convey the putative next friends may not be pursuing Plaintiffs' best interests. The problem here is that public disclosure of Plaintiffs' "embarrassing circumstances" is unlikely. While discussion of some of those circumstances *may* be required, the Court has a duty to, and will, provide all possible protection of Plaintiffs' privacy interests. As noted by the Ninth Circuit, minors are "entitled to the most jealous care" and courts must ensure "no injustice be done to [them]." *Johns v. Cty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) (quotation omitted). Thus, sealing of records and hearings may be appropriate and will be ordered as necessary to protect Plaintiffs' interests. *See Leigh v. Salazar*, 677 F.3d 892, 899 (9th Cir. 2012) (recognizing that sealing of civil proceedings may be appropriate "to preserve higher values"); Fed. R. Evid. 611 (courts must "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . protect witnesses from . . . undue embarrassment."). *Cf.* 18 U.S.C. § 3509(e) (allowing for closing of courtroom in prosecution of offenses against children). Defendants' claim that

1 Plaintiffs must be warned that allowing this case to proceed will automatically result in disclosure of their most "embarrassing circumstances" is wrong. Again, Defendants' argument, if adopted by the Court, would effectively insulate them from viable legal challenges where, by their very nature, the challenges involve consideration of the embarrassing and tragic circumstances of innocents.

Defendants' second argument is that some Plaintiffs have not provided explicit permission to the putative next friends to bring this suit on their behalf. This argument depends on a fundamental misunderstanding of the role played by next friends. Plaintiffs are in need of next friends precisely because they are not competent to pursue their own interests.[3] Plaintiffs are not legally recognized as being competent to decide whether to seek relief from a court. Hence the need for next friends. To fault the next friends for not obtaining Plaintiffs' permission, when that permission is not controlling, is misguided. Of course, a "minor's best interests are of paramount importance in deciding whether a Next Friend should be appointed." *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 85 (1st Cir. 2010). And, depending on the circumstances, those best interests very likely will include a careful consideration of the minors' expressed preferences. But the idea that the lack of explicit permission is fatal to appointment of next friends is incorrect. *See Vargas v. Lambert*, 159 F.3d 1161, 1168 (9th Cir. 1998) (noting "[i]f [habeas petitioner] is not competent to rationally determine his best interests, his viewpoint is not determinative" of whether a best friend should be appointed).

Defendants' third and final argument depends on adopting inconsistent positions regarding the next friends' contact with Plaintiffs. Ms. Kupiszewski contacted B.T. to

---

[3] Federal Rule of Civil Procedure 17(b) provides the Court must look to Arizona law to determine if minors have the capacity to sue. *Johns v. Cty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) ("An individual's capacity to sue is determined by the law of the individual's domicile."). Arizona law provides "an infant cannot bring or defend a legal proceeding in person, but must sue or be sued by a legally appointed general guardian, or next friend or a guardian ad litem." *Pintek v. Superior Court In & For Cochise Cty.*, 277 P.2d 265, 268 (Ariz. 1954). There is no question, therefore, Plaintiffs are required to have next friends. *Cf. Wells v. Johnson*, No. CV 14-755-SDD-SCR, 2015 WL 5138279, at *2 (M.D. La. Aug. 28, 2015) ("Because Bethany Wells, Treasure Wells, and Patrick Wells are minors, they cannot proceed pro se."). And defense counsel have conceded this.

- 12 -

ask if he was willing to be a plaintiff in this suit. Defendants claim the decision to approach B.T. is "very concerning" and Ms. Kupiszewski should have contacted B.T.'s court-appointed attorneys instead. (Doc. 95 at 10). Ms. Kupiszewski's "very concerning" conduct was alleged by Defendants to establish she is not a good choice as a next friend. But Defendants completely reversed strategy regarding Ms. Tinsely. According to Defendants, Ms. Tinsley cannot serve as a next friend because she has never met with B.K. nor has she asked B.K. if she wanted to participate in this suit. Defendants cannot have it both ways. If the claim is Ms. Kupiszewski's contact with B.T. was, per se, inappropriate, then they cannot fault Ms. Tinsley for not contacting B.K. In any event, Ms. Kupiszewksi's and Ms. Tinsley's contacts (or lack thereof) with B.T. and B.K. were appropriate under the circumstances.

### E. Conclusion on Next Friend

None of Defendants' arguments against appointment of Ms. Kupiszewski and Ms. Tinsley are convincing and they will be appointed. The Court also rejects many of Defendants' arguments regarding Ms. Brandt, in particular that she is acting in her own interests. The facts establish Ms. Brandt is only concerned about the interests of the real parties in interest and Defendants' claims to the contrary are without substance. But Ms. Brandt's employment raises a possible appearance of impropriety so she will not be appointed. Counsel will be required to confer and identify other potential next friends to represent the children Ms. Brandt sought to represent. Of note, both counsel recognize the Court must appoint next friends for Plaintiffs. *See* fn.3. This should inspire counsel to move promptly to agree and propose to the Court individuals to serve.

### F. Defense Counsel

Defense counsel is obligated to represent their clients' interests to the best of their ability and the Court does not fault them for seeking to pursue those interests vigorously as they see fit. However, there are limits to advocacy. Counsel who engage in representing the client at all costs including misstating the facts, will do serious harm to themselves. There are two instances where defense counsel's opposition runs afoul of the

principle that all contentions must have accurate evidentiary support.

In disputing Ms. Kupiszewski's qualifications, defense counsel stated "Ms. Kupiszewski fails to aver that it is in B.T.'s best interests to participate in this matter." (Doc. 95 at 12). But according to Ms. Kupiszewski's affidavit, "I am familiar with . . . B.T.'s experiences in foster care and *believe that participating in this lawsuit is in [her] best interests*." (Doc. 86 at 3) (emphasis added). Similarly, in disputing Ms. Tinsley's qualifications to serve as a next friend, defense counsel argued "there is no averment that it is in the best interests of B.K. to be a Named Plaintiff in this lawsuit." (Doc. 95 at 14). But Ms. Tinsley's affidavit states, in paragraph ten, "I believe that this litigation is in the best interest of B.K." (Doc. 87 at 3). There is no doubt defense counsel read this precise paragraph because they quote from it immediately prior to claiming Ms. Tinsley did not state what she, in fact, stated. (Doc. 95 at 14).

The Court has reviewed all defense counsels' papers looking for an explanation, even a subtlety, that would save them. None was found. Defense counsel are experienced, so this is more disappointing, but at this point the Court assumes this will not reoccur.

**IT IS ORDERED** the Motion for Appointment (Doc. 83) is **GRANTED IN PART**. Jennifer Kupiszewski is appointed as next friend of B.T and Margaret Tinsley is appointed as next friend of B.K.

**IT IS FURTHER ORDERED** the parties shall meet and confer and, no later than **May 27, 2016** submit a joint statement identifying a suitable individual to serve as next friend for A.C-B, M.C-B, J.C-B, D.C-B, and J.M. If the parties cannot agree on a suitable individual, they shall each identify two suitable individuals, explaining those individuals' backgrounds.

Dated this 13th day of May, 2016.

Honorable Roslyn O. Silver
Senior United States District Judge