Joseph Mais (005470)
Shane Swindle (011738)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
T: (602) 351-8000
F: (602) 648-7000
jmais@perkinscoie.com
sswindle@perkinscoie.com

Daniel J. Adelman (011368)
Anne C. Ronan (006041)
**ARIZONA CENTER FOR LAW IN THE PUBLIC INTEREST**
352 E. Camelback Rd., Suite 200
Phoenix, Arizona 85012
T: (602) 258-8850
F: (602) 258-8757
danny@aclpi.org
aronan@aclpi.org

Harry Frischer (admitted *pro hac vice*)
Aaron Finch (admitted *pro hac vice*)
Daniele Gerard (admitted *pro hac vice*)
**CHILDREN'S RIGHTS, INC.**
88 Pine Street, Suite 800
New York, New York 10005
T: (212) 683-2210
F: (212) 683-4015
hfrischer@childrensrights.org
afinch@childrensrights.org
dgerard@childrensrights.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| B.K. by her next friend Margaret Tinsley, et al.<br><br>                    Plaintiffs,<br><br>v.<br><br>Michael Faust, in his official capacity as Director of the Arizona Department of Child Safety, et al.<br><br>                    Defendants. | No. 2:15-cv-00185-PHX-ROS<br><br>**JOINT SUMMARIES AND RESPONSES TO COMMENTS ON THE SETTLEMENT AGREEMENT**<br><br>(Assigned to the Honorable Roslyn O. Silver) |

Pursuant to the Court's Order of February 2, 2021 (Doc. 542), below are the parties' summaries and responses to each comment submitted to counsel concerning the Settlement Agreement.

**T. A. (Doc. 535-4, at 3-55)[1]**

**Comment:** This commenter, who runs a behavioral health residential facility, shared conflicts she has had with Defendants regarding the removal of youth from her facility, allegations of abuse and neglect against her facility, and the termination of her facility's ability to receive Medicaid payments. The commenter claims that there are behavioral health services available at her facility but that children are not permitted to access to these services because of Defendants' alleged personal animus against the commenter.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic for the need for children to remain in stable living conditions that provide them with the behavioral health services they need to thrive. The settlement addresses this by requiring Defendants to enhance their Therapeutic Foster Care program, ensure that children receive the behavioral health services they need, and that those services are effective. With respect to the specific issues related to the commenter's facility, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect a failure to provide adequate behavioral health services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of these comments concerns facts and circumstances of a pending dispute concerning an individual licensing matter. Although a few of the statements implicate matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement; therefore, Defendants respectfully decline to address the content of the specific comments.

---

[1] For individuals whose comments were filed under seal, the parties have used the commenters' initials to protect their personally identifying information, per the Court's instruction. (Doc. 542, at 2.)

**B. A. and C. A. (Doc. 535-3, at 56-62)**

**Comment:**  These commenters, who have a biological child in DCS custody, shared personal experiences with the child welfare system. They state that DCS did not try to keep their son at home, and identified having difficulties communicating with their second caseworker around the Child and Family Team meeting; they expressed concern that their child had been diagnosed and was undergoing treatment for a physical illness. (The commenters also shared difficulties with the birth of their child, drug testing, and taking parenting classes.)

**Plaintiffs' Response:**  Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenters' concerns by strengthening the processes for making placement decisions, imposing substantial requirements regarding behavioral health care**,** strengthening the Child and Family Team process, improving family involvement in behavioral health planning, and by addressing case manager and investigator workloads, which will improve the ability of case managers and investigators to engage productively with children, families, and caregivers. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**A. A. (Doc. 535-3, at 63-64)**

**Comment:**  This commenter, who has biological grandchildren in DCS custody, shared personal experiences with the child welfare system. She wrote that she had been overlooked as an appropriate kinship placement for her grandchildren and wanted her son to speak at the final approval hearing.

**Plaintiffs' Response:**   Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by strengthening the processes for making placement decisions. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. Plaintiffs were informed that the son did not want to speak at the hearing.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**J. C. A. (Doc. 535-3, at 65-74)**

**Comment:** This commenter shared personal experiences with the child welfare system. He states that he is incarcerated and was notified by mail that his children are in DCS custody, and that the children's grandmother has not been allowed to visit. He also states that the mother neglected and abused the children but is now living with them.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by addressing case manager workloads so that case managers have sufficient time to ensure visits, by requiring additional monitoring relating to visits, and by requiring practice improvement case reviews that include examination of the quality of visits. With respect to the

specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

## B. A. (Doc. 535-3, at 75)

**Comment:** This foster parent shared personal experiences with the child welfare system, explaining that a child placed with her reunified with a birth parent the foster parents felt to be unfit. The commenter states that DCS is prioritizing birth parents over the child's best interests, and that DCS has insufficient time or resources to adequately evaluate situations.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns, including by strengthening the processes for making placement decisions and by addressing case manager and investigator workloads, which will improve the ability of case managers and investigators to engage productively with children, families, and caregivers. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases

5

through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**D. J. B. (Doc. 535-3, at 76-81)**

**Comment:** This commenter, an adoptive parent and teacher, shared her experience with the child welfare system. She identified concerns that it took far too long for her children to receive the medical and behavioral services they needed, that the system favored parents' needs over the child's, that case managers are greatly overworked, and that the people making decisions about the lives of foster children need a better understanding of children's developmental needs.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. The Settlement Agreement addresses her concerns by, among other things, requiring Defendants to build an adequate behavioral health array and ensure children receive effective behavioral health services, ensuring that children receive regular medical check-ups, that DCS enhance its monitoring of case manager workload, and that Child and Family Teams include qualified behavioral health professionals in making decisions about children's behavioral health needs. With respect to the commenter's specific experiences with her two adoptive children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of these comments concerns facts and circumstances of an individual state court case. Although a few of the statements implicate matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement; therefore, Defendants respectfully decline to address the content of the case-specific comments.

**B. B. (Doc. 535-3, at 82-84)**

**Comment:** This grandparent shared personal experiences with the child welfare system. She writes that she has been denied visitation with her grandchildren, who are in DCS custody, and has not been approved as a foster parent for them. She also alleges that DCS has a practice of removing minority children for adoption by white families, and lists a few other families she believes have had similar experiences with DCS. She requested to speak at the final approval hearing.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address many of the commenter's underlying concerns by strengthening the processes for making placement decisions, by addressing case manager workloads so that case managers have sufficient time to ensure visits, by requiring additional monitoring relating to visits, and by requiring practice improvement case reviews that include examination of the quality of visits. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**Jenna Bowman (Doc. 535-1, at 3)**

**Comment:** This commenter, a group home owner, shared her concerns that foster homes are hard to find for 14-17 year old girls, that oversight and monitoring of behavioral

health care is insufficient, and that different DCS licensing representatives will sometimes apply different interpretations of licensing standards when licensing group homes.

**Plaintiffs' Response:** Plaintiffs' appreciate the perspective of Ms. Bowman based on her experiences with the child welfare system. The settlement agreement addresses many of her concerns, which were the subject of this lawsuit, by requiring DCS to improve its foster home array, including by paying special attention to historically difficult to place populations like teenagers, and by requiring DCS to improve its behavioral health service array and ensure that foster children receive effective, necessary behavioral health services.

**Defendants' Response:** Defendants appreciate the input from Ms. Bowman. Defendants believe that the settlement agreement fairly, reasonably, and adequately addresses Ms. Bowman's concern—which Defendants share—regarding the difficulty of finding family-like placements for particular sub-populations of children in out-of-home care. The settlement agreement requires numerous actions and outcomes related to oversight and monitoring of behavioral health care, and Defendants believe those, too, are adequate to address the commenter's concerns.

**L. B. (Doc. 535-3, at 85-86)**

**Comment:** This commenter, whose son is in DCS custody, shared personal experiences with the child welfare system. She describes that her child was placed in a variety of unsuitable placements, including a group home, and that he has received insufficient medical and behavioral health care; she also notes that she and her partner were not given adequate opportunity to participate in their child's case, including at a CFT meeting, and that DCS is unprepared in court and does not arrange sufficient visitation. She requested to speak at the final approval hearing.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by requiring DCS to improve the availability of family foster homes and therapeutic foster homes, by imposing substantial requirements regarding behavioral health care, strengthening the

Child and Family Team process, improving family involvement in behavioral health planning, and by addressing case manager workload, which will improve the ability of case managers to (1) engage productively with children, families, and caregivers, (2) ensure children promptly receive all the medical, dental, developmental, and behavioral health services they need, and (3) ensure visitation with parents consistent with DCS policy. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**F. B.-T. (Doc. 535-3, at 87-89)**

**Comment:** This commenter shared personal experiences with the child welfare system; he objects to the state's decision to keep his children with foster parents rather than place them with their grandmother.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by strengthening the processes for making placement decisions. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**V. C.**[2] **(Doc. 535-3, at 90, 544-1 at 3-4)**

**Comment:** This commenter shared personal experiences with the child welfare system. She is having difficulty qualifying to become a foster parent for her grandchildren, and states that many other grandparents have had similar issues obtaining kinship licenses from DCS.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address the commenter's underlying concerns by strengthening the processes for making placement decisions. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts).

---

[2] In the parties' initial filing V.C.'s comments were erroneously filed under both V.C.'s name (Doc. 535-3, at 90) and the name on V.C.'s email address, which corresponds to the initials C.H. (Doc. 535-4, at 20).

While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**B. C. (Doc. 535-3, at 91)**

**Comment:** This foster parent shared personal experiences with the child welfare system, stating that a child placed with him did not receive proper support or behavioral health services from DCS. The commenter explained that DCS had not recently placed additional foster children in his home due to delays in receiving background check results for other members of his household.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by imposing substantial requirements regarding behavioral health care**,** strengthening the Child and Family Team process, improving family involvement in behavioral health planning; by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers; and by strengthening the processes for making placement decisions. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

11

**J. C. (Doc. 535-3, at 92)**

   **Comment:** This commenter wrote that he does not currently have a child in DCS custody and was confused as to why he received the notice.

**L. C. (Doc. 535-4, at 4-6)**

   **Comment:** This foster and adoptive parent shared personal experiences with the child welfare system. She stated that she did not receive proper funding from DCS for the care of the children, or respite aid, and that DCS ignored her foster children's allegations of abuse against their biological parents. She requested to speak at the final approval hearing.

   **Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address some of the commenter's underlying concerns by requiring DCS to develop additional training and support for foster families and by addressing case manager and investigator workloads, which will improve the ability of case managers to engage productively with children, families, and caregivers. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response.

   **Defendants' Response:** The content of this comment concerns facts and circumstances of individual state court cases. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**A. C. (Doc. 535-4, at 7-8)**

   **Comment:** This commenter, whose daughter is in out-of-home care, requested to

speak at the final approval hearing to object to the settlement agreement, but did not provide details concerning what she intends to speak about.

**C. D. (Doc. 535-4, at 9)**

**Comment:** This commenter, whose children are in out-of-home care, shared personal experiences with the child welfare system. He states that the manner in which his children were removed was unprofessional and that his due process rights were denied.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address the commenter's underlying concerns by addressing case manager and investigator workloads, which will improve the ability of case managers and investigators to engage productively with children, families, and caregivers. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**Molly Dunn (Doc. 535-1, at 4-8)**

**Comment:** Molly Dunn is the Director of Child Welfare & Juvenile Justice Policy at the Children's Action Alliance, a highly-regarded advocate for foster children in Arizona.

13

Ms. Dunn's letter supports the settlement. She writes that, "the settlement agreement if carried out with fidelity will result in improvements in the provision of behavioral, physical, and dental health services to foster youth and increase the placement of children in family-like settings." (Doc. 535-1, at 6.) Ms. Dunn "applaud[ed]" the settlement agreement provisions that focus on the recruitment and support of foster families for historically difficult to place subpopulations of foster children. (Doc. 535-1, at 7.) She also "especially applaud[ed]" the requirement that DCS measure the frequency of sibling visitation as part of monitoring case manager workload as this "is an area of high concern for many young people in foster care." (Doc. 535-1, at 6.)

Ms. Dunn also makes two recommendations for improving the settlement. She recommends that additional measures of case manager retention and continuity be added to the workload monitoring measurements already included in the settlement (Doc.535-1 at 7) , and that DCS implement plans for eliminating barriers to a child's kin becoming licensed foster parents. (Doc. 535-1, at 8.)

**Plaintiffs' Response:** Plaintiffs appreciate Ms. Dunn's perspective based on her experiences with Arizona's child welfare system, and like Ms. Dunn, believe that the Settlement Agreement presents an excellent result for Arizona's foster care population. Plaintiffs also appreciate her specific vision for how the system can be additionally improved, but also believe the Settlement Agreement, reached after extensive litigation and arms-length negotiation, is fair, reasonable, and more than adequate. Fed. R. Civ. P. 23(e)(2). The Settlement Agreement also squarely addresses case manager workloads and the need for additional placement resources for children, the subject of Ms. Dunn's recommendations. The Settlement Agreement requires considerable improvements in those areas and will cure the alleged deficiencies giving rise to the claims. It requires DCS to meet significant benchmarks demonstrating improvement; contains meaningful mechanisms to monitor DCS compliance; and provides for strong enforcement remedies in the event of non-compliance.

At the same time, the Settlement Agreement also provides DCS with sufficient flexibility to determine *how* it will implement the required improvements. The Settlement

Agreement does not require the Court to micromanage DCS or enforce rigid, detailed obligations beyond what is necessary to cure the alleged violations, while still requiring DCS to develop detailed plans with input from Plaintiffs. There are many ways that the agency can go about implementing these mandated improvements. Ms. Dunn's suggestions may well advance the goals of the settlement agreement and may be taken into account in the implementation plans that will be created under the agreement. But Plaintiffs do not understand these particular suggestions to be the only way for DCS to obtain the results that are required or cure the alleged violations. Plaintiffs believe the negotiated settlement draws an appropriate balance, providing DCS with a modicum of flexibility while also mandating the required improvements.

**Defendants' Response:** Molly Dunn, of Children's Action Alliance, wrote that the settlement agreement, if carried out with fidelity, will result in improvements across all areas, but she recommended additional measures related to workload and placement array. Defendants appreciate Ms. Dunn's sincerity and laudable motivations, and respect her expertise and experience. However, Defendants believe that (1) the agreement sufficiently advances the goals behind the proposed additional terms, and (2) none of the additional terms is necessary to ensure the fairness, adequacy, or reasonableness of the settlement. Additionally, although the agreement embraces many best practices advocated by Ms. Dunn and other commenters, such practices exceed the constitutional and statutory minima. As it stands, the agreement reflects a willingness to adopt and standardize much more than the law requires.

Regarding § 3 (Workload), DCS believes the enhanced workload monitoring (*see* § 3.2) and Practice Improvement Case Reviews (*see* § 3.3) required by the settlement agreement are the correct approach to improving engagement and continuity in the child/family-caseworker relationship. DCS continues to address case manager retention and continuity of case manager assignments outside of the settlement agreement.

Regarding § 4 (Placement Array), DCS notes the referenced $25.1 million appropriation ensures funding for immediate needs on 10/1/2021 (to replace reduced federal funding) because congregate care reduction will not be instantaneous, as the settlement

agreement's timeline recognizes; DCS has agreed to congregate care reduction performance outcome measures; and its FFPSA implementation decisions were based on multiple considerations—not solely congregate care. Regarding the reference to Canyon State Academy, DCS notes the 25-bed limitation applies only to state operated programs.

**M. E. (Doc. 535-4, at 10)**

**Comment:** This commenter, a former foster and now adoptive parent, shared personal experiences with the child welfare system. She expressed support for the settlement agreement, but wrote that she wished it had more provisions specific to foster parents, including trauma training and peer coaching. She also noted high turnover and high caseloads for DCS workers.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address the commenter's underlying concerns by requiring DCS to develop additional training and support for foster families and by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers. With respect to the specific issues relating to particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**S. F. (Doc. 535-4, at 12-15)**

**Comment:** This commenter is a father who has experience with the child welfare system through his family's involvement with DCS and through ASA Now, a support organization for children and families impacted by foster care. His letter contains a number of suggestions for changing the settlement. He recommends, for example, that the agreement describe the Behavioral Health Quality Assurance Program that DCS is required to implement in greater detail, that DCS's compliance be monitored by a third-party organization, and that there be additional requirements concerning the caseloads carried by case managers.

**Plaintiffs' Response:** Plaintiffs appreciate the commenter's perspective based on his experiences with Arizona's child welfare system, and his particular vision for how the system can be improved, but also believe the Settlement Agreement, reached after extensive litigation and arms-length negotiation, is fair, reasonable, and more than adequate. Fed. R. Civ. P. 23(e)(2). The Settlement Agreement squarely addresses the commenter's underlying concerns and presents an outstanding result for Arizona's foster care population. The Settlement Agreement requires considerable improvements in the areas giving rise to the Complaint and will cure the alleged deficiencies giving rise to Plaintiffs' claims. It requires DCS to meet significant benchmarks demonstrating improvement; contains meaningful mechanisms to monitor DCS compliance; and provides for strong enforcement remedies in the event of non-compliance.

At the same time, the Settlement Agreement also provides DCS with sufficient flexibility to determine *how* it will implement the required improvements. The Settlement Agreement does not require the Court to micromanage DCS or enforce rigid, detailed obligations beyond what is necessary to cure the alleged violations, while still requiring DCS to develop detailed plans with input from Plaintiffs. Plaintiffs believe the negotiated settlement draws an appropriate balance, providing DCS with a modicum of flexibility while also mandating the required improvements.

As to DCS's Behavioral Health Quality Assurance Program, the Settlement Agree-

ment requires DCS to incorporate additional behavioral health performances into its pro-gram, including regular monitoring of whether children in foster care receive services they need, the timeliness of those services, and whether services are provided with fidelity to AHCCCS's CFT Practice Tool. Doc. 529-1 (Settlement) § 1.2(a). DCS must regularly monitor that CFTs are being run the way they are supposed to, including by directly peri-odically observing a sample of CFTs. Doc. 529-1 (Settlement) § 1.2(b). DCS must imple-ment and regularly report on additional measures to monitor and improve its utilization of therapeutic foster care. Doc. 529-1 (Settlement) § 1.2(c). DCS must regularly review all of these measures and share them with Plaintiffs who will be monitoring the agreement. Doc. 529-1 (Settlement) §§ 1.2(d), 5.1-.3. The settlement agreement also directly addresses case manager workloads and the need for an outside entity—here Plaintiffs' counsel—to mon-itor DCS's performance throughout the life of the agreement. Doc. 529-1 (Settlement) §§ 3, 5.1-.3.

There are many ways that the agency can go about implementing mandated im-provements. Plaintiffs do not seek a Court order that imposes requirements on DCS at the level of detail which may entangle the Court in running the child welfare system in Ari-zona. And Plaintiffs believe the negotiated settlement draws an appropriate balance, providing DCS with a modicum of flexibility while also mandating the required improve-ments.

**Defendants' Response:** Defendants accept the sincerity and laudable motivations behind Mr. F.'s comments.  However, Defendants believe that (1) the agreement suffi-ciently advances the goals behind the proposed additional terms, and (2) none of the addi-tional terms is necessary to ensure the fairness, adequacy, or reasonableness of the settle-ment. Additionally, although the agreement embraces many best practices advocated by this commenter, such practices exceed the constitutional and statutory minima. As it stands, the agreement reflects a willingness to adopt and standardize much more than the law re-quires. That is a credit to Plaintiffs' counsel's advocacy and the stakeholders' efforts over the past five years. It is also a credit to the improvements Defendants have achieved over the same period, demonstrating both the commitment and the ability to advance the welfare

of children in foster care.

**S. F. (Doc. 535-4, at 16-17)**

 **Comment:** This commenter, a foster parent, shared her personal experience with the child welfare system, during which she states a child was inappropriately returned to the biological parent. The commenter also states that case managers are overworked and have no time to focus on the needs of the children on their caseload. She believes that the failure to address this is the reason that many foster parents have closed their licenses.

 **Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by addressing case manager and investigator workloads, which will improve the ability of case managers and investigators to engage productively with children, families, and caregivers and to ensure that children promptly receive all the services they need. By building and maintaining an adequate placement array, the settlement will ensure that children can be placed in family settings that are safe, stable, nurturing environments until the child's case plan goal is achieved. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response.

 **Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**C. G. (Doc. 544-1, at 5-13)**

 **Comment:** This commenter whose child is in foster care describes her experience with the child welfare system. She states that she has had trouble working with her case

manager and her lawyer. She also asks the Court to intervene in her child welfare case and return her daughter to her.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. Plaintiffs believe that the Settlement Agreement may address some of the commenter's underlying concerns by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers. With respect to the specific issues relating to this particular child and family, Plaintiffs do not have sufficient information to provide a further response. While the Court cannot intervene in the commenter's child welfare case, to the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**B. S. G. (Doc. 535-4, at 18-19)**

**Comment:** This commenter, whose children are in DCS care, shared her personal experience with the child welfare system. She expressed concerns about her children's behavioral and physical care, and questioned if her child's case manager was making sure that her children receive the therapy they need. She requested to speak at the final approval hearing.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by impos-

ing substantial requirements regarding behavioral health care, improving family involvement in behavioral health planning, and by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers and to ensure that children promptly receive all the medical, dental, developmental, and behavioral health services they need. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

### D. H. (Doc 544-1 at 14-16)

**Comment:** This commenter shared her personal experience with the child welfare system, stating that her children, who are in DCS custody, have not been receiving mental health services and have been traumatized as a result of the state's involvement with their family. She also explains that the state wrongly took her children, did not allow them to contact her for two years, and withholds information from the parents.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by imposing substantial requirements regarding behavioral health care, by improving family involvement in behavioral health planning, and by addressing case manager and investigator workloads, which will improve the ability of case managers and investigators to engage

productively with children, families, and caregivers; this will also improve the ability of case managers to ensure that children promptly receive all the behavioral health services they need. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**J. S. H. (Doc. 535-4, at 21-22)**

**Comment:** This commenter, whose two children are in DCS custody, shared personal experiences with the child welfare system. She writes that they have received inadequate behavioral and physical health care, been placed in unsafe homes, and suffered due to overloaded caseworkers. She also notes that she will be filing a civil lawsuit on her own behalf.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by imposing substantial requirements regarding behavioral health care, improving family involvement in behavioral health planning, and by addressing case manager workload, which will improve the ability of case managers to ensure children promptly receive all the medical, dental, developmental, and behavioral health services they need and to engage productively with children, families, and caregivers. By building and maintaining an adequate placement array, the settlement will ensure that children can be placed in family settings that are safe,

stable, nurturing environments until the child's case plan goal is achieved. With respect to the specific issues relating these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**Q. H. (Doc. 535-4, at 23)**

**Comment:** This commenter, whose children are in DCS care, reached out to receive more information on the notice of settlement.

**S. H. (Doc. 535-4, at 24)**

**Comment:** This commenter's incarcerated sister has children in DCS care and asked the commenter to reach out to receive more information on the notice of settlement.

**M. L. J. (Doc. 535-4, at 25-33)**

**Comment:** This commenter shared his personal experience with the child welfare system, expressing concern that his daughter had been placed in non-kinship care when he states that he has numerous family members (whose names he lists) who would be eligible to care for the child.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plain-

tiffs believe that the Settlement Agreement may address the commenter's underlying concerns by strengthening the processes for making placement decisions, and by addressing case manager and investigator workloads, which will improve the ability of case managers and investigators to engage productively with children, families, and caregivers. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**A. J. (Doc. 535-4, at 34)**

**Comment:** This commenter, whose children are in DCS custody, shared her personal experience with the child welfare system. She expressed concern that the children's physical and mental health are not being cared for by DCS.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by imposing substantial requirements regarding behavioral health care, improving family involvement in behavioral health planning, and by addressing case manager workload, which will improve the ability of case managers to ensure the children promptly receive all the medical, dental, developmental, and behavioral health services they need. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient infor-

mation to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**Treva Johnson (Doc. 535-1, at 9-11)**

**Comment:** Mr. Johnson is the public policy director for the national Family Focused Treatment Association (**FFTA**), an organization representing providers of therapeutic foster care. Mr. Johnson did not comment directly on the settlement other than to state that Therapeutic Foster Care (also called Treatment Foster Care) is a "valuable part" of an effective service array and that children are "best served" in appropriately supported family settings. Mr. Johnson also offers the Court and the parties his organization's support, resources, and expertise as we work to care for Arizona's children and families.

**Plaintiffs' Response:** Plaintiffs agree with Mr. Johnson's position on therapeutic foster care and the placement of children in families. Plaintiffs also agree that stakeholders like the FFTA and its local chapter will have valuable input, and Plaintiffs would encourage that these groups be involved in the implementation of the Agreement.

**Defendants' Response:** Defendants appreciate Mr. Johnson's experience and expertise related to TFC.  Defendants accept the sincerity and laudable motivations behind Mr. Johnson's comments.  DCS agrees TFC is integral to its placement array, but notes that TFC placements are not constitutionally or statutorily required.  However, the settlement agreement will increase the use of TFC and broaden its availability.

Defendants note that Dawn Wallschlaeger, who chairs Arizona's chapter of the FFTA, also submitted a comment. The Court may find Defendants' detailed response to Ms. Wallschlaeger's comment to be relevant to its consideration of Mr. Johnson's comment.

**Vivian Johnson (Doc. 535-1, at 12)**

**Comment:** Ms. Johnson is a chaplain who asked to speak at the hearing. She stated that she is prepared to advocate for the need to have support services available for foster children but did not otherwise comment on the settlement.

**Plaintiffs' Response:** Plaintiffs agree with Ms. Johnson that support services must be available to foster children and believes the settlement agreement will accomplish that. The Settlement Agreement requires considerable improvements in the areas giving rise to the Complaint and will cure the alleged deficiencies giving rise to Plaintiffs' claims. It requires DCS to meet significant benchmarks demonstrating improvement; contains meaningful mechanisms to monitor DCS compliance; and provides for strong enforcement remedies in the event of non-compliance.

**Defendants' Response:** Defendants appreciate Ms. Johnson's concern for the welfare of children in Arizona's foster care system, and her willingness to articulate her concerns directly to the Court. Other than Ms. Johnson's desire to ensure that adequate support services are available to children in foster care, a desire Defendants share, her comment is simply a request to speak.

**J. K. (Doc. 535-4, at 35-36)**

**Comment:** This commenter, an adoptive mother whose adopted child is still involved with the child welfare system, shared her personal experiences. This commenter's adopted child has serious behavioral health needs and receives services from the Division of Developmental Disabilities. She describes struggling to get appropriate services for him and his re-entry into foster care as a result.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. Plaintiffs believe that the Settlement Agreement addresses the issues underlying the commenter's concerns by improving the behavioral health service array; ensuring that children receive effective, needed behavioral health services; improving the speed at which DDD gets involved, and by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers. With respect to the specific issues relating to this particular child and family, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of these comments concerns facts and circumstances of an individual state court case. Although a few of the statements implicate matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement; therefore, Defendants respectfully decline to address the content of the case-specific comments.

**D. K. (Doc. 535-4, at 37-41)**

**Comment:** This commenter, a CASA and foster parent, shared her personal experience with the child welfare system, stating that DCS caseworkers do not arrange appropriate care for children who are overmedicated, exhibiting sexualized behavior, and in need of medical treatment; do not provide foster parents with appropriate support or sufficient information about children's health or history; and threaten and berate foster parents. She also notes problems in group homes.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by requiring DCS to develop additional training and support for foster families, by imposing substantial requirements regarding behavioral health care, by addressing case manager workload, which will improve the ability of case managers to ensure that children promptly receive all the medical, dental, developmental, and behavioral health services they need

27

and to engage productively with children, families, and caregivers, and by requiring DCS to improve the availability of family foster homes and therapeutic foster homes.  With respect to the specific issues relating to particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of individual state court cases.  Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**N. K. (Doc. 535-4, at 42)**

**Comment:** This commenter, who has a daughter, requested to speak at the final approval hearing but did not provide details concerning what he intends to speak about.

**K. K. (Doc. 535-4, at 43-44)**

**Comment:** This commenter, whose daughter is in DCS custody, shared her personal experience with the child welfare system. She writes that the child was taken from her under false accusations, has not received the proper mental health medication or treatment, and has been placed in placements below her level of need. She requested to speak at the final approval hearing.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by imposing substantial requirements regarding behavioral health care, improving family involvement in behavioral health planning, and by addressing case manager and investigator work-

loads, which will improve the ability of case managers and investigators to engage productively with children, families, and caregivers and improve the ability of case managers to ensure that children promptly receive all the behavioral health services they need. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

### A. K. (Doc. 535-4, at 45-47)

**Comment:** This commenter, a former foster child whose son is currently in DCS custody, shared her personal experience with the child welfare system, providing many details regarding the removal of her son. The commenter states that despite the traumatizing events her son has endured, he has not received sufficient mental health services.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by imposing substantial requirements regarding behavioral health care, improving family involvement in behavioral health planning, and by addressing case manager workload, which will improve the ability of case managers to ensure that children promptly receive all the behavioral health services they need and to engage productively with children, families, and caregivers. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments

reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**M. L. (Doc. 535-4, at 48)**

**Comment:** This commenter shared his personal experience with the child welfare system concerning his grandchildren who were placed with him and his wife and put in therapy. He writes that the person responsible for abusing his grandchildren was never held responsible. The commenter notes that the grandchildren's caseworkers expressed that they had way too many kids to handle.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address the commenter's underlying concerns by imposing substantial requirements regarding behavioral health care and by addressing case manager workload, which will improve the ability of case managers to ensure that children promptly receive all the behavioral health services they need and to engage productively with children, families, and caregivers. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts).

30

While a few of the commenter's statements touch on matters addressed in the federal law-suit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**C. L. (Doc. 535-4, at 49-50)**

**Comment:** This commenter, who writes that her three children were wrongfully placed in DCS custody, shared her personal experience with the child welfare system. She states that her children's physical and mental health are being neglected while in DCS care.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by strengthening the processes for making placement decisions and imposing substantial requirements regarding behavioral health care**,** improving family involvement in behavioral health planning, and by addressing case manager and investigator workloads, which will improve the ability of case managers and investigators to engage productively with children, families, and caregivers, and improve the ability of case managers to ensure children promptly receive all the medical, dental, developmental, and behavioral health services they need. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal law-suit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**A. L. (Doc. 535-4, at 51)**

**Comment:** This commenter expressed a desire to comment on the settlement agreement and speak at the final approval hearing, but did not provide details concerning what she intends to speak about.

**S. L. (Doc. 535-4, at 52-53)**

**Comment:** This commenter, a foster and adoptive parent for a child with high behavioral health needs, shared her personal experience with the child welfare system. She states that it took one or two years for DCS to put in place any therapeutic services for the child, and that they were not sufficient. The commenter believes that this child's needs were so great that he should not have been placed in her home to begin with.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by imposing substantial requirements regarding behavioral health care**,** strengthening the Child and Family Team process, improving family involvement in behavioral health planning, and by addressing case manager workload, which will improve the ability of case managers to ensure children promptly receive all the medical, dental, developmental, and behavioral health services they need. With respect to the specific issues relating this particular child, Plaintiffs do not have sufficient information to provide a further response.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**V. M. (Doc. 535-4, at 54)**

**Comment:** This commenter shared her personal experience with the child welfare system; she stated that her children were separated while in DCS custody, although they are together now, and one has bad bruises that have not been addressed. The commenter says that her children's case manager does not keep her informed about her children and that visitation does not occur for months at a time.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by requiring DCS to improve the availability of family foster homes, by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers and ensure visitation with parents and siblings consistent with DCS policy. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**D. M. (Doc. 535-4, at 55)**

**Comment:** This commenter, whose daughter is in DCS custody, shared personal experiences with the child welfare system, stating that the child is not being treated appropriately, but providing no details.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address the commenter's underlying concerns by imposing substantial requirements regarding the provision of medical and behavioral health care. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**T. M. (Doc. 535-4, at 56-58)**

**Comment:** This commenter, the parent of a child in foster care, shared her personal experience with the child welfare system. She states that her child entered foster care because she was unable to get appropriate behavioral health services for her child from the mental health system and that her child did not receive appropriate physical and behavioral health care while in DCS custody.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. Plaintiffs believe that the Settlement Agreement addresses the issues underlying the commenter's concerns by improving the behavioral health service array; ensuring that children receive effective, needed behavioral health services; ensuring that children receive regular physical health checkups, and by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers. With respect to the specific issues relating to this particular child and family, Plaintiffs do

34

not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of these comments concerns facts and circumstances of an individual state court case. Although a few of the statements implicate matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement; therefore, Defendants respectfully decline to address the content of the case-specific comments.

**J. M. (Doc. 535-4 at 59)**

**Comment:** This commenter, a CASA and adoptive parent, shared her personal experience with the child welfare system. She states that case managers had high caseloads; this led her to take the children to an emergency room twice to get the medical care they needed. She believes that the children she fostered had continued to suffer abuse even after being taken into DCS custody.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by addressing case manager workload, which will improve the ability of case managers to ensure children promptly receive all the medical, dental, developmental, and behavioral health services they need, and improve the ability of case managers to engage productively with children, families, and caregivers. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns individual state cases. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or

general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**M. M. (Doc. 535-4, at 60, 544-1, at 16-17)**

**Comment:** This commenter, whose son has been in DCS custody for four years, shared her personal experience with the child welfare system. She asks for help getting her son back.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address the commenter's underlying concerns by strengthening the processes for making placement decisions. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**J. M. (Doc. 535-4, at 61)**

**Comment:** This commenter, whose children are currently in foster care, shared her personal experience with the child welfare system. She states that DCS neglects to provide medical, dental, and behavioral services to youth in care.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by imposing substantial requirements regarding medical, dental and behavioral health care, strengthening the Child and Family Team process, improving family involvement in behavioral

health planning, and by addressing case manager workload, which will improve the ability of case managers to ensure children promptly receive all the medical, dental, developmental, and behavioral health services they need. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**R. M.-M. (Doc. 535-4, at 62)**

**Comment:** This commenter, a child in DCS custody, shared personal experiences with the child welfare system. He states that an ankle ailment that has gone unaddressed is painful and preventing him from playing sports.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by imposing substantial requirements regarding physical health care, and addressing case manager workload, which will improve the ability of case managers to ensure children promptly receive all the medical services they need. With respect to the specific issues relating this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case

fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**M. M. (Doc. 535-4, at 63-65)**

**Comment:** This commenter, the parent of a child in foster care, shared her personal experience with the child welfare system. She explains that her child did not receive appropriate behavioral health services, including a therapeutic placement, after being sexually assaulted, placing him at risk of suicide. She also describes not being allowed to participate in the child's CFT.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by imposing substantial requirements regarding behavioral health care**,** strengthening the Child and Family Team process, improving family involvement in behavioral health planning, and by improving access to therapeutic foster care. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an individual state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**V. M. and V. C. (Doc. 535-4, at 66)**

**Comment:** This commenter shared her personal experience with the child welfare system; while her autistic daughter was in DCS custody, her behavioral health needs were not met and the commenter was not kept informed. She explains that the child was not placed in appropriate placements, and was moved between several different placements over 10 months. She states that there were allegations of sex abuse at one of the placements.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by strengthening the processes for making placement decisions, imposing substantial requirements regarding behavioral health care**,** improving family involvement in behavioral health planning, and by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers and to ensure children promptly receive all the behavioral health services they need. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**S. M. (Doc. 535-4, at 67)**

**Comment:** This commenter requested to become part of the case, but provided no other information.

**J. A. M. (Doc. 535-4, at 68-69)**

**Comment:** This commenter, whose transitioning son is currently in a DCS group home, shared her personal experience with the child welfare system. She states that he is not receiving behavioral health services, is being medically and emotionally neglected and abused, and wants to come home. She requested to speak at the final approval hearing.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses some of the commenter's underlying concerns by imposing substantial requirements regarding medical and behavioral health care. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**Paul Otto (Doc. 535-1, at 13)**

**Comments:** Paul Otto writes that he is the Clinical Director of the Little Colorado Behavioral Health Center, that he has experience working with DCS, and that "there is much need for improvement in their understanding of behavioral health needs and coordination of care with health homes." (Doc. 535-1, at 13) He also writes that the settlement "confuses" him because he believes that, under the settlement, "behavioral health is under

scrutiny, not DCS" and that "the proposed behavioral health solutions are targeting the wrong entity." (*Id.*)

**Plaintiffs' Response:** Plaintiffs believe that the Settlement Agreement will lead to considerable improvement in the delivery to behavioral health services to children in foster care, thus addressing Mr. Otto's principal concern. The settlement imposes obligations on DCS, not on behavioral health care providers, in DCS's capacity as custodian for children in foster care and the managed behavioral health care organization for children in foster care under contract with AHCCCS.

**Defendants' Response:** Defendants appreciate the laudable motivation and sincerity underlying Mr. Otto's comments, but respectfully disagree that the settlement agreement does not sufficiently scrutinize DCS's performance rather than that of behavioral health service providers. Specific providers are not parties to the lawsuit, and the settlement agreement cannot impose requirements on them. However, it has requirements and outcome measures applicable to DCS that address Mr. Otto's underlying concerns. DCS also notes that the settlement agreement accounts for integration of behavioral health into DCS's health plan, a significant change that DCS believes will improve service levels, efficiency, and accountability with respect to behavioral health services for children in out-of-home care.

**M. O. (Doc. 535-4, at 70)**

**Comment:** This commenter shared her personal experience with the child welfare system. She states that her children were physically and emotionally abused in DCS custody.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to this comment. Unfortunately, with respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases

through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**A. P. (Doc. 535-4, at 71)**

**Comment:** This commenter shared her personal experience with the child welfare system. She explains that she was supposed to reunify with her children, but her parental rights were severed. She also states that she completed her case plan.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. Unfortunately, with respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already litigated state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**A. M. P. (Doc. 535-4, at 72)**

**Comment:** This commenter, whose two children are in out-of-home care, requested to speak at the final approval hearing to object to the settlement agreement, but did not provide details concerning what he intends to speak about.

**D. Q. (Doc. 535-4, at 73-74)**

**Comment:** This commenter, who states that her daughter became pregnant twice while in DCS custody and is now on the run, shared her personal experience with the child welfare system. She explains that she has not been allowed to visit her grandson. The commenter also writes that DCS did not address her daughter's behavioral health needs until recently.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses some of the commenter's concerns by imposing substantial requirements regarding behavioral health care and improving family involvement in behavioral health planning. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**A. R. (Doc. 535-4, at 75-78)**

**Comment:** This commenter, a foster parent, shared his personal experience with the child welfare system. He states that DCS does not recruit or retain foster families effectively, the renewal process is onerous, and that case managers are unreachable. He requested to speak at the final approval hearing.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plain-

tiffs believe that the Settlement Agreement addresses the commenter's concerns by requiring DCS to improve plans to identify and recruit potential foster parents and to develop additional training and support for foster families, and by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers.

**Defendants' Response:** The content of this comment concerns facts and circumstances of individual state court cases, as well as issues addressed in the settlement agreement. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). Mr. Reel's comments do not address the specific terms or general framework of the settlement agreement. Defendants believe that the settlement agreement adequately addresses Mr. Reel's underlying concerns regarding the recruitment and licensing of foster parents, and the workloads of case managers. Defendants respectfully decline to address the content of the case-specific comments.

**T. R. R. (Doc. 535-4, at 79-80)**

**Comment:** This commenter, whose children are in DCS custody, shared her personal experience with the child welfare system. She states that DCS did not properly investigate when she was accused of abusing her children.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address the commenter's underlying concerns by addressing case manager and investigator workloads so that case managers and investigators have sufficient time to engage productively with children, families, and caregivers. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts).

While a few of the commenter's statements touch on matters addressed in the federal law-suit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**D. R. (Doc. 535-4, at 81-82)**

**Comment:** This commenter requested additional information on the settlement.

**Anika Taylor Robinson (Doc. 535-1, at 14-23)**

**Comment:** Anika Robinson has suggested a number of proposed improvements to the settlement agreement, including a number of areas where she suggests that the settlement provide greater specificity. Ms. Robinson proposes, for example, a particular type of tracking system for behavioral health services (Doc. 535-1, at 18); and requests that the settlement specify the number of hours of training that should be provided to DCS staff (Doc. 535-1, at 18-19); the number of hours in advance that participants in Child and Family Team meetings should receive certain documentation (Doc. 535-1, at 19); the particular corrective actions that should be taken if DCS fails to meet requirements of the settlement (Doc. 535-1, at 19); the minimum number of hours per week for sibling visits (Doc. 535-1, at 19), and other similar suggestions.

Throughout her submission, Ms. Robinson proposes line edits to the settlement documentation, principally serving to increase the obligations on DCS. Her comments cover the behavioral health provisions of the settlement (Doc. 535-1, at 18-20), the physical health provisions (Doc. 535-1 at 20); the workload provisions (Doc. 535-1, at 21), and placement array provisions (Doc. 535-1, at 21) and the validation and exit provisions (Doc. 535-1 at 21). Ms. Robinson also requests that the Court appoint an independent agency to oversee DCS's implementation of the settlement. (Doc 535-1 at 21).

**Plaintiffs' Response:** Plaintiffs appreciate the perspective of Ms. Robinson based on her experiences with Arizona's child welfare system, and her particular vision for how the system can be improved, but also believe the Settlement Agreement as presented to

the Court is fair, reasonable, and more than adequate. Fed. R. Civ. P. 23(e)(2). The Settlement Agreement squarely addresses the underlying concerns addressed by Ms. Robinson and presents an outstanding result for Arizona's foster care population. The Settlement Agreement requires considerable improvements in the areas giving rise to the Complaint and will cure the alleged deficiencies giving rise to the claims. It requires DCS to meet significant benchmarks demonstrating improvement; contains meaningful mechanisms to monitor DCS compliance; and provides for strong enforcement remedies in the event of non-compliance.

At the same time, the Settlement Agreement also provides DCS with sufficient flexibility to determine *how* it will implement the required improvements. The Settlement Agreement does not require the Court to micromanage DCS or enforce rigid, detailed obligations beyond what is necessary to cure the alleged violations, while still requiring DCS to develop detailed plans with input from Plaintiffs.

Ms. Robinson is a well-known and respected advocate for children and families in Arizona. Plaintiffs agree that the stakeholders such as Ms. Robinson will likely have valuable input, and Plaintiffs would encourage that these groups be involved in the implementation of the Agreement. At the same time, Plaintiffs believe that the Settlement Agreement strikes the appropriate balance in specifying the necessary improvements while still providing flexibility in the process.

As such, the settlement provisions are fair, reasonable, and more than adequate to cure any due process or Medicaid claims based on the facts that would be adduced at trial. There are many ways that the agency can go about implementing these mandated improvements, and several commenters describe their particular visions for doing so. The particular type of behavioral health tracking urged by Ms. Robinson, her proposals for the number of hours of behavioral health training and the other suggestions may well advance the goals of the settlement agreement and may be taken into account in the implementation plans that will be created under the agreement. But Plaintiffs do not understand these particular suggestions to be the only way for DCS to obtain the results that are re-

quired or cure the alleged violations. Nor do Plaintiffs seek a Court order that imposes requirements on DCS at the level of detail urged by these commenters, which may entangle the Court in running the child welfare system in Arizona. Plaintiffs believe the negotiated settlement draws an appropriate balance, providing DCS with a modicum of flexibility while also mandating the required improvements.

With respect to monitoring and enforcement, the Settlement Agreement provides that Plaintiffs must validate DCS's compliance with the terms of the settlement as a condition for exiting the Court's jurisdiction. (Doc. 529-1 (Settlement) § 5.3.) In their role as monitor, Plaintiffs will receive on an ongoing basis the information, data, and documentation reasonably necessary to verify compliance. (*Id.*) The settlement also names the Honorable Kenneth Fields, a highly-regarded retired jurist with considerable family court experience, as mediator. (Doc. 529-1 (Settlement) § 6.2.) In the event of non-compliance, Judge Fields is empowered to determine an appropriate remedy, including specific performance or requiring a remediation plan, subject to appeal to the Court. (Doc. 529-1 (Settlement) §§ 6.4, 6.5.)

These provisions, once again, are fair, reasonable and adequate. Plaintiffs do not believe there is a need for any other agency to service as an additional monitor, as Ms. Robinson has suggested.

**Defendants' Response:** Ms. Robinson, ASA Now, commented on all four subject areas. Defendants appreciate Ms. Robinson's sincerity and laudable motivations. Her comments appear to support the settlement agreement generally, but she proposed many additional reporting requirements, higher performance standards, and alternative language for negotiated provisions in the settlement agreement. Defendants believe the settlement agreement as drafted provides significant benefits to the Class as a whole, and the amendments Ms. Robinson proposed are unnecessary to provide a fair, reasonable, and adequate resolution to the claims brought in the lawsuit. *See* Joint Motion for Preliminary Approval

of the Parties' Settlement Agreement (Doc. 529); Joint Motion for Final Approval of the Settlement Agreement and Attorneys' Fees (Doc. 533).

Additionally, although the agreement embraces many best practices advocated by Ms. Robinson and some other stakeholders, such practices exceed the constitutional and statutory minima. As it stands, the agreement reflects a willingness to adopt and standardize much more than the law requires. That is a credit to Plaintiffs' counsel's advocacy and the stakeholders' efforts over the past five years. It is also a credit to the improvements Defendants have achieved over the same period, demonstrating both the commitment and the ability to advance the welfare of children in foster care.

**N. R. (Doc. 535-4, at 83)**

**Comment:** This commenter shared that his daughter is in DCS custody and requested to speak at the final approval hearing, but did not provide details concerning what he intends to speak about.

**A. R. (Doc. 535-4, at 84-86)**

**Comment:** This commenter, whose daughters are in DCS custody, shared her personal experience with the child welfare system. She describes many conflicts and issues she has had with DCS case managers, including allegations that a DCS caseworker mistreated her due to her race. She also states that her older daughter is in a group home where she experienced suicidal ideation. She requested to speak at the final approval hearing.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address some of the commenter's underlying concerns by imposing substantial requirements regarding behavioral health care and by requiring DCS to improve the availability of family foster homes and therapeutic foster

homes. Unfortunately, with respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**N. R. (Doc. 535-4, at 84-86)**

**Comment:** This commenter, whose granddaughter is in DCS custody, shared her personal experience with the child welfare system. She states that DCS is biased against birth families, that caseworkers are overloaded, and criticizes aspects of court proceedings. She requested to speak at the final approval hearing.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address the commenter's underlying concerns by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases

through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**J. R. (Doc. 535-4, at 88-89)**

    **Comment:** This commenter, the mother of a two-year old son, requested to speak at the final approval hearing and gave a list of many topics she wants to address, including the COVID-19 pandemic, caseworkers, behavioral and physical health care, appointed attorneys, and DCS response time, but did not provide details.

**R. S. (Doc. 544-1, at 18)**

    **Comment:** This commenter, a parent of children who were in foster care, shared her experience with the child welfare system. She stated that her family experienced many mental and physical health issues while in foster care.

    **Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. Plaintiffs believe that the Settlement Agreement may address some of the commenters concerns by imposing substantial requirements regarding behavioral health care; strengthening the Child and Family Team process; improving family involvement in behavioral health planning; and by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response.

    **Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts).

While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**Suzanne Schunk (Doc. 535-1, at 24-28)**

**Comments:** Suzanne Schunk is the former Vice President of Family Support Services at Southwest Human Development in Phoenix. (Doc. 535-1 at 24) She has more than 45 years of experience in child welfare and behavioral health (*id.*), and was responsible for providing behavioral health services to families referred by DCS as well as administrative and clinical oversight of numerous DCS contracts and services. (*Id.*) Ms. Schunk was also designated as a trial witness.

Ms. Schunk states in her comment that "I am writing to express my support for the settlement agreement that has been completed in the *B.K. ex rel. Tinsley et al v. Faust, et al.* case." (Doc. 535-1, at 24). Her letter describes at length how the settlement will benefit children in foster care.

Addressing the behavioral health provisions of the settlement agreement, Ms. Schunk writes that the behavioral health principles articulated in the agreement are "very important" (Doc. 535-1, at 24); that "all four of the quality assurance performance measures are positive and important" (Doc. 535-1, at 25); and that the behavioral health practice improvements are "certainly needed." (Doc. 535-1, at 25).

Ms. Schunk endorsed the provisions of the settlement agreement relating to Therapeutic Foster Care, writing that "the need for more quality treatment foster care homes is critically important." (Doc. 535-1, at 25)  She also specifically lauded the requirement that DCS measure whether behavioral health services were not just delivered, but were actually "effective," an improvement likely leading to better outcomes for foster children. (Doc. 535-1, at 25.)

Addressing the physical health provisions of the settlement agreement, Ms. Schunk praised the provisions of the agreement requiring additional training for DCS

51

case managers to identify children with developmental disabilities and that DCS take steps to ensure children receive these services, noting that it has historically been difficult for foster children to timely receive needed services from the Department of Developmental Disabilities. (Doc 535-1, at 26).

With respect to the settlement's placement array provisions, Ms. Schunk broadly supported the agreement's focus on reducing the use of congregate care and placing children in family settings and with their siblings. (Doc. 535-1, at 27) With respect to the workload provisions, Ms. Schunk wrote that "This entire section is absolutely critical to the safety and well-being of children in the custody of DCS, as well as children in families under investigation by DCS." (Doc. 535-1, at 26)

Ms. Schunk also recommends certain improvements to the settlement agreement. In particular, she suggests additional provisions relating to the support case managers should provide to foster families (Doc. 535-1, at 27) and that DCS implement improved screening, training, and monitoring of Team Decision Making facilitators. (Doc. 535-1, at 28.)

**Plaintiffs' Response:** Plaintiffs appreciate the perspective of Ms. Schunk and her strong support of the settlement agreement. Plaintiffs also agree that Ms. Schunk's suggestions may be considered in connection with the implementation of the settlement. At the same time, Plaintiffs believe that the Settlement Agreement as presented strikes the appropriate balance in specifying the necessary improvements while still providing flexibility as to how the improvements will be implemented. We do not understand Ms. Schunk's comments to suggest otherwise.

**Defendants' Response:** Ms. Schunk, who formerly served as Vice President of Family Support Services at Southwest Human Development in Phoenix, wrote in support of the settlement agreement based on her wide experience with the Arizona child welfare system, and she offered comments related to all four subject areas of the settlement agreement. Defendants accept the sincerity and laudable motivations behind her comments. However, Defendants believe that (1) the agreement sufficiently advances the goals behind the proposed additional terms, and (2) none of the additional terms is necessary to ensure

the fairness, adequacy, or reasonableness of the settlement. Additionally, although the agreement embraces many best practices advocated by Ms. Schunk and other commenters, such practices exceed the constitutional and statutory minima. As it stands, the agreement reflects a willingness to adopt and standardize much more than the law requires.

Regarding §§ 1.1 and 1.4(c), Defendants agree with (and are prioritizing) developing a robust provider network that includes trauma-trained providers.

Regarding § 1.3, "sufficient number of cases" is intended purely as a statistical validity function; it is not intended as a limitation on the remedy itself. Defendants agree it is critical to ensure "that the number of cases reviewed is indeed sufficient to ascertain the effectiveness of the services," but anticipate no disagreement on that number.

Regarding § 1.4(a) (CFTs), the agreement contains six specific requirements to ensure fidelity to the practice tool and alignment with the Arizona Vision, and subsection 1.4(a)(4) requires that "[t]he assigned DCS case manager" or his/her supervisor "must attend the CFT meeting in person, by telephone, or electronically."

Regarding § 3 (workload), DCS has taken actions outside the settlement agreement related to Ms. Schunk's concerns. DCS agrees case managers must attend court hearings, and must not harbor hostility or bias toward biological parents. DCS has implemented a Predictive Index in the recruitment and hiring process to identify candidates with the best attributes and to determine the most appropriate work unit. DCS also agrees case managers need effective clinical supervision, and has already invested significant resources implementing Clinical Supervision, Supervisor Onboarding, Supervision Coaching, Supervisor Core training, an annual Leadership summit, and Advanced Academy trainings to support highly qualified training.

Regarding § 4 (placement array), DCS believes Ms. Schunk's concerns are addressed in the agreement and in existing initiatives. Information needed by foster parents, including clinical and family history, is addressed in part in § 1.4(a)(5), but will be greatly enhanced when the Guardian IT system is operationalized, particularly through FamilyConnect, an application that gives health services information to caregivers and case managers.

**N. S. (Doc. 535-4, at 90)**

**Comment:** This commenter shared her personal experience with the child welfare system. She states that her foster son did not receive mental health services, that DCS withheld cost of care payments for three foster children in her care, and that DCS retaliates against parties in foster care proceedings.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address some of the commenter's underlying concerns by imposing substantial requirements regarding behavioral health care, and by requiring DCS to develop additional training and support for foster families. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**G. S. (Doc. 535-4, at 91-92)**

**Comment:** This commenter, whose daughter is currently in DCS custody, shared her personal experience with the child welfare system. She explains that she is having difficulty finding a place to live that DCS finds acceptable for reunification, and that it took three months for supervised visits to begin.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address the commenter's underlying concerns by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers and ensure visitation with parents consistent with DCS policy. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**J. S. (Doc. 535-4, at 93)**

**Comment:** This person requested to make comments on the settlement agreement but did not provide details concerning what he intends to speak about.

**D. S. (Doc. 535-5, at 3-22)**

**Comment:** This commenter, whose son was in DCS custody, shared his personal experience with the child welfare system, including documents from 2019 Foster Care Review Board hearings. He states that DCS is not appropriately considering placements, facilitating scheduled visits, providing physical or behavioral health services, meeting developmental needs, or preventing bullying in the group home where his son was placed. He also states that his son was molested while in placement and that the caseworker was unresponsive. He has requested to speak at the final approval hearing, and notes that his son

is no longer in foster care.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses many of the commenter's concerns by imposing substantial requirements regarding behavioral health care**,** improving family involvement in behavioral health planning, requiring DCS to improve the availability of family foster homes, and by addressing case manager workload, which will improve the ability of case managers to (1) engage productively with children, families, and caregivers, (2) ensure children promptly receive all the medical, dental, developmental, and behavioral health services they need, and (3) ensure visitation with parents consistent with DCS policy. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**T. S. (Doc. 535-5, at 23)**

**Comment:** This commenter, whose grandchildren are in DCS custody, shared his personal experience with the child welfare system. He states the children were erroneously removed from the home. He explains that the father kidnapped the children and that the mother, the commenter's daughter, never had any abuse, neglect, or abandonment charges.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. Unfortunately, with respect to the specific issues relating to these particular children, Plaintiffs

do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**R. T. (Doc. 535-5, at 24-25)**

**Comment:** This commenter, a foster and adoptive parent, shared his personal experience with the child welfare system. He believes the settlement agreement does not go far enough, that behavioral health services do not address trauma or other severe issues, that group homes are overused, and that case managers get involved only for court appearances.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement addresses the commenter's concerns by imposing substantial requirements regarding behavioral health care, by requiring DCS to improve the availability of family foster homes, and by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response.

**Defendants' Response:** The content of this comment concerns facts and circumstances of already litigated state court cases. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts).

DCS believes the settlement agreement adequately addresses Mr. T.'s underlying concerns regarding the behavioral health service array, congregate care, and the workloads of case managers.

**C. T. (Doc. 535-5, at 26)**

**Comment:** This commenter, who has not seen or talked to his son in two years, shared his personal experience with the child welfare system. He wrote that criminal charges were recently filed against him, and requested to speak at the final approval hearing.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. Unfortunately, with respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**Beverly Tobiason (Doc. 535-1, at 29-38)**

**Comment:** Dr. Beverly Tobiason was the Clinical Director of the Pima County Juvenile Court for 12 years. She has over 30 years of community mental health experience, most of which has been spent serving children and families involved in the child welfare system. Doc. 535-1, at 30. Ms. Tobiason was designated at a trial witness.

Dr. Tobiason expresses strong support for the settlement agreement. She states that she is "pleased with the thoroughness of the proposed B.K. settlement" and that she believes that its requirements "will greatly improve meeting the overall needs of our child

welfare involved children." Doc. 535-1, at 30. Dr. Tobiason's comments at length on how the Settlement Agreement will benefit children in foster care.

Dr. Tobiason, in particular, commends the Settlement's use of "hard" numerical data and "soft" qualitative evaluations throughout the agreement to create a "powerful" and "comprehensive array of monitoring requirements." Doc. 535-1, at 30, 32. As just one example, Dr. Tobiason explained how the agreement uses hard and soft data work to mitigate systemic problems that have long "plagued" Arizona's Child and Family Team (**CFT**) model. Doc. 535-1, at 31-32. The agreement requires DCS to collect hard data on CFT practice like "the frequency and timeliness" of CFT meetings (Doc. 529-1 (Settlement) § 1.2(b)) and also to collect soft data by having DCS personnel attend a sample of CFTs and evaluate the fidelity of CFT practice to the model. Doc. 529-1 (Settlement) §§ 1.2(b), 1.4(a); Doc. 535-1, at 32. As Dr. Tobiason explains, this focus on "quality assurance and performance measures will mitigate the systemic problem" hampering CFTs and "assure more overall successful child and family outcomes." Doc. 535-1, at 32.

Addressing additional behavioral health provisions in the Settlement Agreement, Dr. Tobiason specifically lauds the requirement that DCS measure whether behavioral health services are not just delivered, but are actually effective. She notes that this improvement on present behavioral health practice would likely lead to better outcomes for foster children. Doc. 535-1, at 33-34.

As to the Settlement Agreement's physical and dental health provisions, Dr. Tobiason explains that it has historically been difficult for foster children to receive timely needed services from DDD and supports the provisions of the agreement that require DCS case managers to receive additional training in identifying children with disabilities and that require DCS to take step to ensure that children receive these services. Doc. 535-1, at 36.

As to the agreement's placement array provisions, Dr. Tobiason states that "[t]he focus on keeping sibling groups together and living in home environments will greatly improve on the overall wellbeing of children." Doc. 535-1, at 37. And she specifically noted the requirement that DCS create a long-term plan to reduce the use of congregate

care and the emphasis on appropriate caregiver selection will mitigate many of DCS's systemic problems. Doc. 535-1, at 37.

Dr. Tobiason also supports the Settlement's workload provisions.

Ultimately, Dr. Tobiason concludes that the settlement as a whole "focuses on the use of best practices principles and treatment monitoring, quality assurance, and practice improvements on behalf of our child welfare involved children. All of these proposed items working in conjunction will result in a robust system of care, [and] thus improved outcomes." Doc. 535-1, at 38.

**Plaintiffs' Response:** Plaintiffs appreciate the perspective of Dr. Tobiason and her vocal support of the Settlement Agreement.

**Defendants' Response:** Defendants also appreciate Dr. Tobiason's unconditional endorsement of the Settlement Agreement as drafted.

**B. T. (Doc. 535-5, at 27)**

**Comment:** This commenter shared his personal experience with the child welfare system. He feels that DCS should have given his mother custody of his child.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. Unfortunately, with respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**L. V. (Doc. 535-5, at 30-33)**

**Comment:** This commenter is a parent who has had her child removed by DCS on multiple occasions. Her letters contain a number of criticisms of current DCS practice and she questions the efficacy of the settlement. In particular, this commenter criticizes DCS for removing children who need behavioral health services rather than because of abuse and neglect; she is opposed to DCS's taking responsibility for behavioral health service delivery from AHCCCS; and she would like CFTs to be guided by behavioral health specialists. The commenter states that the other factors in the Settlement Agreement are good, but she questions whether DCS will live up to its commitments and whether Plaintiffs will successfully be able to monitor the agreement.

**Plaintiffs' Response:** Plaintiffs appreciate the commenter's perspective based on her experiences with Arizona's child welfare system, and her particular vision for how the system can be improved, but also believe the Settlement Agreement, reached after extensive litigation and arms-length negotiation, is fair, reasonable, and more than adequate. Fed. R. Civ. P. 23(e)(2). The Settlement Agreement squarely addresses many of the commenter's underlying concerns and presents an outstanding result for Arizona's foster care population. The Settlement Agreement requires considerable improvements in the areas giving rise to the Complaint, including with respect to CFT practice and the availability of behavioral health services, and it will cure the alleged deficiencies giving rise to Plaintiffs' claims. It requires DCS to meet significant benchmarks demonstrating improvement; contains meaningful mechanisms to monitor DCS compliance; and provides for strong enforcement remedies in the event of non-compliance.

Further, Plaintiffs' counsel are monitoring and have monitored settlement agreements seeking to improve child welfare systems throughout the country, many of which have been at least as complex as the agreement at issue here. In each of those cases, Plaintiffs' counsel have successfully held Defendants accountable to their commitments and improved the child welfare system as a result. Plaintiffs are confident that this case will be no different.

**Defendants' Response:** Ms. V.'s comments include both facts and circumstances

of an individual state court case, and commentary regarding the settlement agreement. Defendants respectfully decline to address the content of the case-specific comments. Regarding the portion of Ms. V.'s comments related to the settlement agreement, Defendants believe the agreement sufficiently addresses her underlying concerns.  The agreement also reflects Defendants' willingness to adopt and standardize much more than the law requires.

**V. T. (Doc. 535-5, at 34-35)**

**Comment:** This commenter, four of whose grandchildren were placed in four separate homes, including one in a group home, shared her personal experience with the child welfare system. She states that the children are not taken to specialist appointments. She also describes the removal of her other grandchildren.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address the commenter's underlying concerns by strengthening the processes for making placement decisions and by addressing case manager workload, which will improve the ability of case managers to engage productively with children, families, and caregivers and to ensure children promptly receive all the medical, dental, developmental, and behavioral health services they need. With respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**Dawn Wallschlaeger (Doc. 535-2, at 3-10)**

**Comment:** Dawn Wallschlaeger is the Chair of the Arizona Chapter of the Family Focused Treatment Association ("AZFFTA"), an organization representing providers of therapeutic foster care. She was scheduled to be a trial witness, testifying about therapeutic foster care in Arizona.

Ms. Wallschlaeger's comments are highly supportive of the settlement agreement. (Doc. 535-2 at 4 to 10). On virtually every page of her letter, Ms. Wallschlaeger states that her organization "fully supports and endorses" and "is in agreement" with nearly every aspect of the settlement. (Doc. 535-2 at 4 to 10)

Ms. Wallschaeger also asks that stakeholders, including her organization, have input into the implementation of the settlement.  (*See, e.g.*, Doc. 535-2, at 4.) She is particularly focused on improvements to therapeutic foster care, such as increased training for therapeutic foster parents, and requests that stakeholders views' be taken into account in formulating the revised training and policies. (*Id.*)

**Plaintiffs' Response:** Plaintiffs appreciate the perspective of Ms. Wallschlaeger based on her extensive experience with Arizona's child welfare system and therapeutic foster care, and her organization's support of the settlement. Plaintiffs agree that stakeholders such as Ms. Wallschlaeger will likely have valuable input, and Plaintiffs would encourage that these groups be involved in the implementation of the Agreement. At the same time, Plaintiffs believe that the Settlement Agreement strikes the appropriate balance in specifying the necessary improvements while still providing flexibility in the process. We do not understand Ms. Wallschlaeger's comments to suggest otherwise.

**Defendants' Response:** Ms. Wallschlaeger chairs the Arizona chapter of the Family Focused Treatment Association, an organization that represents providers of therapeutic foster care (TFC). She wrote regarding behavioral health and placement issues that bear on TFC. TFC is an alternative to a congregate therapeutic setting. DCS agrees TFC is integral to its placement array, but notes that TFC placements are not constitutionally or statutorily required.  Defendants accept the sincerity and laudable motivations behind Ms. Wallschlaeger's comments, and respect her experience in the field.  However, Defendants believe that

(1) the agreement sufficiently advances the goals behind the proposed additional terms, and (2) additional terms are not necessary to ensure the fairness, adequacy, or reasonableness of the settlement. Additionally, although the agreement embraces many best practices advocated by Ms. Wallschlaeger and other commenters, such practices exceed the constitutional and statutory minima. As it stands, the agreement reflects a willingness to adopt and standardize much more than the law requires.

Regarding § 1.2(c) (TFC performance measures), DCS welcomes community and stakeholder input in developing TFC performance measures.

Regarding § 1.3 (behavioral health case review), DCS notes that DCS, its health plan (CHP), and the managed care organization (MCO) will begin addressing this section immediately after the behavioral health integration scheduled to commence on 04/01/2021.

Regarding § 1.4(b)(1) (TFC Policies), DCS presently contracts with licensing agencies, as will the MCO as part of integration, to ensure consistent expectations and reporting. Consistent with anticipated court approval of the settlement agreement, DCS seeks to fund TFC placements absent "medical necessity" determinations rather than utilizing congregate care settings when appropriate. DCS values FFTA input on standards and practices for TFC, and anticipates ongoing collaboration with AZFFTA, including regular consultation to address barriers and engage in collaborative problem-solving.

Regarding § 1.4(b)(2) (TFC Training and Recruitment), DCS presumes that AZFFTA will comment, directly or through Plaintiffs' Counsel, on the TFC training model. *See* § 5.1 (Cooperation on Implementation). DCS appreciates AZFFTA input on TFC training and recruitment. DCS is committed to continuously improving TFC training (pre-service and ongoing) and recruitment, both as an obligation under § 1.4(b)(2) and under its existing Lean management principles. DCS funds training for traditional foster parenting and will work with AHCCCS to review required changes moving forward. The $105/day rate establishment for TFC is intended to cover all aspects of the program, but DCS will review the impacts of training specific funding. DCS also notes this is influenced by contract requirements, Title IV-E requirements, and other inflexible obligations.

Regarding § 1.4(b)(3) (Mercer Findings and Recommendations), Defendants believe the settlement agreement sufficiently addresses these matters.

Regarding § 1.4(c) (Behavior Health Services Array), Defendants believe the existing language in the settlement agreement addresses these concerns. DCS expects to continue working meaningfully with AZFFTA and licensing agencies, and agrees "capacity" includes both quantity and quality considerations. DCS has already submitted two reports to the AZ legislature on its progress implementing FFPSA requirements. DCS's annual budget request also addresses these funding questions. DCS also notes the CFT process is designed to be engaged when children are in higher levels of care, and to make appropriate clinical decisions on next level of care during the discharge process.

Regarding § 4.1 (Placement Array), DCS agrees and contemplates "tak[ing] an active role in recruiting, training, supporting, and retaining TFC" providers. The Department will continue in those efforts, both as a matter of existing policy and under § 1.4 of the settlement agreement.

Regarding § 4.3 (Long-term Program to Reduce the Use of Congregate Care), DCS respectfully disagrees the Court must issue a "specific order" to "assure that AZFFTA" and other specified individuals "are active participants in developing" agency plans for recruitment, training and retention of TFC providers. Respectfully, the settlement agreement ensures a reasonable opportunity for comment and meaningful input, and it ensures that AZFFTA's two most important desired policy changes are made: TFC placement "in advance of any determination of medical necessity for purposes of Medicaid reimbursement," and permitting children to remain in TFC regardless of "medical necessity" determinations "when it is in the child's best interest and consistent with the child's permanency plan." Beyond those commitments, DCS must maintain sufficient flexibility—as the settlement agreement recognizes—to exercise its executive prerogative consistent with its statutory duty.

**V. W. (Doc. 535-5, at 36)**

**Comment:** This commenter, whose two children are in out-of-home care, requested

to speak at the final approval hearing to object to the settlement agreement, but did not provide details concerning what she intends to speak about.

**R. W. (Doc 535-5, at 37)**

**Comment:** This commenter, whose child is in DCS custody, shared his personal experience with the child welfare system. He wishes to file a lawsuit against DCS for the removal of his child, which he states was done with no notice or reason. He adds that he has not received anything from the courts or social workers.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. Unfortunately, with respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**Nancy Williams (Doc. 535-2, at 365-367)**

**Comment:** Nancy Williams is the Executive Director of the Arizona Association for Foster and Adoptive Parents ("AZAFAP"). Her letter contains a number of suggestions for improving the settlement. (Doc. 535-2, at 366-367). She recommends, for example, additional metrics, beyond those already in the settlement agreement, regarding children's behavioral health; an increase in the outcome requirement specified in the settlement agreement for physical health services; a requirement that case reviews be conducted "outside of DCS; and more specificity in the settlement agreement as to "how" the required improvements must be implemented. (*Id*.)

**Plaintiffs' Response:** Plaintiffs appreciate the perspective of Ms. Williams based on her experiences with Arizona's child welfare system, and her particular vision for how the system can be improved, but also believe the Settlement Agreement, reached after extensive litigation and arms-length negotiation, is fair, reasonable, and more than adequate. Fed. R. Civ. P. 23(e)(2). The Settlement Agreement squarely addresses the underlying concerns addressed by Ms. Williams and presents an outstanding result for Arizona's foster care population. The Settlement Agreement requires considerable improvements in the areas giving rise to the Complaint and will cure the alleged deficiencies giving rise to the claims. It requires DCS to meet significant benchmarks demonstrating improvement; contains meaningful mechanisms to monitor DCS compliance; and provides for strong enforcement remedies in the event of non-compliance.

At the same time, the Settlement Agreement also provides DCS with sufficient flexibility to determine *how* it will implement the required improvements. The Settlement Agreement does not require the Court to micromanage DCS or enforce rigid, detailed obligations beyond what is necessary to cure the alleged violations, while still requiring DCS to develop detailed plans with input from Plaintiffs.

Ms. Williams is a well-known and respected advocate for children and families in Arizona. Plaintiffs agree that the stakeholders such as Ms. Williams will likely have valuable input, and Plaintiffs would encourage that these groups be involved in the implementation of the Agreement. At the same time, Plaintiffs believe that the Settlement Agreement strikes the appropriate balance in specifying the necessary improvements while still providing flexibility in the process.

There are many ways that the agency can go about implementing these mandated improvements. The particular suggestions urged by Ms. Williams may well advance the goals of the settlement agreement and may be taken into account in the implementation plans that will be created under the agreement. But Plaintiffs do not understand these particular suggestions to be the only way for DCS to obtain the results that are required or cure the alleged violations. Nor do Plaintiffs seek a Court order that imposes requirements on DCS at the level of detail which may entangle the Court in running the child

welfare system in Arizona. Plaintiffs believe the negotiated settlement draws an appropriate balance, providing DCS with a modicum of flexibility while also mandating the required improvements.

With regard to the outcome requirement for physical health services, the settlement agreement requires DCS to regularly measure the aggregate percentage of timely well-child examinations received by children in foster care. (Doc. 529-1 (Settlement) § 2.2(3).) The settlement provides for ongoing corrective action, continued monitoring by Plaintiffs, and for the Court's continuing jurisdiction until the percentage of timely-well child examinations is at least 85%, maintained over a two-year period. (Doc. 529-1 (Settlement) § 2.3.) This does not mean that DCS needs to provide EPSDT examinations to only 85% of foster children, as Ms. Williams appears to suggest. (Doc. 535-2, at 366.) It means only that once DCS meets and maintains the specified outcome requirement, the agency will no longer be subject to the Court's continuing jurisdiction and oversight. The outcome requirements for physical health represent substantial improvement over similar measurements made by Plaintiffs' expert, Dr. Paul Zurek, during the litigation.

With respect to monitoring and enforcement, the Settlement Agreement provides that Plaintiffs must validate DCS's compliance with the terms of the settlement as a condition for exiting the Court's jurisdiction. (Doc. 529-1 (Settlement) § 5.3.) In their role as monitor, Plaintiffs will receive on an ongoing basis the information, data, and documentation reasonably necessary to verify compliance. (*Id.*) The settlement also names the Honorable Kenneth Fields, a highly-regarded retired jurist with considerable family court experience, as mediator. (Doc. 529-1 (Settlement) § 6.2.) In the event of non-compliance, Judge Fields is empowered to determine an appropriate remedy, including specific performance or requiring a remediation plan, subject to appeal to the Court. (Doc. 529-1 (Settlement) §§ 6.4, 6.5.) These provisions are fair, reasonable and adequate.

**Defendants' Response:** Ms. Williams, Arizona Association for Foster and Adoptive Parents (AZAFAP), addressed all four subject matter areas of the settlement agree-

ment. Defendants accept the sincerity and laudable motivations behind Ms. Williams' comments. However, Defendants believe that (1) the agreement sufficiently advances the goals behind the proposed additional terms, and (2) additional terms are not necessary to ensure the fairness, adequacy, or reasonableness of the settlement. Additionally, although the agreement embraces many best practices advocated by commenters, such practices exceed the constitutional and statutory minima. As it stands, the agreement reflects a willingness to adopt and standardize much more than the law requires.

Regarding § 1 (Behavioral Health), CFT is a collaborative model aided—not driven—by metrics and Lean management principles, and it will align more closely with children in out-of-home care after behavioral health integration occurs. Regardless, the settlement agreement creates CFT fidelity metrics to ensure the model is functioning and continuously improving. *See* § 1.2(b). Defendants are also developing a more robust provider network that includes trauma-trained providers. *See also* Defendants' response to TFC-related comments by Ms. Schunk and Ms. Wallschlaeger.

Regarding § 2.3 (Physical and Dental Health Outcome), the 85% EPSDT performance outcome measure, based on a federal participation methodology, is well above national averages. *See* https://www.gao.gov/assets/710/700958.pdf (*three* states met CMS's participant ratio target of *80* percent for Medicaid well-child screenings in fiscal year 2017, including without limitation Medicaid-eligible children in foster care). DCS notes that its Lean management principles have already achieved significant improvements in this area, and that performance factors beyond the Department's control preclude even the most diligent and pro-active child welfare health systems from approaching 100% performance.

Regarding § 3 (Workload), DCS notes there are currently multiple oversight bodies independent of DCS that review practices, policies, and/or cases, including, but not limited to, the Superior Court, DHHS Children's Bureau (with reviews and audit functions), the Arizona Legislature and Auditor General, the Community Advisory Committee, Foster Care Review Board, Court-Appointed Special Advocates, a Quality Management Committee, and a Youth Advisory Committee.

Regarding § 4 (Placement Array), the settlement agreement targets congregate care

reductions and promotes family-like placement settings. *See* §§ 4.3(a-b). DCS currently requires 22 weeks of training for new Specialists, and provides advanced academies and supervisor training.

**K. W. (Doc. 544-1, at 19)**

    **Comment:** This commenter, an adoptive parent, shares her experience with the child welfare system. She states that her adoptive son did not receive necessary medical, behavioral, and disability services in foster care and that he was abused and neglected by some of his foster placements.

    **Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. Plaintiffs believe that the Settlement Agreement will address many of the commenter's underlying concerns by improving the behavioral health service array; by ensuring that children receive effective, needed behavioral health services; by improving the speed at which DDD gets involved in children's cases; by ensuring that children receive regular physical health checkups; and by addressing case manager workload, which will improve the ability of case managers to ensure children promptly receive all the medical, dental, developmental, and behavioral health services they need. With respect to the specific issues relating to this particular child and family, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

    **Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**D. W. (Doc. 535-5, at 38-40, 544-1 at 20-21)**

**Comment:** This commenter, whose nephew's children are currently in DCS custody, shared his personal experience with the child welfare system. He requested to speak at the final approval hearing about the children's not being returned to the family.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments. Unfortunately, with respect to the specific issues relating to these particular children, Plaintiffs do not have sufficient information to provide a further response. To the extent the comments reflect the failure to provide adequate services, we hope that DCS reviews the matter and takes any appropriate action that may be needed.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already pending state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**A. W. (Doc. 535-5, at 41, 544-1 at 22)**

**Comment:** This commenter, whose daughter was in DCS custody but has since returned home, shared his personal experience with the child welfare system; he states she was in an inappropriate placement, and that her behavioral health services were discontinued. He requested to speak at the final approval hearing.

**Plaintiffs' Response:** Plaintiffs are deeply sympathetic to these comments; Plaintiffs believe that the Settlement Agreement may address the commenter's underlying concerns by requiring DCS to improve the availability of family foster homes and therapeutic foster homes, and by imposing substantial requirements regarding behavioral health care. With respect to the specific issues relating to this particular child, Plaintiffs do not have sufficient information to provide a further response.

**Defendants' Response:** The content of this comment concerns facts and circumstances of an already litigated state court case. Defendants endeavor to address each case fairly and carefully, and to address concerns raised in the context of individual cases through case management and subject to institutional oversights (including state courts). While a few of the commenter's statements touch on matters addressed in the federal lawsuit, they do not address the specific terms or general framework of the settlement agreement. Defendants therefore respectfully decline to address the content of the case-specific comments.

**G. Z. (Doc. 535-5, at 42)**

**Comment:** This commenter, who has a daughter, requested to speak at the final approval hearing but did not provide details concerning what she intends to speak about.

Dated: February 9, 2021

| | |
|---|---|
| **CHILDREN'S RIGHTS, INC.** | **COHEN DOWD QUIGLEY** |
| By: s/ Harry Frischer | Daniel P. Quigley |
| Harry Frischer | Cindy C. Albracht-Crogan |
| Aaron Finch | Stacey F. Gottlieb |
| Daniele Gerard | Lauren M. LaPrade |
| Stephanie Persson | J. Neil Stuart |
| Erin McGuinness | The Camelback Esplanade One |
| 88 Pine Street, Suite 800 | 2425 East Camelback Road, Suite 1100 |
| New York, New York 10005 | Phoenix, Arizona 85016 |
| | Telephone: (602) 252-8400 |
| **PERKINS COIE LLP** | |
| Joseph Mais | **ELLMAN LAW GROUP LLC** |
| Shane Swindle | By: s/ Robert Ellman |
| 2901 N. Central Avenue, Suite 2000 | Robert Ellman |
| Phoenix, Arizona 85012-2788 | Karen J. Hartman-Tellez |
| | 3030 North Central Avenue, Suite 1110 |
| **ARIZONA CENTER FOR LAW IN THE PUB-** | Phoenix, Arizona 85012 |
| **LIC INTEREST** | Telephone: (480) 630-6490 |
| Daniel J. Adelman | |
| Anne C. Ronan | *Attorneys for Defendant Michael Faust* |
| 352 E. Camelback Rd., Suite 200 | |

72

1    Phoenix, Arizona 85012

2    *Attorneys for Plaintiffs*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOHNSTON LAW OFFICES, P.L.C.**
By: s/ Logan T. Johnson
Logan T. Johnston
14040 N. Cave Creek Rd., Suite 309
Phoenix, Arizona 85022
Telephone: (602) 452-0615

**STRUCK LOVE BOJANOWSKI & ACEDO, P.L.C.**
Daniel P. Struck
Nicholas D. Acedo
Timothy J. Bojanowski
Dana M. Keene
3100 W. Ray Road, Suite 300
Chandler, Arizona 85226-2473
Telephone: (480) 420-1600

**LAW OFFICES OF CATHERINE DODD PLUMB, P.L.C.**
Catherine D. Plumb
17225 N. 16th Place
Phoenix, Arizona 85022
Telephone: (602) 510-5184

*Attorneys for Defendant Jami Snyder*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on February 9, 2021, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal to the

4

following CM/ECF registrants:

5

6

Robert Ellman
rle@elgarizona.com

7

Karen J. Hartman-Tellez

8

kjh@elgarizona.com

9

**ELLMAN LAW GROUP LLC**
3030 North Central Avenue, Suite 1110

10

Phoenix, Arizona 85012

11

Daniel P. Quigley

12

dquigley@CDQLaw.com
Cindy C. Albracht-Crogan

13

ccrogan@CDQLaw.com
Stacey F. Gottlieb

14

sgottlieb@CDQLaw.com

15

Lauren M. LaPrade
llprade@CDQLaw.com

16

J. Neil Stuart

17

nstuart@CDQLaw.com
**COHEN DOWD QUIGLEY P.L.C.**

18

The Camelback Esplanade One

19

2425 East Camelback Road, Ste. 1100
Phoenix, Arizona 85016

20

21

*Attorneys for Defendant Michael Faust*

22

Logan T. Johnston
ltjohnston@live.com
**JOHNSTON LAW OFFICES,
P.L.C.**
14040 N. Cave Creek Rd., Suite 309
Phoenix, Arizona 85022

Daniel P. Struck
dstruck@strucklove.com
Nicholas D. Acedo
nacedo@strucklove.com
Timothy J. Bojanowski
tbojanowski@strucklove.com
Dana M. Keene
dkeene@strucklove.com
**STRUCK LOVE BOJANOWSKI &
ACEDO, P.L.C.**
3100 W. Ray Road, Suite 300
Chandler, Arizona 85226-2473

Catherine D. Plumb
plumblawoffice@gmail.com
**LAW OFFICES OF CATHERINE
DODD PLUMB, P.L.C.**
17225 N. 16th Place
Phoenix, Arizona 85022

*Attorneys for Defendant Jami Snyder*

23

24

25

s/ Harry Frischer

26

27

28

74